RECORD NO. 13-4737

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

### UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

v.

### DEBORAH LEE TIPTON,

*Defendant-Appellant.*

---

**JOINT APPENDIX**
**VOLUME I**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT ASHEVILLE

Frank B. Jackson
F. B. JACKSON & ASSOCIATES
 LAW FIRM, PLLC
422 North Church Street
Hendersonville, North Carolina 28792
(828) 697-5410 (Telephone)
ptjj_j@bellsouth.net

**Pro Bono Counsel for Appellant**

Amy E. Ray
Assistant U.S. Attorney
OFFICE OF THE UNITED STATES
 ATTORNEY
U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801-0000
(828) 271-4661 (Telephone)
amy.ray@usdoj.gov

**Counsel for Appellee**

---

## TABLE OF CONTENTS
## Volume I

**Relevant Docket Entries** ................................................. **1**

**Indictment filed 4-4-12** .............................................. **18**

**Discovery Order filed 4-16-12** ................................. **21**

**Motion to Disclose Documents filed 5-23-12** .......... **26**

**Motion for Discovery filed 5-23-12** .......................... **28**

**Plea Agreement filed 9-18-12** ..................................... **33**

**Transcript of Rule 11 Hearing Before the Hon.**
 **Dennis L. Howell, U. S. Magistrate Judge**
   **On September 19, 2012**

   **Testimony of Deborah Tipton**  .......................... **44**


**Rule 11 Inquiry and Order of Acceptance of**
 **Plea filed 9-19-12** ......................................................... **71**

**Transcript of Sentencing Hearing Before the**
 **Hon. Martin R. Reidinger, U. S. District Judge**
  **On September 18, 2013**

   **Testimony of Deborah Tipton** ......................... **85**

   **Court and Counsel** ............................................... **90**

## <u>Table of Contents – Page 2 – Continued</u>

**Continuation of Transcript of Sentencing Hearing**
**Before the Hon. Martin R. Reidinger, U. S.**
**District Judge on September 18, 2012**

**Testimony of Agent John Wydra**
**Direct** …………………………………………………… **109**
**Cross** ………………………………………… **117**

**Closing Argument – Stewart** …………………………… **128**

**Closing Argument – Randall** ………………………… **143**

**Testimony of Deborah Tipton** ……………………… **159**

**Court Sentencing** ………………………………………… **162**

**Court and Counsel** ………………………………………… **172**

**Judgment Order filed 9-24-13** ………………………… **179**

**Notice of Appeal filed 10-1-13** ……………………… **190**

# TABLE OF CONTENTS
## Sealed Volume

**PreSentence Investigation Report filed
    5-31-13 under seal**……………………………………………    **192**

**Defendant's Modifications, Amendments and/or
    Objections to PreSentencing Report filed
    Under seal on 7-2-13** ………………………………………    **212**

**Motion for Downward Departure in Sentencing
    And Objection to PreSentence Report of
    5-31-13 filed 7-2-13 under seal** …………………………    **230**

**Brief in Support of Motion to Allow Downward
    Departure in Sentencing filed 7-2-13
        under seal with Exhibits:** ………………………………    **236**

    **Exh. 10 – Deborah Lee Tipton Psychiatric
                Evaluation dated 11-21-12** …………………    **260**

    **Exh. 11 -  Affidavit of Mary E. Huneycutt
                dated 11-13-12** ……………………………………    **270**

    **Exh. 12 -  Social/Emotional Assessment
                Regarding Deborah Lee Tipton
                dated 11-13-12**……………………………………    **272**

    **Exh. 13 – Letter from Polly Penland, LCSW
                to Kelley Young dated 8-28-12** ……………    **277**

## Table of Contents – Sealed Volume – Page 2

**Exh. 15 – Affidavit of David Husted, M.D. dated 6-17-13 with Exh. B - Court Ordered Psychiatric Evaluation – Taylor L. Tipton** ……………………………… **279**

**Exh. 23 - Psychosexual Evaluation – Deborah Lee Tipton dated 2-25-12** …………………… **288**

**Defendant's Modifications, Amendments and/or Objections to PreSentence Report filed 7-8-13** …. **296**

**PreSentence Investigation Report filed 7-30-13 under seal** …………………………………… **303**

APPEAL,VICWIT

# U.S. District Court
## Western District of North Carolina (Asheville)
## CRIMINAL DOCKET FOR CASE #: 1:12-cr-00025-MR-DLH-1

Case title: USA v. Tipton

Date Filed: 04/04/2012
Date Terminated: 09/18/2013

Assigned to: District Judge Martin
Reidinger
Referred to: Magistrate Judge Dennis
Howell

Appeals court case number: 13-4737
4th Circuit

### Defendant (1)

**Deborah Lee Tipton**
*TERMINATED: 09/18/2013*

represented by **Frank B. Jackson**
Law Office of Frank B. Jackson
PO Box 1666
Hendersonville, NC 28793
828-697-5410
Fax: 828-692-5373
Email: ptjj_j@bellsouth.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Fredilyn Sison**
Federal Defenders of Western NC
1 Page Avenue
Suite 210
Asheville, NC 28801
828-232-9992
Fax: 828-232-5575
Email: Fredilyn_Sison@fd.org
*TERMINATED: 06/19/2012*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Public Defender or
Community Defender Appointment

**Jack W. Stewart , Jr.**
PO Box 1920
Asheville, NC 28802
828-253-5673
Fax: 828-253-7100

Email: jack@jackstewartlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (2) | Imprisoned for 216 months as to Count 2 and 120 months as to Count 3 to run concurrently to Count 2, for total of 216 months; supervised release for term of Life as to each of Counts 2 and 3; $200 assessment. |
| ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (3) . | Imprisoned for 216 months as to Count 2 and 120 months as to Count 3 to run concurrently to Count 2, for total of 216 months; supervised release for term of Life as to each of Counts 2 and 3; $200 assessment. |

**Highest Offense Level (Opening)**
Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| SEXUAL EXPLOITATION OF CHILDREN (1) | Dismissed on motion of the United States. |

**Highest Offense Level (Terminated)**
Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

| **Plaintiff** | | |
|---|---|---|
| USA | represented by | **Cortney S. Randall** |

227 West Trade Street
Suite 1650
Charlotte, NC 28202
704-338-3116
Email: Cortney.Randall@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Andrew Thorneloe**

U.S. Attorney`s Office
100 Otis Street
Room 233
Asheville, NC 28801
828-259-0640
Fax: 828-271-4670
Email: david.thorneloe@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas R. Ascik**
United States Attorney's Office
100 Otis Street
Asheville, NC 28801
828-259-0644
Fax: 828-271-4122
Email: thomas.ascik@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2012 | 1 | INDICTMENT as to Deborah Lee Tipton (1) count(s) 1, 2-3. (Attachments: # 1 Unredacted Signature Page, # 2 CR Cover Sheet) (ejb) (Entered: 04/04/2012) |
| 04/04/2012 | 2 | Arrest Warrant Issued *(Sealed - Case Participants)* in case as to Deborah Lee Tipton. (Attachments: # 1 Warrant Identifier Page)(ejb) (Entered: 04/04/2012) |
| 04/11/2012 | | Arrest of Deborah Lee Tipton. (thh) Modified on 4/13/2012 to correct arrest date (ejb). (Entered: 04/12/2012) |
| 04/12/2012 | | NOTICE OF HEARING as to Deborah Lee Tipton: Initial Appearance set for 4/12/2012 02:30 PM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 04/12/2012) |
| 04/12/2012 | | Minute Entry: INITIAL APPEARANCE as to Deborah Lee Tipton held before Magistrate Judge Dennis Howell. Defendant advised of rights & charges. Defendant moved for appointment of counsel. Defendant filed a financial affidavit. Court approved appointment of counsel. Government moved for detention. Defendant detained pending detention hearing. Arraignment and Detention hearing set for 4/16/2012 11:20 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell.Government attorney: David Thorneloe. Defendant attorney: Fredilyn Sison. Court Reporter FTR. (emw) (Entered: 04/12/2012) |
| 04/12/2012 | 3 | CJA 23 (Ex Parte) Financial Affidavit by Deborah Lee Tipton. (emw) (Entered: 04/12/2012) |
| 04/12/2012 | | **ORAL ORDER APPOINTING COMMUNITY DEFENDER as to Deborah Lee Tipton. Fredilyn Sison for Deborah Lee Tipton appointed. Signed by Magistrate Judge Dennis Howell on 04/12/12. (emw) (Entered:** |

|  |  | 04/12/2012) |
|---|---|---|
| 04/12/2012 |  | NOTICE OF HEARING as to Deborah Lee Tipton: Arraignment and Detention hearing set for 4/16/2012 11:20 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(emw) (Entered: 04/12/2012) |
| 04/12/2012 |  | NOTICE OF HEARING - ***PLEASE NOTE CHANGE OF TIME*** as to Deborah Lee Tipton: Arraignment and Detention hearing REset for 4/16/2012 02:00 PM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(emw) (Entered: 04/12/2012) |
| 04/13/2012 | 4 | Warrant Returned Executed on 4/11/12 in case as to Deborah Lee Tipton. (ejb) (Entered: 04/13/2012) |
| 04/16/2012 | 5 | SEALED DOCUMENT *(Sealed - Attorney)*: Joint Stipulation by USA, dft; (available to: USA, Deborah Lee Tipton) (Thorneloe, David) (Entered: 04/16/2012) |
| 04/16/2012 |  | Minute Entry: ARRAIGNMENT as to Deborah Lee Tipton (1) Count 1,2-3 and DETENTION HEARING held before Magistrate Judge Dennis Howell. Defendant pled not guilty. Government moved for detention. Defendant detained. Government attorney: Corey Ellis. Defendant attorney: Fredilyn Sison. Court Reporter FTR. (thh) (Entered: 04/17/2012) |
| 04/16/2012 | 6 | **SCHEDULING ORDER as to Deborah Lee Tipton Docket Call set for 4/30/2012 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. Signed by Magistrate Judge Dennis Howell on 04/16/2012. (thh) (Entered: 04/17/2012)** |
| 04/16/2012 | 7 | **Standard Discovery Order in case as to Deborah Lee Tipton. Signed by Magistrate Judge Dennis Howell on 04/16/2012. (thh) (Entered: 04/17/2012)** |
| 04/17/2012 | 8 | **ORDER OF DETENTION as to Deborah Lee Tipton. Signed by Magistrate Judge Dennis Howell on 04/16/2012. (thh) (Entered: 04/17/2012)** |
| 04/17/2012 | 9 | **ORDER TO CONTINUE - Ends of Justice as to Deborah Lee Tipton; Time excluded from 04/30/2012 until 06/25/2012. Docket Call set for 6/25/2012 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. Signed by District Judge Martin Reidinger on 04/17/2012. (thh) (Entered: 04/17/2012)** |
| 04/20/2012 | 10 | **SEALED ORDER *(Sealed - Attorney)*: Addendum to Detention Order as to Deborah Lee Tipton re: 8 Order of Detention (available to: USA, Deborah Lee Tipton). Signed by Magistrate Judge Dennis Howell on 4/20/12. (ejb) (Entered: 04/20/2012)** |
| 04/21/2012 | 11 | NOTICE *of Appeal of Magistrate Court's Detention Order* by Deborah Lee Tipton re 8 Order of Detention (Sison, Fredilyn) (Entered: 04/21/2012) |

| | | |
|---|---|---|
| 05/01/2012 | <u>12</u> | TRANSCRIPT of ARRAIGNMENT AND DETENTION HEARING as to Deborah Lee Tipton held on 4/16/2012 before Judge Dennis Howell. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 7/30/2012. (Reporter: Karen Miller, 828-771-7217) (Entered: 05/01/2012) |
| 05/02/2012 | <u>13</u> | NOTICE OF ATTORNEY APPEARANCE Thomas R. Ascik appearing for USA. (Ascik, Thomas) (Entered: 05/02/2012) |
| 05/10/2012 | <u>14</u> | NOTICE of Withdrawal by Deborah Lee Tipton of <u>11</u> NOTICE OF APPEAL from Order of Magistrate Judge to District Court filed by Deborah Lee Tipton re <u>8</u> Order of Detention (Sison, Fredilyn) Modified text on 5/11/2012 (ejb). NEF Regenerated. (Entered: 05/10/2012) |
| 05/23/2012 | <u>15</u> | NOTICE OF ATTORNEY APPEARANCE: Jack W. Stewart, Jr appearing for Deborah Lee Tipton (Stewart, Jack) (Entered: 05/23/2012) |
| 05/23/2012 | <u>16</u> | ***STRICKEN per Order <u>27</u> entered on 6/19/2012***SEALED MOTION *(Sealed - Attorney)* to Suppress by Deborah Lee Tipton. (available to: USA, Deborah Lee Tipton)Responses due by 6/4/2012. (Attachments: # <u>1</u> Affidavit) Motions referred to Dennis Howell(Stewart, Jack) Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). Modified on 6/19/2012 (thh). (Entered: 05/23/2012) |
| 05/23/2012 | <u>17</u> | ***STRICKEN per Order <u>27</u> entered on 6/19/2012***SEALED MEMORANDUM *of Law* by Deborah Lee Tipton *(Sealed - Attorney)* (Stewart, Jack) (available to: USA, Deborah Lee Tipton) Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). Modified on 6/19/2012 (thh). (Entered: 05/23/2012) |
| 05/23/2012 | <u>18</u> | SEALED MOTION *(Sealed - Attorney)* for Leave to File *Pretrial Motions* by Deborah Lee Tipton. (available to: USA, Deborah Lee Tipton). Responses due by 6/4/2012. Motions referred to Dennis Howell(Stewart, Jack) Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). (Entered: 05/23/2012) |
| 05/23/2012 | <u>19</u> | SEALED MOTION *(Sealed - Attorney)* for Disclosure *of Documents* by Deborah Lee Tipton. (available to: USA, Deborah Lee Tipton). Responses due by 6/4/2012. Motions referred to Dennis Howell(Stewart, Jack) Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). (Entered: 05/23/2012) |
| 05/23/2012 | <u>20</u> | SEALED MOTION *(Sealed - Attorney)* Independent Forensic Examination *of Compter Hardware, Computer Software, and Visual Images* by Deborah Lee Tipton. (available to: USA, Deborah Lee Tipton.) Responses due by 6/4/2012. (Stewart, Jack) Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). (Entered: 05/23/2012) |

| 05/23/2012 | 21 | SEALED MOTION *(Sealed - Attorney)* for Discovery by Deborah Lee Tipton. (available to: USA, Deborah Lee Tipton) Responses due by 6/4/2012. Motions referred to Dennis Howell(Stewart, Jack) Modified restrictions on 5/24/2012 (thh). Modified text on 6/12/2012 (ejb). (Entered: 05/23/2012) |
| 05/23/2012 | 22 | ***STRICKEN per Order 27 entered on 6/19/2012*** SEALED EXHIBIT *(Sealed - Attorney)* by Deborah Lee Tipton re: 17 Memorandum filed by Deborah Lee Tipton. (Stewart, Jack) (available to: USA, Deborah Lee Tipton). Modified restrictions on 5/24/2012 (thh). Modified text on 6/13/2012 (ejb). Modified on 6/19/2012 (thh). (Entered: 05/23/2012) |
| 05/24/2012 | 23 | MOTION to Withdraw as Attorney by Fredilyn Sison. by Deborah Lee Tipton. Motions referred to Dennis Howell(Sison, Fredilyn) (Entered: 05/24/2012) |
| 05/24/2012 | | NOTICE OF HEARING as to Deborah Lee Tipton: Status Conference set for 5/29/2012 10:00 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 05/24/2012) |
| 05/24/2012 | 24 | MOTION For Privacy Protection/Protective Order by Deborah Lee Tipton. (Responses due by 6/4/2012.) Motion referred to Dennis Howell (Stewart, Jack) Modified text on 5/24/2012 (emw). NEF regenerated. (Entered: 05/24/2012) |
| 05/25/2012 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 24 MOTION For Privacy Protection/Protective Order. Motion Hearing set for 5/29/2012 10:00 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(emw) (Entered: 05/25/2012) |
| 05/29/2012 | | Case as to Deborah Lee Tipton reassigned to Magistrate Judge David Keesler for case referral. Magistrate Judge Dennis Howell no longer referred case - Conflict. Motions referred: 16 MOTION to Suppress, 24 MOTION For Privacy Protection/Protective Order, 21 MOTION for Discovery, 23 MOTION to Withdraw as Attorney by Fredilyn Sison, 19 MOTION for Disclosure 18 Motion for Leave to File *Pretrial Motions,* 20 MOTION Independent Forensic Examination *of Compter Hardware, Computer Software, and Visual Images This is your only notice - you will not receive a separate document.* (bsw)Motions referred to David Keesler (Entered: 05/29/2012) |
| 05/31/2012 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 19 MOTION for Disclosure *of Documents,* 20 MOTION Independent Forensic Examination *of Compter Hardware, Computer Software, and Visual Images,* 21 MOTION for Discovery , 24 MOTION For Privacy Protection/Protective Order MOTION to Appoint Expert MOTION for Bond, 16 MOTION to Suppress , 18 MOTION for Leave to File *Pretrial Motions,* 23 MOTION to Withdraw as Attorney by Fredilyn Sison. : Motion Hearing set for 6/11/2012 03:00 PM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Max O. Cogburn Jr.. *This is your only notice - you will not receive a separate document.*(emw) (Entered: 05/31/2012) |

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 12 of 196

| 06/01/2012 | 25 | MOTION to Continue Docket Call/Trial *of June 25, 2012* by Deborah Lee Tipton. Responses due by 6/11/2012. (Stewart, Jack) (Entered: 06/01/2012) |
|---|---|---|
| 06/01/2012 | 26 | ***STRICKEN per Order 27 entered on 6/19/2012*** SEALED RESPONSE *(Sealed - Attorney)* to Motion re: 16 Motion to Suppress by USA; (available to: USA, Deborah Lee Tipton) (Thorneloe, David) Modified on 6/19/2012 (thh). (Entered: 06/01/2012) |
| 06/11/2012 | | Minute Entry: MOTION HEARING as to Deborah Lee Tipton held before District Judge Max O. Cogburn, Jr. Re 16 MOTION to Suppress , 24 MOTION For Privacy Protection/Protective Order MOTION to Appoint Expert MOTION for Bond, 21 MOTION for Discovery , 23 MOTION to Withdraw as Attorney by Fredilyn Sison, 19 MOTION for Disclosure *of Documents*, 18 MOTION for Leave to File *Pretrial Motions*, 20 MOTION Independent Forensic Examination *of Compter Hardware, Computer Software, and Visual Images*. Government attorney: David Thorneloe. Defendant attorney: Jack Stewart. Court Reporter FTR. (emw) (Entered: 06/12/2012) |
| 06/19/2012 | 27 | **ORDER continued ruling to a date for hearing to be determined by Judge Reidinger on 16 Motion to Suppress; granting 18 Motion for Leave to File Pretrial Motions; granting 19 Motion to Disclose Documents; allowing 20 Motion for Independent Forensic Examination of Computer Hardware, Computer Software and Visual Images; allowing 21 Motion for Discovery and the Standard Discovery Order of the Asheville Division of this court is entered; granting 23 Motion to Withdraw as Attorney. Fredilyn Sison withdrawn from case; 24 Motion Privacy/Protective Order is entered, pleadings, [16, 16-1, 17, 22, 26] are STRICKEN without prejudice as to Deborah Lee Tipton (1) Signed by District Judge Max O. Cogburn, Jr on 06/18/2012. (thh) (Entered: 06/19/2012)** |
| 06/19/2012 | | **Standard Discovery Order in case as to Deborah Lee Tipton. (Click on this link to obtain the Standard Criminal Discovery Order) . Entered by District Judge Max O. Cogburn, Jr on 06/19/2012. (thh) (Entered: 06/19/2012)** |
| 06/21/2012 | 28 | **ORDER granting 25 Motion to Continue Docket Call/Trial as to Deborah Lee Tipton (1) Docket Call set for 8/27/2012 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. Signed by District Judge Martin Reidinger on 06/21/12. (emw) (Entered: 06/21/2012)** |
| 07/11/2012 | 29 | MOTION Appointment of Guardian ad Litem by USA as to Deborah Lee Tipton. Responses due by 7/23/2012 (Thorneloe, David) (Entered: 07/11/2012) |
| 07/27/2012 | 30 | NOTICE OF ATTORNEY APPEARANCE: Frank B. Jackson appearing for Deborah Lee Tipton (Jackson, Frank) (Main Document 30 replaced on 7/30/2012) (thh). Modified by replacing document with correct date on 7/30/2012, NEF regenerated (thh). (Entered: 07/27/2012) |
| 08/09/2012 | 31 | **ORDER granting 29 Motion for Appointment of Guardian ad Litem; Emily Cowan, attorney at law, is appointed Guardian ad Litem on behalf** |

| | | of Minor Victim 1; terminating 16 Motion to Suppress (which has been stricken) as to Deborah Lee Tipton (1) (SEE ORDER FOR FURTHER DETAILS) Signed by District Judge Martin Reidinger on 8/9/12. (ejb) (Entered: 08/09/2012) |
|---|---|---|
| 08/15/2012 | 32 | MOTION to Continue Docket Call/Trial by Deborah Lee Tipton. Responses due by 8/27/2012 (Stewart, Jack) (Entered: 08/15/2012) |
| 08/15/2012 | 33 | SEALED MOTION *(Sealed - Attorney)* Motion for Admission of Criminal Conviction by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton). Responses due by 8/27/2012 (Attachments: # 1 Exhibit)(Stewart, Jack) Modified text and restricted access to USA & Deborah Lee Tipton on 8/15/2012 (ejb). NEF Regenerated. (Entered: 08/15/2012) |
| 08/15/2012 | 34 | SEALED MOTION *(Sealed - Attorney)* Motion in Limine filed by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Stewart, Jack). Motions referred to David Keesler. (Entered: 08/15/2012) |
| 08/15/2012 | 35 | SEALED MOTION *(Sealed - Attorney)* Motion to Suppress filed by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Affidavit, # 2 Exhibit)(Stewart, Jack). Motions referred to David Keesler. (Attachment 1 replaced on 8/15/2012 with correct PDF) (emw). NEF Regenerated. (Attachment 1 replaced on 8/15/2012 with correct PDF) (emw). NEF Regenerated. (Entered: 08/15/2012) |
| 08/15/2012 | 36 | SEALED DOCUMENT *(Sealed - Attorney)*: Memorandum of Law in Support of Motion to Suppress by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Stewart, Jack) (Entered: 08/15/2012) |
| 08/15/2012 | | **TEXT-ONLY ORDER as to Deborah Lee Tipton re 33 SEALED MOTION *(Sealed - Attorney)* Motion for Admission of Criminal Conviction *Text of Order: Document 33 is hereby sealed until further court order. The parties are ordered to advise the Court in writing under seal why this document, which contains references to the identity of a minor, should not remain sealed. So Ordered.* Entered by direction of District Judge Martin Reidinger on 8/15/12. (ejb) (Entered: 08/15/2012)** |
| 08/16/2012 | 37 | **ORDER granting 32 Motion to Continue Docket Call/Trial as to Deborah Lee Tipton (1) Docket Call set for 11/5/2012 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. Signed by District Judge Martin Reidinger on 08/15/2012. (thh) (Entered: 08/16/2012)** |
| 08/17/2012 | | Minute Entry: STATUS CONFERENCE in chambers as to Deborah Lee Tipton held before District Judge Martin Reidinger. Government attorney: David Thorneloe. Defendant attorney: Jack Stewart and Frank Jackson. Guardian ad Litem: Emily Cowan. Court Reporter: Cheryl Nuccio. (khm) (Entered: 08/17/2012) |
| 08/20/2012 | | Case returned to Magistrate Judge Dennis Howell for case referral. Magistrate Judge David Keesler no referred to the case. (thh) (Entered: 08/20/2012) |
| | | |

| 08/21/2012 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 35 SEALED MOTION *(Sealed - Attorney)* Motion to Suppress filed by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) : Motion Hearing set for 8/29/2012 09:30 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 08/21/2012) |
| --- | --- | --- |
| 08/23/2012 | 38 | SEALED RESPONSE *(Sealed - Attorney)* to Motion re: 35 Sealed Motion, by USA; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Thorneloe, David) (Entered: 08/23/2012) |
| 08/23/2012 | 39 | MOTION to Continue Suppression Hearing by Deborah Lee Tipton. Responses due by 9/4/2012 (Stewart, Jack) (Entered: 08/23/2012) |
| 08/24/2012 | 40 | RESPONSE *to Defense Motion to Continue Suppression Hearing* by USA as to Deborah Lee Tipton (Thorneloe, David) (Entered: 08/24/2012) |
| 08/24/2012 | | Minute Entry: MOTION HEARING as to Deborah Lee Tipton held before Magistrate Judge Dennis Howell. Re 39 MOTION to Continue Suppression Hearing . Suppression hearing continued to 09/19/2012 to 09/21/2012. Government attorney: David Thorneloe. Defendant attorney: Jack Stewart. Court Reporter FTR. (thh) (Entered: 08/24/2012) |
| 08/24/2012 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 33 34 35 SEALED MOTIONS: Motions Hearing RESET for 9/19/2012- 9/21/2012 09:30 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 08/24/2012) |
| 08/30/2012 | 41 | **ORDER granting 39 Motion to Continue Suppression Hearing. Motion to Suppress 35 is continued for hearing to begin on September 19, 2012 at 9:30 a.m. in Courtroom #2 of the United States Courthouse in Asheville, NC. as to Deborah Lee Tipton (1) Signed by Magistrate Judge Dennis Howell on 08/29/2012. (thh) (Entered: 08/30/2012)** |
| 09/05/2012 | 42 | SEALED DOCUMENT *(Sealed - Attorney)*: Supplemental Brief in Support of Motion to Suppress by Deborah Lee Tipton; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Stewart, Jack) (Entered: 09/05/2012) |
| 09/05/2012 | 43 | SEALED MOTION *(Sealed - Attorney)* Motion to Dismiss filed by Deborah Lee Tipton; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Stewart, Jack). Motions referred to Dennis Howell. (Entered: 09/05/2012) |
| 09/05/2012 | 44 | SEALED DOCUMENT *(Sealed - Attorney)*: Brief in Support of Motions to Dismiss by Deborah Lee Tipton; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Stewart, Jack) (Entered: 09/05/2012) |
| 09/05/2012 | 45 | SEALED DOCUMENT *(Sealed - Attorney)*: Rule 16(a)(1)(G) Request for Disclosure of Information Regarding Expert Witnesses by Deborah Lee Tipton; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Stewart, Jack) (Entered: 09/05/2012) |
| 09/05/2012 | 46 | SEALED MOTION *(Sealed - Attorney)* Motion to Compel filed by Deborah |

| | | Lee Tipton; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Stewart, Jack). Motions referred to Dennis Howell. (Entered: 09/05/2012) |
|---|---|---|
| 09/08/2012 | 47 | SEALED RESPONSE *(Sealed - Attorney)* to Motion re: 46 Sealed Motion by USA; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Thorneloe, David) (Entered: 09/08/2012) |
| 09/18/2012 | 48 | PLEA AGREEMENT *(Restricted)* as to Deborah Lee Tipton (Thorneloe, David) (Entered: 09/18/2012) |
| 09/18/2012 | | NOTICE OF HEARING as to Deborah Lee Tipton: *Note to counsel: Use this link to retrieve the **Plea Addendum Form**. Please bring completed form to hearing.* Plea Hearing set for 9/19/2012 11:00 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 09/18/2012) |
| 09/18/2012 | | NOTICE of Cancellation of Motion Hearing scheduled for 09/19/2012 at 9:00 am as to Deborah Lee Tipton. (thh) (Entered: 09/18/2012) |
| 09/19/2012 | | Minute Entry: PLEA HEARING as to Deborah Lee Tipton held before Magistrate Judge Dennis Howell. Defendant sworn and advised of rights and charges. Court reviews plea agreement. Plea Entered by Deborah Lee Tipton (1) Guilty Count 2-3. Plea accepted. Government attorney: David Thorneloe. Defendant attorney: Jack W. Stewart, Jr.. Court Reporter FTR. (thh) (Entered: 09/19/2012) |
| 09/19/2012 | 49 | ACCEPTANCE and entry of Guilty Plea as to Deborah Lee Tipton signed by Magistrate Judge Dennis Howell. (thh) (Entered: 09/19/2012) |
| 09/19/2012 | 50 | Addendum to 49 Acceptance and Entry of Guilty Plea *(Sealed - Attorney)* as to Deborah Lee Tipton (available to: USA, Emily Cowan, Deborah Lee Tipton) (thh) (Entered: 09/19/2012) |
| 09/19/2012 | 51 | **CONSENT ORDER AND JUDGMENT OF FORFEITURE as to Deborah Lee Tipton. Signed by Magistrate Judge Dennis Howell on 09/19/2012. (thh)** (Entered: 09/19/2012) |
| 09/25/2012 | 53 | **ORDER denying as moot 33 , 34 , 35 , 43 & 46 Sealed Motions as to Deborah Lee Tipton (1). Signed by District Judge Martin Reidinger on 9/22/12. (ejb)** Modified on 9/25/2012 to unseal Order (ejb). NEF Regenerated. (Entered: 09/25/2012) |
| 10/29/2012 | 54 | Service/Declaration of Publication by USA as to Deborah Lee Tipton (Attachments: # 1 Exhibit A)(Ascik, Thomas) (Entered: 10/29/2012) |
| 12/27/2012 | 55 | SEALED MOTION *(Sealed - Attorney)*: for Appointment of New Guardian Ad Litem by USA; (available to: USA, Emily Cowan, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Thorneloe, David) Modified on 1/11/2013 change from seal document to sealed motion(emw). (Entered: 12/27/2012) |
| 12/28/2012 | 56 | SEALED MOTION *(Sealed - Attorney)* Defendant's Motion for New GAL (available to: USA, Emily Cowan, Deborah Lee Tipton) (Jackson, Frank). Motions referred to Dennis Howell. (Entered: 12/28/2012) |

| 01/07/2013 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 56 SEALED MOTION *(Sealed - Attorney)* Defendant's Motion for New GAL (available to: USA, Emily Cowan, Deborah Lee Tipton) : Motion Hearing set for 1/9/2013 10:20 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 01/07/2013) |
| 01/07/2013 | | *** AMENDED NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 56 SEALED MOTION *(Sealed - Attorney)* Defendant's Motion for New GAL (available to: USA, Emily Cowan, Deborah Lee Tipton) : Motion Hearing RESET for 1/14/2013 09:30 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 01/07/2013) |
| 01/09/2013 | 57 | MOTION to Continue Jan. 14th Hearing on GAL Motion by Deborah Lee Tipton. Responses due by 1/22/2013 (Attachments: # 1 Affidavit Frank Jackson's Affidavit, # 2 Exhibit CV of Frank Jackson)(Jackson, Frank) (Entered: 01/09/2013) |
| 01/09/2013 | | ** AMENDED NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 56 SEALED MOTION *(Sealed - Attorney)* Defendant's Motion for New GAL (available to: USA, Emily Cowan, Deborah Lee Tipton) : Motion Hearing RESET for 1/17/2013 10:20 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(thh) (Entered: 01/09/2013) |
| 01/11/2013 | 58 | **ORDER granting 57 Motion to Continue Sealed Motions 55 and 56 as to Deborah Lee Tipton (1). Signed by Magistrate Judge Dennis Howell on 01/11/13. (emw) (Entered: 01/11/2013)** |
| 01/11/2013 | | NOTICE OF HEARING ON MOTION in case as to Deborah Lee Tipton 56 SEALED MOTION *(Sealed - Attorney)* Defendant's Motion for New GAL (available to: USA, Emily Cowan, Deborah Lee Tipton), 55 SEALED MOTION *(Sealed - Attorney)* : Motion Hearing set for 1/17/2013 10:20 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge Dennis Howell. *This is your only notice - you will not receive a separate document.*(emw) (Entered: 01/11/2013) |
| 01/30/2013 | 59 | **ORDER *(Sealed - Attorney)* granting 55 Sealed Motion and 56 Sealed Motion (available to: USA, Emily Cowan, Deborah Lee Tipton) as to Deborah Lee Tipton (1). Signed by Magistrate Judge Dennis Howell on 01/30/2013. (thh) (Entered: 01/30/2013)** |
| 02/12/2013 | 61 | NOTICE OF ATTORNEY APPEARANCE Cortney S. Escaravage appearing for USA. (Escaravage, Cortney) (Entered: 02/12/2013) |
| 04/26/2013 | 62 | MOTION Relief from Protective Order and Writ of Habeas Corpus by Deborah Lee Tipton. Responses due by 5/6/2013 (Attachments: # 1 Exhibit Writ of Habeas Corpus, # 2 Exhibit Plaintiff's Notice of Hearing)(Jackson, Frank) (Entered: 04/26/2013) |

| 04/26/2013 | | Motion Referred as to Deborah Lee Tipton: 62 MOTION Relief from Protective Order and Writ of Habeas Corpus. (ejb) Motions referred to Dennis Howell (Entered: 04/26/2013) |
|---|---|---|
| 05/01/2013 | 63 | LETTER by Deborah Lee Tipton (Jackson, Frank) (Entered: 05/01/2013) |
| 05/02/2013 | 64 | SEALED DOCUMENT *(Sealed - Attorney)*: by Defendant; (available to: Deborah Lee Tipton) (Attachments: # 1 Exhibit 1 Writ of Habeas Corpus, # 2 Exhibit 1 Motion, # 3 Exhibit 2 Defendant's Motion in St Court, # 4 Exhibit 3 Husbands Notice of Hearing, # 5 Exhibit 4 Rule 3.1)(Jackson, Frank) Modified on 5/7/2013 to restrict access to Deborah Lee Tipton, only. (ejb) (Entered: 05/02/2013) |
| 05/03/2013 | 65 | **ORDER denying without prejudice 62 Motion for Relief from Protective Order and Writ of Habeas Corpus as to Deborah Lee Tipton (1). Signed by Magistrate Judge Dennis Howell on 05/02/2013. (thh)** (Main Document 65 replaced on 5/3/2013) (thh). Modified on 5/3/2013 to delete extra blank page (thh). (Entered: 05/03/2013) |
| 05/07/2013 | 66 | **SEALED ORDER *(Sealed - Attorney)*: as to Deborah Lee Tipton re: 64 Sealed Document, (available to: Deborah Lee Tipton). Signed by Magistrate Judge Dennis Howell on 5/7/13. (ejb)** (Entered: 05/07/2013) |
| 05/20/2013 | 67 | LETTER by Attorney for Deborah Lee Tipton. (thh) (Entered: 05/24/2013) |
| 05/31/2013 | 68 | PRESENTENCE INVESTIGATION REPORT (Draft Report) *(SEALED - Attorney)* as to Deborah Lee Tipton. Objections to PSI due 6/17/2013. (available to USA, Deborah Lee Tipton)(Tim Woo - crg) (Entered: 05/31/2013) |
| 06/13/2013 | 69 | MOTION for Extension of Time to File *Objections to the Presentence Investigative Report* by Deborah Lee Tipton. Motions referred to Dennis Howell(Stewart, Jack) (Entered: 06/13/2013) |
| 06/17/2013 | 70 | MOTION for Extension of Time to File *Objections to Presentence Report* by USA as to Deborah Lee Tipton. Motions referred to Dennis Howell (Escaravage, Cortney) (Entered: 06/17/2013) |
| 06/17/2013 | | **TEXT-ONLY ORDER granting 69 Deft's Motion for Extension of Time to File; granting in part 70 USA's Motion for Extension of Time to File, as to Deborah Lee Tipton (1) *Text of Order: Defendant's 69 Motion for Extension of Time to File Objections to the Presentence Investigative Report is GRANTED and the USA's 70 Motion for Extension of Time to File Objections to Presentence Report is GRANTED IN PART. Deborah Lee Tipton and the USA have 20 days from the original due date of 6/17/2013 to file their objections; So Ordered.* Entered by direction of District Judge Martin Reidinger on 6/17/13. (ejb)** (Entered: 06/17/2013) |
| 07/02/2013 | 71 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT *(Sealed - Attorney)* by Frank Jackson for Defendant; (available to: USA, Tipton) (Attachments: # 1 Exhibit Dss Interview Pg 44, 47-49, # 2 Exhibit Hamby HCSD Interview Pg 35, # 3 Exhibit DSS Interview Pg 41, # 4 Exhibit DSS Interview Pg 53, # 5 Exhibit Husted Rpt Debbie Tipton, # 6 Exhibit Huneycutt |

| | | |
|---|---|---|
| | | Rpt Debbie Tipton, # 7 Exhibit Middleton Rpt Debbie Tipton, # 8 Exhibit Penland Letter, # 9 Exhibit Penland Testimony, # 10 Exhibit Husted Rpt on Minor, # 11 Exhibit Articles Sexual Molestation, # 12 Exhibit Articles Sexual Exploitation, # 13 Exhibit Affidavits in Support of Debbie Tipton, # 14 Exhibit Deposition Joel Tipton Pg 11 & 12, # 15 Exhibit Depositiono Joel Tipton Page 65, # 16 Exhibit Deposition Joel Tipton Pages 67 & 68, # 17 Exhibit Piatt Police Report - Joel Tipton, # 18 Exhibit Sworn Statement of Kelly Dolan, # 19 Exhibit Hamby HCSD Interview Pg 16-19)(Jackson, Frank) Modified restrictions on 7/2/2013 (thh). (Entered: 07/02/2013) |
| 07/02/2013 | 72 | SEALED SENTENCING MEMORANDUM *(Sealed - Attorney)* by Frank Jackson for Defendant; (available to: USA, Deborah Lee Tipton) (Jackson, Frank) Modified restrictions on 7/2/2013 (thh). (Entered: 07/02/2013) |
| 07/02/2013 | 73 | SEALED MOTION *(Sealed - Attorney, Deborah Lee Tipton )* Downward Departure filed by Frank Jackson for Defendant; (available to: USA) (Jackson, Frank). Motions referred to Dennis Howell. Modified restrictions on 7/2/2013 (thh). (Entered: 07/02/2013) |
| 07/02/2013 | 74 | SEALED DOCUMENT *(Sealed - Attorney):* by Frank Jackson for Defendant; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit DSS Interview Pgs 44, 47-49, # 2 Exhibit Hamby Depo Page 18, # 3 Exhibit Affidavit Andra Prince re Hamby Depo, # 4 Exhibit Hamby HCSD Interview Pg 12, # 5 Exhibit Hamby Depo Pg 35, # 6 Exhibit Photographs - Art and Human Anatomy, # 7 Exhibit DSS Interview Pg 41, # 8 Exhibit DSS Interview Pg 53, # 9 Exhibit Husted Affidavit re Deb Tipton Report, # 10 Exhibit Husted Report on Debbie Tipton, # 11 Exhibit Huneycutt Affidavit re Debbie Tipton Report, # 12 Exhibit Huneycutt Report on Debbie Tipton, # 13 Exhibit Exhib 23 Middleton Report on Debbie Tipton, # 14 Exhibit Polly Penland Letter, # 15 Exhibit Penland Testimony June 26, 2012, # 16 Exhibit Husted Report on Minor, # 17 Exhibit Police Report - Joel Tipton, # 18 Exhibit Sworn Statement of Kelly Dolan, # 19 Exhibit Affidavit Andra Prince re Joel Tipton Depo, # 20 Exhibit Deposition Pg 14 of Joel Tipton, # 21 Exhibit Affidavits in Support of Debbie Tipton, # 22 Exhibit Letters in Suport of Debbie Tipton, # 23 Exhibit Affidavit of John Updegrove)(Jackson, Frank) Modified restrictions on 7/2/2013 (thh). (Entered: 07/02/2013) |
| 07/03/2013 | 75 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT *(Sealed - Attorney)* by USA; (available to: USA, Deborah Lee Tipton) (Escaravage, Cortney) (Entered: 07/03/2013) |
| 07/08/2013 | 76 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT *(Sealed - Attorney)* by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Stewart, Jack) (Entered: 07/08/2013) |
| 07/30/2013 | 77 | PRESENTENCE INVESTIGATION REPORT (Final Report) *(SEALED - Attorney)* as to Deborah Lee Tipton. (available to USA, Deborah Lee Tipton) Schedule for Sentence on or after 8/8/2013(Tim Woo - crg) (Entered: 07/30/2013) |
| 08/23/2013 | | NOTICE OF HEARING as to Deborah Lee Tipton: Sentencing set for 9/18/2013 10:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 |

| | | |
|---|---|---|
| | | before District Judge Martin Reidinger. *This is your only notice - you will not receive a separate document*.(khm) (Entered: 08/23/2013) |
| 09/11/2013 | 79 | SEALED DOCUMENT *(Sealed - Attorney)*: by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Stewart, Jack) (Entered: 09/11/2013) |
| 09/12/2013 | 80 | SEALED MOTION *(Sealed - Attorney)* filed by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit)(Stewart, Jack). Motions referred to Dennis Howell. (Entered: 09/12/2013) |
| 09/16/2013 | 81 | NOTICE of *Conventional Filing* by Deborah Lee Tipton (Stewart, Jack) (Entered: 09/16/2013) |
| 09/17/2013 | 82 | Attachment to Previously filed 77 Presentence Investigation Report as to Deborah Lee Tipton. (available to USA, Deborah Lee Tipton)(Tim Woo - crg) (Entered: 09/17/2013) |
| 09/17/2013 | 83 | SEALED SENTENCING MEMORANDUM *(Sealed - Attorney)* by USA; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit 1) (Escaravage, Cortney) (Entered: 09/17/2013) |
| 09/17/2013 | 84 | MOTION for Mandatory Victim Restitution and for a Ninety Day Extension to Determine Final Restitution by USA as to Deborah Lee Tipton. Responses due by 9/27/2013 (Escaravage, Cortney) (Entered: 09/17/2013) |
| 09/18/2013 | | Minute Entry: SENTENCING as to Deborah Lee Tipton held before District Judge Martin Reidinger. Factual Basis Found. Government attorney: Cortney Escaravage. Defendant attorney: Jack Stewart, Jr. Court Reporter: Tracy Dunlap. (khm) (Entered: 09/18/2013) |
| 09/18/2013 | | **ORAL ORDER granting 84 Motion for a Ninety Day Extension to Determine Final Restitution by USA as to Deborah Lee Tipton (1). Entered by District Judge Martin Reidinger on 9/18/2013. (khm)** (Entered: 09/18/2013) |
| 09/24/2013 | | **ORAL ORDER *(Sealed - Attorney)* denying 73 Sealed Motion (available to: USA, Deborah Lee Tipton) as to Deborah Lee Tipton (1); *(Sealed - Attorney)* denying 80 Sealed Motion (available to: USA, Deborah Lee Tipton) as to Deborah Lee Tipton (1) Entered by District Judge Martin Reidinger on 9/18/2013. (khm)** (Entered: 09/24/2013) |
| 09/24/2013 | 85 | **JUDGMENT as to Deborah Lee Tipton (1). Count(s) 1, Dismissed on motion of the United States. Count(s) 2, 3, Imprisoned for 216 months as to Count 2 and 120 months as to Count 3 to run concurrently to Count 2, for total of 216 months; supervised release for term of Life as to each of Counts 2 and 3; $200 assessment. Signed by District Judge Martin Reidinger on 9/21/2013. (khm)** (Entered: 09/24/2013) |
| 09/24/2013 | 86 | **STATEMENT OF REASONS *(Sealed - Attorney)* re: 85 Judgment (available to: USA, Deborah Lee Tipton). Signed by District Judge Martin Reidinger on 9/21/2013. (khm)** (Entered: 09/24/2013) |
| 10/01/2013 | 87 | NOTICE OF APPEAL by Deborah Lee Tipton re 85 Judgment,. Filing fee $ |

| | | 455, receipt number 0419-2123987. *Use this link www.ca4.uscourts.gov to retrieve 4th Circuit case opening documents, i.e. Appearance of Counsel, Docketing Statement, Disclosure Statement, Transcript Order Form, and CJA 24 Vouchers.* Note: Your Transcript Order Form (and CJA 24 if applicable) must be served on the District Court as well as the Circuit Court. (Jackson, Frank) (Entered: 10/01/2013) |
|------------|------|---------------------------------------------------------------------------------------------|
| 10/01/2013 | 88 | TRANSCRIPT REQUEST by Deborah Lee Tipton for proceedings held on 9/18/2013 before Judge Reidinger, (Jackson, Frank) (Entered: 10/01/2013) |
| 10/02/2013 | 89 | Transmission of Notice of Appeal as to Deborah Lee Tipton to US Court of Appeals re 87 Notice of Appeal. (ejb) (Entered: 10/02/2013) |
| 10/02/2013 | 90 | USCA Case Number as to Deborah Lee Tipton 13-4737 for 87 Notice of Appeal, USCA Case Manager: Sharon A. Wiley. (nll) (Entered: 10/02/2013) |
| 10/16/2013 | 91 | USCA TRANSCRIPT ORDER ACKNOWLEDGMENT as to Deborah Lee Tipton re 87 Notice of Appeal --- Court Reporter: Tracy Dunlap Current Deadline: 11/21/2013 Proceedings: 9/18/13 sentencing; 9/18/13 - of Chadwick Jerry Hamby Ordering Party(ies): Deborah Lee Tipton 13-4737 (nll) (Entered: 10/16/2013) |
| 10/16/2013 | 92 | USCA TRANSCRIPT ORDER ACKNOWLEDGMENT as to Deborah Lee Tipton re 87 Notice of Appeal --- Court Reporter: Letha Guerra Current Deadline: 11/21/2013 Proceedings: 9/19/12 - plea hearing Ordering Party(ies): [13-4737] (nll) (Entered: 10/16/2013) |
| 12/02/2013 | 93 | TRANSCRIPT of Sentencing as to Deborah Lee Tipton held on September 18, 2013 before Judge Martin K. Reidinger, Court Reporter: Tracy Dunlap, telephone number 828.771.7217. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** *(Does this satisfy all appellate orders for this reporter? - No.)* Release of Transcript Restriction set for 3/3/2014. (Reporter: Tracy Dunlap, 828-771-7217) (Entered: 12/02/2013) |
| 12/02/2013 | 94 | TRANSCRIPT of Rule 11 Hearing as to Deborah Lee Tipton held on September 19, 2012 before Judge Dennis Lee Howell, Court Reporter: Tracy Dunlap, telephone number 828.771.7217. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** *(Does this satisfy all appellate orders for this reporter? - Yes.)* Release of |

| | | |
|---|---|---|
| | | Transcript Restriction set for 3/3/2014. (Reporter: Tracy Dunlap, 828-771-7217) (Entered: 12/02/2013) |
| 12/17/2013 | 95 | SEALED MOTION *(Sealed - Attorney)* for Restitution filed by USA; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Randall, Cortney). Modified on 12/18/2013 to remove referral (ejb). (Entered: 12/17/2013) |
| 12/20/2013 | 96 | MOTION for Extension of Time to File Response/Reply *to Memorandum in Support of Restitution* by Deborah Lee Tipton. (Attachments: # 1 Exhibit Doctors Order)Motions referred to Dennis Howell(Jackson, Frank) (Entered: 12/20/2013) |
| 12/23/2013 | 97 | RESPONSE to Motion by USA as to Deborah Lee Tipton re 96 MOTION for Extension of Time to File Response/Reply *to Memorandum in Support of Restitution* (Randall, Cortney) (Entered: 12/23/2013) |
| 12/23/2013 | 98 | **ORDER granting 96 Motion for Extension of Time to File Response/Reply as to Deborah Lee Tipton (1)Responses due by 1/16/2014. Signed by District Judge Martin Reidinger on 12/23/13. (emw)** (Entered: 12/23/2013) |
| 01/10/2014 | | NOTICE OF HEARING ON MOTION FOR RESTITUTION in case as to Deborah Lee Tipton 95 SEALED MOTION *(Sealed - Attorney)* for Restitution filed by USA; (available to: USA, Deborah Lee Tipton) : Motion Hearing set for 1/30/2014 09:00 AM in COURTROOM 3, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. *This is your only notice - you will not receive a separate document.*(khm) (Entered: 01/10/2014) |
| 01/14/2014 | 99 | SEALED DOCUMENT *(Sealed - Attorney)*: Objection to Restitution re: 95 SEALED MOTION *(Sealed - Attorney)* for Restitution filed by USA (available to: USA, Deborah Lee Tipton), by Deborah Lee Tipton; (available to: USA, Deborah Lee Tipton) (Attachments: # 1 Exhibit 1 Affidavit of John & Donna Updegrove, # 2 Exhibit 2 Depo Transcript, # 3 Exhibit 3 Depo Transcript, # 4 Exhibit 4 Depo Transcript, # 5 Exhibit 5 Depo Transcript, # 6 Exhibit 6 Adventure Treks Annual Rpt)(Jackson, Frank) Modified text on 1/23/2014 (ejb). (Entered: 01/14/2014) |
| 01/15/2014 | | Set/Reset Hearings as to Deborah Lee Tipton: Hearing on Motion for Restitution RESET for 2/7/2014 11:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Martin Reidinger. (khm) (Entered: 01/15/2014) |
| 01/16/2014 | 100 | **ORDER that The United States Marshal shall have the Defendant present in Asheville, North Carolina, for a hearing on the determination of restitution on February 7, 2014 at 11:00 a.m. as to Deborah Lee Tipton. Signed by District Judge Martin Reidinger on 1/15/2014. (khm)** (Entered: 01/16/2014) |

| PACER Service Center |
|---|
| Transaction Receipt |

| 01/28/2014 11:10:00 | | | |
|---|---|---|---|
| **PACER Login:** | al4043 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cr-00025-MR-DLH |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |



FILED
ASHEVILLE, NC
APR - 4 2012
U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**  )  <br>  )  <br> **v.**  )  <br>  )  <br> **DEBORAH LEE TIPTON**  )  <br>  )  <br>  )  <br>  ) | **DOCKET NO.** 1:12cr 25 <br><br> **BILL OF INDICTMENT** <br><br> **Violations:** <br> **18 U.S.C. § 2251(a)** <br> **18 U.S.C. § 2252(a)(1)** <br> **18 U.S.C. § 2252(a)(4)(B)** <br> **18 U.S.C. § 2252(b)** |

### THE GRAND JURY CHARGES:

### COUNT ONE

On or about September 10, 2011, in Henderson County, within the Western District of North Carolina and elsewhere,

### DEBORAH LEE TIPTON

did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and did attempt to do so, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 2251(a).

### COUNT TWO

On or about September 10, 2011, in Henderson County, within the Western District of North Carolina and elsewhere,

### DEBORAH LEE TIPTON

did knowingly transport visual depictions, using the Internet, a means and facility of interstate and foreign commerce, and the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions are of such conduct.

All in violation of Title 18, United States Code, Sections 2252(a)(1), 2252(b), and Section 2.

## COUNT THREE

On or about September 10, 2011, continuing until on or about February 21, 2012, in Henderson County, within the Western District of North Carolina, and elsewhere,

### DEBORAH LEE TIPTON

did knowingly possess one or more matters, which contained any visual depiction that had been mailed, shipped and transported in interstate and foreign commerce, and which was produced using materials which had been mailed, shipped, or transported in interstate and foreign commerce, by any means including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct, and which visual depiction was of such conduct; that is, **DEBORAH LEE TIPTON** possessed one or more emails, computer hard drives and a video camera which contained images of minors engaging in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2).

All in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and (b).

### NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Pursuant to Fed. R. Crim.32.2(a), notice is hereby given that the defendant has or had a possessory or legal interest in the following property that is subject to forfeiture in accordance with 18 U.S.C. § 2253 and 21 U.S.C. § 853:

(a) all property involved in the violations alleged in this Bill of Indictment;

(b) all property that facilitated or was used in such violations;

(c) all property which is proceeds of such violations; and,

(d) in the event that any property described in (a), (b), and (c) cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, pursuant to § 853(p) and Fed. R. Crim. P. 32.2(e), to the extent of the value of the property described in (a), (b), and (c)..

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

2

1) 162 Long John Drive, Hendersonville, North Carolina, as more particularly described in a deed in the Registry of Deeds, Henderson County, North Carolina, at Book 1062, Page 243, together with the residences, and all appurtenances, improvements, and attachments thereon;

2) Flip video camera, serial number MB1014019979

3) Dell HP Pavilion laptop model dv9700, serial number CNF8260Y9V

4) Toshiba laptop, serial number 6B130080R

A TRUE BILL

FOREPERSON

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

DAVID A. THORNELOE
ASSISTANT UNITED STATES ATTORNEY

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

1:12cr25

UNITED STATES OF AMERICA )
)
) STANDARD CRIMINAL
v. ) DISCOVERY ORDER
)
Deborah Lee Tipton )
_____ )

This Standard Criminal Discovery Order will govern discovery in this case.  The Court assumes the government intends to observe its usual "Open-File Policy."  If the government does <u>not</u> intend to observe an Open-File Policy in this case, it is hereby directed to file a notice to that effect within **ten business days** of the filing of this Order, along with a proposal for how discovery should be handled.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Defense counsel shall be allowed to inspect and photocopy (or be given photocopies), prior to trial, of the information, reports or objects discoverable under Rule 16(a)(1)(A) through (G) of the Federal Rules of Criminal Procedure.

2.  The government shall disclose to defense counsel all <u>Brady</u> material which is in the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence should become known to the attorney for the government.   Disclosure under this paragraph will include the following:

A.   Evidence or information specifically requested by the defendant which is favorable to the accused and "material either to guilt or to punishment."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  <u>Accord United States v. Agurs</u>, 427 U.S. 97, 106 (1976); <u>Sennett v. Sheriff of Fairfax County</u>, 608 F.2d 537 (4th Cir. 1979).  But cf. <u>United States v. Billups</u>, 692 F.2d 320, 325-26 (4th Cir. 1982) (defendant's twenty-five <u>Brady</u> requests too general to constitute "specific request" for documents withheld by the government).

B.   Evidence or information, whether or not specifically requested by the defense, which is of sufficient probative value to create a reasonable doubt of the guilt or which tends to  exculpate the accused.  <u>See United States v. Agurs</u>, <u>supra</u>; <u>Hamric v. Bailey</u>, 386 F.2d 390, 393 (4th Cir. 1967); <u>and Barbee v. Warden, Maryland Penitentiary</u>, 331 F.2d 842 (4th Cir.1964).

C. Evidence or information indicating that the prosecution's case includes perjured testimony. See Alcorta v. Texas, 355 U.S. 28 (1957); and Campbell v. Reed, 594 F.2d 4 (4th Cir. 1979).

D. Evidence or information tending to discredit or impeach the credibility of a government witness, including plea agreements and prior criminal records (if known to the government). See Giglio v. United States, 405 U.S. 150, 154-55 (1972); Gordon v. United States, 344 U.S. 414 (1953); Chavis v. North Carolina, 637 F.2d 213 (4th Cir. 1980); United States v. Sutton, 542 F.2d 1239 (4th Cir. 1976); and Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976).

3. Pursuant to Rule 12(b)(4), the government shall disclose to defense counsel its intention to use in its case in chief at trial any evidence which the defense may be entitled to discover under Rule 16. Unless it notifies defense counsel to the contrary, the government is deemed to intend to use all evidence referred to in its file which is discoverable by defense counsel pursuant to the government's Open-File Policy.

4. The government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments or copies thereof which are in the possession, custody or control of the government.

5. If disclosure is required under governing Supreme Court or Fourth Circuit authority, no later than one week before trial the government shall disclose to defense counsel the identity of any confidential informant who participated in or is otherwise a material witness to the commission of the offense(s) alleged in the indictment. See McCray v. Illinois, 386 U.S. 300, 311 (1967); Roviaro v. United States, 353 U.S. 53 (1957); United States v. Blevins, 960 F.2d 1252, 1258 (4th Cir. 1992); United States v. Mabry, 953 F.2d 127 130 (4th Cir. 1991); United States v. Price, 783 F.2d 1132, 1138 (4th Cir. 1986); and United States v. Smith, 780 F.2d 1102, 1108 (4th Cir. 1985). As per the cited authority, the government is not required to disclose the identity of confidential informants who are mere "tipsters" or "middlemen."

6. The government shall not be required to produce a list of the witnesses it will call at trial. Discovery in this case is governed by Rule 16 of the Federal Rules of Criminal Procedure. The Conference Committee Notes contained in the annotations to the Rule (Conf. Comm. Notes), House Report No. 94-414) provide:

> The Senate version of the bill eliminates these provisions [3-day advance witness list in noncapital cases], thereby making the names and addresses of a party's witnesses nondiscoverable... A majority of Conferees believe it is not in the interest of effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial.

In light of the above-quoted legislative history, and the fact that the United States Attorney maintains an Open-File Policy in this district (with the availability of names of likely witnesses from the government's file), witness lists will not be discoverable absent a special

showing of need.   This special showing must be more than a general need to prepare for trial or cross-examination.   See Cissell, Federal Criminal Trials, Michie Co., 1987, pp.246-249. Accord United States v. Anderson, 481 F.2d 685 (4th Cir. 1973), aff'd, 417 U.S. 211 (1974); and United States v. Hutchings, 751 F.2d 230 (8th Cir. 1984).

7.   The government shall advise defense counsel of its use of any mechanical or electronic surveillance of the defendant in this case.  Disclosure of the contents of any such surveillance recordings will be made only to the extent required by paragraphs 1 and 2 of this Order.   The government will not be required to inquire of any state agencies about the surveillance of the defendant by such agencies, see Reddy v. Jones, 572 F.2d 979 (4th Cir. 1977); however, if surveillance of the defendant has been conducted by any state and the government has received the results of such surveillance, it shall reveal the existence of the surveillance to defense counsel and shall disclose the results of the surveillance to the extent that such disclosure is required under paragraphs 1 and 2 of this Order.

8.   If a mail cover or telegraph intercept has been used in the investigation of the defendant, the government shall promptly so advise defense counsel.

9.   No later than two weeks before the scheduled date for trial, the government shall disclose to defense counsel any evidence the government will offer under Rules 404(b) or 807 of the Federal Rules of Evidence.

10.   No later than one week before trial, the government shall make all government witnesses who are in protective custody, or otherwise under government control, available to defense counsel for interview.  "[D]efense counsel [will be allowed] to hear directly from the witness[es] whether [they are] willing to talk to the defense attorney, either alone or in the presence of his attorney."  United States v. Walton, 602 F2d 1176, 1180 (4th Cir. 1979).  The government may petition the court for an ex parte determination of the applicability of this Order to any particular government witness.  However, it remains defense counsel's responsibility to make arrangements with the appropriate authorities to interview any government witnesses in custody at the Mecklenburg County Jail or other local detention facilities.

11.   The government shall preserve all evidence or records arguable subject to disclosure under any of the Federal Rules of Criminal Procedure, or under Brady and its progeny, see Chavis v. North Carolina, 637 F.2d 213 (4th Cir. 1980); however, the government need not preserve the rough interview notes of a government agent once the notes have been incorporated in a formal report.  United States v. Hinton, 719 F.2d 711 (4th Cir. 1983).

12.   Any request for a James hearing to determine the existence of a conspiracy before trial is hereby denied.  United States v. Hines, 717 F.2d 1481 (4th Cir. 1983).

13.   The government is encouraged, but not required, to provide early disclosure of Jencks Act material.  18 U.S.C. § 3500.  See also United States v. Presser, 844 F.2d 1275 (6th Cir. 1988).

14.   The government shall not be required to disclose ongoing investigations of a

defendant or potential indictments. The "Petite" policy is no more than a "housekeeping provision" and does not entitle the defendant to such relief. United States v. Howard, 590 F.2d 564, 567-68 (4th Cir. 1979).

15. The government shall not be required to disclose statements of co-conspirators or co-defendants. United States v. Roberts, 811 F.2d 257 (4th Cir. 1987).

16. If the government has used any branch of the United States military in the investigation of this case, the United States Attorney shall so advise defense counsel.

17. Defense counsel shall be allowed to file additional motions beyond the deadline set forth in the standard arraignment order only upon a showing of good cause for the late filing.

18. In multiple defendant cases, counsel may adopt motions of co-defendants by filing a "Notice of Intention to Adopt Motions of Co-Defendants" at any time before the deadlines for filing such motions has passed. The U.S. Attorney's Office shall be served with a copy of defendant's Notice, but no further motion shall be necessary. The U.S. Attorney's Office may object to the Notice as untimely or on any other appropriate grounds. Provided further, should counsel for the defendant file a motion for this purpose (rather than the authorized Notice), said motion is hereby granted.

19. Unless another date has been specified, discovery shall initially be provided to defense counsel no later than **ten days** after the filing of this Order, or of the appointment or general appearance of counsel, whichever occurs last. However, it is understood that documents and other information may be placed in the government's file beyond the prescribed ten (10) day period, and nothing in this Order shall relieve defense counsel of his or her ongoing obligation to review the government's file in such an instance. In the event of a dispute, any terms and conditions regarding the Open-File Policy to which the government and defense counsel have agreed shall be binding upon the parties unless such terms and conditions are clearly unfair or unreasonable.

20. At such time as the government provides defense counsel with discovery under Rule 16(a)(1), defense counsel shall provide the government with reciprocal discovery under Rule 16(b)(1), as requested by the government's Open-File Policy.

21. Any discovery material, including but not limited to, statements and summaries of interviews of witnesses made available for review by the prosecution to the defense, **shall not be used by the defendant or his attorney for any purpose other than in direct relationship to the case and no further disclosure shall be made of these items.**

22. If requested, any documents turned over to defense counsel shall be returned immediately to attorneys for the United States upon disposition of this case.

23. Notices of future proceedings shall be sent to defense counsel only. It shall be the joint responsibility of both counsel and the defendant to insure that the defendant promptly receives notice of when and where his future appearance is required.

The Clerk is directed to send copies of this Order to defense counsel and the United States Attorney's Office.

Dated: 4/16/12

Dennis L. Howell
United States Magistrate Judge

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

UNITED STATES OF AMERICA,    )
                             )
v.                           )        Docket No.: 1:12 CR 25
                             )
DEBORAH LEE TIPTON,          )
            Defendant.       )

---

### MOTION TO DISCLOSE DOCUMENT(S)

NOW COMES the Defendant, DEBORAH LEE TIPTON, by and through undersigned counsel of record, Jack W. Stewart, who respectfully moves this Court to permit the disclosure of a certain document or documents received by the Magistrate at the detention hearing of the above-captioned cause on April 16, 2012 and does show unto the Court in support thereof the following:

1. That the Defendant, Deborah Lee Tipton, was arrested and detained by Federal authorities on April 12, 2012 on various counts of production and possession of sexually explicit materials involving minors.

2. That following the Defendant's arrest on April 12, 2012, a detention hearing was conducted before the Honorable Dennis Howell, United States Magistrate, which resulted in the entry of an Order of Detention entered on or about the 16th day of April, 2012.

3. That the Court's announced decision to continue the detention of the Defendant, in part, was based upon a review of a document by the Magistrate that has been placed under seal since the date of the Defendant's hearing.

4. That as a result of the detention hearing on the above date, Magistrate Dennis Howell entered a sealed Order that contained a document which "makes references to certain facts" that appear to be contained in the sealed application for the Search Warrant issued in this matter.

5. That undersigned counsel avers that since he was not present nor was he privy to any documents contained, reviewed, or sealed relative to that hearing, the contents of the detention Order of the Magistrate and/or any other document which were ordered sealed by the

Case 1:12-cr-00025-MR-DLH   Document 19   Filed 05/23/12   Page 1 of 2

**26**

Magistrate at that hearing should be disclosed and shared with
undersigned counsel in this cause.

6. That this Motion is filed in good faith on behalf of the Defendant and
would not warrant any hardship on either party to this action.

WHEREFORE, the Defendant respectfully prays this Court to permit the
revelation of the contents of the detention Order issued by the Magistrate on
April 16, 2012 and any documents referenced by the Magistrate that were
otherwise placed under seal in the determination of the Defendant's detention
hearing be shared in an appropriate manner with undersigned counsel.

THIS, the 23rd day of May, 2012.


       /s/   Jack W. Stewart
       JACK W. STEWART
       State Bar No.: 10053
       Attorney for the Defendant
       Post Office Box 1920
       Asheville, North Carolina 28802
       (828) 253-5673
       jack@jackstewartlaw.com


## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing
pleading upon all other parties via ECF transmission.

Assistant U.S. Attorney David Thorneloe
David.thorneloe@usdoj.gov

THIS, the 23rd day of May, 2012.


       /s/   Jack W. Stewart
       JACK W. STEWART


2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

UNITED STATES OF AMERICA,       )
                                )
v.                              )          Docket No.: 1:12 CR 25
                                )
DEBORAH LEE TIPTON,             )
            Defendant.          )

---

## MOTION FOR DISCOVERY

NOW COMES the Defendant,  DEBORAH LEE TIPTON, in the
above-captioned case, by and through undersigned counsel of record, Jack W.
Stewart, pursuant to Rules 12(b)(4), 12(d)(1) and (2) and Rule 16 of the Federal
Rules of Criminal Procedure, that in the event this case is not ordinarily handled
by the Office of the United States Attorney's standard "open-file" policy, then the
Movant requests that the Government voluntarily comply with the Defendant's
Motion for discovery in the following particulars, being to wit:

A.     With respect to statements of the Defendant:

    1.     To permit the Defendant to inspect and copy or photographs any
relevant written or recorded statements made by the Defendant, or
copies thereof, within the possession, custody or control of the
Government or the existence of which is known or by the exercise of
due diligence may become known to the Government;

    2.     To permit the Defendant to inspect and copy the original tapes of
conversations, if any, of the Defendant, whether obtained through
wiretap or otherwise;

    3.     To divulge, in written or recorded form, the substance of any oral
statement made by the Defendant which the Government intends to
offer into evidence at trial.

B.     With respect to statements of witnesses:

    1.     To permit the Defendant to inspect and copy or photograph any
relevant written or recorded statements made by any witness or
witnesses whom the Government intends to call which are presently
within the possession, custody or control of the Government or the
existence of which is known or by the exercise of due diligence may
become known to the Government.

   2. To divulge in written or recorded form the substance of any oral statement made by any witness or witnesses whom the Government intends to call and whose testimony the Government intends to offer into evidence at trial.

C.   With respect to the Defendant's prior record:

   1. To furnish to the Defendant a copy of her prior criminal record, if any, available to the Government.

D.   With respect to documents and tangible objects:

   1. To permit the Defendant to inspect and copy or to photograph all papers, documents, photographs, motion pictures, records, tangible objects including fingerprints and other substances and items, or copies or portions thereof, which are material to the preparation of his defense or intended for use by the Government as evidence at the trial, or were obtained from or belong to the Defendant.

E.   With respect to any potentially exculpatory evidence:

   1. To disclose to the Defendant prior felony convictions, misdemeanor convictions, and/or juvenile adjudications for any witnesses:

      a) Expected to be called by the Government at the trial;
      b) Testified before any grand jury concerning this case; or
      c) Furnished written or oral statements during the investigation of this case to any Federal investigators.

   2. To provide to the Defendant any specific incidents of misconduct or "bad acts" by any witnesses expected to be called by the Government, whether or not such conduct resulted in a criminal conviction.

   3. To disclose to the Defendant any consideration that has been held out to any witness [or the witness' attorney] to encourage that witness' cooperation with the Government; tentative plea bargaining; monetary compensation; assistance in avoiding prosecution in other jurisdictions; omission from being named in an indictment or as an unindicted co-conspirator; civil or tax immunity grants; with respect to any criminal, civil, tax court, court of claims, administrative, or other legal dispute with the Government (State or Federal); or any other considerations, regardless of their nature, granted or promised, which contemplate leniency or preferential treatment in exchange for cooperation with the Government.

<div align="center">2</div>

<div align="center">**29**</div>

4. To provide the Defendant any and all existing or pending criminal charges, either felony, misdemeanor, or juvenile, as well as parole, supervised release, post release control, or probation of any witnesses the Government expects to call, and any other pending or potential legal disputes and/or transactions each Government witness may have with the Government.

5. To provide the Defendant any and all statements or summaries of statements from Government witnesses, and individuals the Government does not intend to call as witnesses, obtained by law enforcement agencies which relates to the alleged offense(s), or which are otherwise favorable to the Defendant. Specifically any reports or other information received from the Henderson County Sheriff's Department, the Henderson County Department of Social Services and letters or reports from Polly Penland, Licensed Clinical Social Worker, and Hugh Rutledge (employee of the Henderson County Department of Social Services) whether or not contained in the file of the Henderson County Sheriff.

6. To disclose to the Defendant the personnel file of any Government witnesses, and identity of any Government files concerning the Government witnesses in which the Government witness is mentioned.

F.   With respect to reports of examination or tests:

1. To provide a copy and to permit for the Defendant to inspect, copy or photograph the results and reports of all examinations of items of tangible evidence including results and reports of all tests, measurements and experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the Government or the existence of which is known or by the exercise of due diligence may become known to the Government;

2. To permit the Defendant to inspect, examine, test, and copy subject to appropriate safeguards, any physical evidence available to the prosecution which the Government intends to offer into evidence, all test and experiments made in connection with such evidence including latent fingerprints, photographs, and any reports, reproduction or studies thereof, analyses and reports thereof, and in particular any electronic devices or images which the Government proposes to use as exhibits or evidence in the case.

3

    3. To provide the Defendant a full and complete chain of custody listings as to each potential items of evidence including all visual images, videos and electronic devices seized or tested by the Government.

G.    With respect to documentation and images obtained from any electronic medium or source:

    1. Documentation stating the section of the computer where the images were located and/or reproduced.

    2. Documentation of the specific software or program used to recover the images located on the computer in question, including, but not limited to, the exact version, number of the product used and all "bug" database record from the manufacturer selling the product.

    3. Documentation reflecting the origin of the visual images of the subject child and each computer and the section of the computer wherein the images were sent, received, and/or stored.

    4. A complete copy of the Forensic Examination conducted on behalf of the Government by a Federal and/or private agencies of any all electronic items seized from the Defendant's home or person, including examinations of computers, software and hardware, video cameras and memory cards, and any and all other materials in possession of the Federal Government.

H.    With respect to any and all additional evidence:

    1. To permit the Defendant to inspect and copy all evidence known to or in possession of the Government that is: (a) material to the issues in this cause and, (b) may be favorable to the Defendant. This request includes, but is not limited to, exculpatory material in the form of: statement to persons who have been interviewed by officers in connection with the subject matter of this case, whether or not the Government intends to present them at trial, a summary reflecting the criminal records of all persons the Government intends to call at trial, if any have any criminal record; and any and all reports or memorandums that we presented on behalf of the prosecution which contain any exculpatory material.

    Further, that there may be other items and matters of evidence, information, and data in existence that are not specifically enumerated herein to which the Defendant may be unaware, due to the secrecy surrounding the

4

investigation and the lack of prior discovery, but in any event, the Defendant now requests that he be afforded the opportunity to examine any and all evidence and information, whether specifically delineated and listed herein or not, that may be materially favorable to the Movant within the context of <u>Brady v. Maryland</u> or <u>Giglio</u>.

THIS, the 23rd day of May, 2012.

                   <u>  /s/   Jack W. Stewart    </u>
                   JACK W. STEWART
                   State Bar No.: 10053
                   Attorney for the Defendant
                   Post Office Box 1920
                   Asheville, North Carolina 28802
                   (828) 253-5673
                   jack@jackstewartlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing pleading upon all other parties via ECF transmission.

Assistant U.S. Attorney David Thorneloe
David.thorneloe@usdoj.gov

THIS, the 23rd day of May, 2012.

                   <u>  /s/   Jack W. Stewart    </u>
                   JACK W. STEWART

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 1:12CR25 |
| v. | ) | **PLEA AGREEMENT** |
| DEBORAH LEE TIPTON | ) | |
| | ) | |

NOW COMES the United States of America, by and through Anne M. Tompkins, United States Attorney for the Western District of North Carolina, and the defendant, DEBORAH LEE TIPTON, in person and through counsel, Jack Stewart and respectfully inform the Court that they have reached an agreement pursuant to Federal Rule of Criminal Procedure ("Rule") 11. References to the United States herein shall mean the United States Attorney for the Western District of North Carolina.

## I. Plea

1.     The defendant agrees to enter a voluntary plea of guilty to Counts Two and Three as set forth in the Bill of Indictment, and admits to being in fact guilty as charged in Counts Two and Three. If the Court finds the defendant's plea to be voluntary and knowingly made, and accepts the plea, then the United States will move at the appropriate time to dismiss Count One as to this defendant in the Bill of Indictment.

2.     The defendant understands that each and every provision set forth below is a material term of the plea agreement. The defendant's failure to fully comply with any provision of the plea agreement or attempt to withdraw the guilty plea (i) will relieve the United States of its obligations under the Plea Agreement, but the defendant will not be relieved of the defendant's obligations or allowed to withdraw the guilty plea; (ii) may constitute the defendant's failure to accept responsibility under U.S.S.G. § 3E1.1; and (iii) will permit the United States to proceed on any dismissed, pending, superseding or additional charges.

## II. Sentence

3.     The defendant is aware that the statutory minimum and maximum sentences for each count are as follows:

<u>Count 2</u>: a $ 250,000 fine, no fewer than 5 years and no more than 20 years imprisonment, or both, and pursuant to 18 U.S.C. § 3583(k), a maximum supervised release term of life. The defendant is also aware that should she have a prior conviction under Title 18, Chapter 110, section 1591, chapter 71, chapter 109A,

Page 1 of 9

Case 1:12-cr-00025-MR-DLH   Document 48   Filed 09/18/12   Page 1 of 9

**33**



chapter 117, article 120 of the Uniform Code of Military Justice, or under the law of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment or transportation of child pornography, then she shall be subject to a mandatory minimum sentence of fifteen (15) years imprisonment and a statutory maximum sentence of forty (40) years imprisonment

<u>Count 3</u>: a $ 250,000 fine, not more than 10 years imprisonment, or both, and pursuant to 18 U.S.C. § 3583(k), a maximum supervised release term of life. The defendant is also aware that should she have a prior conviction under Title 18, United States Code § 2251 et seq., Title 18, United States Code § 2141 et seq., or Title 18, United States Code § 2421 et seq., or under the law of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment or transportation of child pornography, then she shall be subject to a mandatory minimum sentence of ten (10) years imprisonment and a statutory maximum sentence of twenty (20) years imprisonment.

4.     The defendant understands that a violation of supervised release may subject the defendant to an additional period of incarceration.

5.     The defendant is aware that the Court: (a) will consider the advisory *United States Sentencing Guidelines [U.S.S.G.]* in determining the sentence; (b) has not yet determined the sentence and any estimate of the likely sentence is a prediction rather than a promise; (c) has the final discretion to impose any sentence up to the statutory maximum for each count; and (d) is not bound by recommendations or agreements by the United States. Knowing this, the defendant understands that the defendant may not withdraw the plea as a result of the sentence imposed.

6.     Pursuant to Rule 11(c)(1)(B), the parties agree that they will jointly recommend that the Court make the following findings and conclusions as to the U.S.S.G:

   a.     That pursuant to U.S.S.G. §2G2.2(c), the cross reference to U.S.S.G. §2G2.1 applies because the offense involved causing, transporting, or permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

   b.     Pursuant to U.S.S.G. §2G2.1(a), the defendant's base offense level is 32.

   c.     Pursuant to U.S.S.G. §2G2.1(b)(1)(A), the offense involved a minor who had not attained the age of 12 years, therefore a 4 level enhancement applies.

   d.     Pursuant to U.S.S.G. §2G2.1(b)(3), the offense involved distribution,

Page 2 of 9

therefore a 2 level enhancement applies.

e.  Pursuant to U.S.S.G. §2G2.1(b)(5), the defendant was a parent, relative or legal guardian of the minor involved in the offense, therefore a 2 level enhancement applies.

f.  Provided that the defendant clearly demonstrates acceptance of responsibility for the defendant's offense, as well as all relevant conduct, the United States will recommend a two-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(a).

g.  The Government agrees that the defendant's entry of plea is timely for purposes of U.S.S.G. § 3E1.1(b).

h.  The defendant understands and acknowledges as previously acknowledged above, that the defendant may not withdraw the plea based on the court's decision not to accept sentencing recommendations made by the defendant, the United States, or a recommendation made jointly by both the defendant and the United States.

i.  The United States will inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court.

j.  Notwithstanding the forgoing stipulations, the United States reserves its right to argue in favor of any other enhancements that may apply.

k.  The defendant agrees to register as a sex offender. Additionally, the defendant acknowledges that she has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, she must register and keep the registration current in each of the following jurisdictions: where she resides; where she is an employee; and where she is a student.
    She understands that the requirements for registration include providing her name, her residence address, and the names and addresses of any places where she is or will be an employee or a student, among other information. She further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which she resides, is an employee, or is a student not later than three business days after any change of my name, residence, employment, or student status. She has been advised, and understands, that failure to comply with these obligations subjects his to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Page 3 of 9

l.      The parties agree that either party may seek a departure or variance from the "applicable guideline range" (U.S.S.G. § 5C1.1).

m.     If the Defendant wishes to argue for a variance that could take the sentence outside of the advisory guidelines range, she will notify the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of the facts or issues she intends to raise. If the defendant intends to rely upon any expert report or opinion at sentencing, she must disclose any such opinion or report to the government 30 days in advance of the sentencing date.

7.    The defendant agrees to the following with respect to financial disclosures, monetary penalties, forfeiture and restitution:

a.     To pay full restitution, regardless of the resulting loss amount, to all victims directly or indirectly harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and an unanticipated amount of a restitution order will not serve as grounds to withdraw the defendant's guilty plea.

b.     To make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose.

c.     To truthfully complete under penalty of perjury within thirty days of the execution of this Plea Agreement a financial statement provided by the U.S. Attorney's Office and to update the statement with material changes within seven days of the change. In addition, the defendant agrees that the U.S. Attorney's Office has his consent to conduct a full financial prejudgment investigation of his finances, including obtaining a copy of the defendant's credit report and subpoenaing any records its deems relevant.

d.     That monetary penalties imposed by the Court will be (i) subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and (ii) submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

8.    With regard to each and every asset listed in the Bill of Indictment or seized in a related investigation or administrative, state, or local action the defendant stipulates and agrees:

Page 4 of 9

a.    To its forfeiture herein, if necessary as substitute property under 21 U.S.C. § 853(p), as made applicable by 18 U.S.C. § 982(b)(1) or any other statute, or in a separate administrative or civil judicial proceeding. The United States may use the value of forfeited property for restitution but is not required to do so.

b.    That the defendant has or had a possessory interest or other legal interest in each item or property.

c.    To the Magistrate Judge conducting all proceedings necessary for any civil forfeiture of the property, including entry of judgment, pursuant to 28 U.S.C. §636(c).

d.    That the property may be returned to the true owner or treated as abandoned property.

e.    To assist the United States in the recovery of all assets by (i) taking whatever steps are necessary or requested by the United States to pass clear title to the United States; (ii) preventing the disbursement of any moneys and sale of any property or assets; (iii) not encumbering or transferring any real estate after the defendant's signing of this plea agreement; and (iv) directing all financial institutions to turn over and surrender to the United States all funds and records regarding accounts listed in any document signed by defendant pursuant to this plea agreement, as criminal proceeds or substitute property.

9.    The defendant waives all rights to notice of forfeiture under Rule 32.2 and of any other action or proceeding regarding such assets. The defendant consents and waives all rights to compliance by the United States with any applicable deadlines under 18 U.S.C. § 983(a). Any related administrative claim filed by the defendant is hereby withdrawn.

10.    If the United States discovers that the defendant has not fully disclosed all assets, the United States may seek forfeiture of any subsequently-discovered assets, and the defendant agrees to the immediate forfeiture of any such assets.

11.    The defendant further agrees to participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

### III. Procedure

12.    The defendant agrees that a duly-qualified federal Magistrate Judge may conduct the hearing required by Rule 11.

13.    The factual basis, as required by Fed. R. Crim. P. 11(b)(3), will be deferred until the time of sentencing. The defendant stipulates that there is a factual basis for the plea of guilty and that the Court may use the offense conduct set out in the Presentence Report, except any facts to which the defendant has objected, to establish a factual basis for the defendant's plea. If requested

Page 5 of 9

by the United States, the defendant shall sign a Factual Resume, which will be filed separately.

## IV. Waivers

14.    The defendant is aware that the law provides certain limited rights to withdraw a plea of guilty, has discussed these rights with defense counsel and knowingly and expressly waives any right to withdraw the plea once the Magistrate Judge has accepted it.

15.    The defendant acknowledges that Rule 11(f) and Fed. R. of Evid. 408 and 410 are rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions. The defendant knowingly and voluntarily waives these rights and agrees that any statements made in the course of the defendan's guilty plea or this plea agreement (in part or in its entirety, at the sole discretion of the United States) will be admissible against the defendant for any purpose in any criminal or civil proceeding if the defendant fails to enter or attempts to withdraw the defendant's guilty plea, or in any post-conviction proceeding challenges the voluntary nature of the guilty plea.

16.    The defendant agrees that by pleading guilty, the defendant is expressly waiving the right: (a) to be tried by a jury; (b) to be assisted by an attorney at trial; (c) to confront and cross-examine witnesses; and (d) not to be compelled to incriminate him or herself.

17.    The defendant has discussed with his attorney: (1) defendant's rights pursuant to 18 U.S.C. § 3742, 28 U.S.C. § 2255, and similar authorities to contest a conviction and/or sentence through an appeal or post-conviction after entering into a plea agreement; (2) whether there are potential issues relevant to an appeal or post-conviction action; and (3) the possible impact of any such issue on the desirability of entering into this plea agreement.

18.    The defendant, in exchange for the concessions made by the United States in this plea agreement, waives all such rights to contest the conviction except for: (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct. The defendant also knowingly and expressly waives all rights conferred by 18 U.S.C. § 3742 or otherwise to appeal whatever sentence is imposed with the two exceptions set forth above. The defendant agrees that the United States preserves all its rights and duties as set forth in 18 U.S.C. § 3742(b).

19.    The defendant waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

20.    The defendant waives any and all challenges relating to the images involved in the offense or relevant conduct based on *Free Speech v. Ashcroft*, 535 U.S. 234 (2002).

## V. Effects of Plea

Page 6 of 9

21.    The defendant understands that if this case is governed by Title 18, United States Code, Sections 3143(a)(2) and 3145(c) that a judicial officer shall order that a person who has been found guilty of an offense of this kind be detained unless there are statutory justifications why such person's detention would not be appropriate.

22.    The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. The defendant understands that no one can predict to a certainty the effect of the defendant's conviction(s) on the defendant's immigration status and wants to plead guilty regardless, even if the consequence is the defendant's automatic removal from the United States.

## VI.  Assistance to United States

23.    If requested by the United States, but only if so requested, the defendant agrees to cooperate with the United States, including but not limited to the following:

a.    The defendant will provide truthful information about the subject charges and about any other criminal activity within the defendant's knowledge to any United States agent or agency that the United States designates.

b.    The defendant will testify truthfully in any trial, hearing, or grand jury proceeding, including, but not limited to, testimony against any co-defendants, as the United States designates.  Should the defendant testify at the request of the United States, the defendant hereby waives payment of any witness fees or expenses.

c.    The defendant will be reasonably available for debriefing and pre-trial conferences as the United States may require.

d.    The defendant will provide to the United States all documents or materials of any kind in the defendant's possession or under the defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

e.    The defendant understands that the United States desires only truthful and accurate information and testimony and, in fact, that knowingly giving false information or testimony can be prosecuted as an additional criminal offense.

f.    The defendant will not violate any federal, state, or local law, or any order of any court, including any conditions of pretrial, pre-sentence, or post-sentence release.

g.    The defendant's obligation under this section is a continuing one, and will continue after sentencing until all investigations and/or prosecutions to which the defendant's cooperation may be relevant have been completed.

Page 7 of 9

39

24.    The United States agrees that nothing that the defendant discloses pursuant to the Plea Agreement will be used against the defendant in any other criminal proceeding, except:

      a.    information regarding crimes of violence;

      b.    in a prosecution for any crime committed by the defendant after the effective date of this plea agreement;

      c.    as necessary in a prosecution for false statements, perjury, obstruction of justice, or in any proceeding for impeachment, rebuttal, or countering a defense (whether presented through opening statements, cross-examination, or otherwise);

      d.    by making indirect use of any information that the defendant provides, including investigative leads or other witnesses. However, if there is an agreement pursuant to U.S.S.G. §1B1.8, information directly or indirectly derived from the defendant pursuant to this agreement shall not be used in determining the applicable guideline range.

25.    Nothing in this agreement places any obligation on the United States to seek the defendant's cooperation or assistance. If the defendant so assists the United States:

      a.    The United States, in its sole discretion, will determine whether said assistance has been substantial.

      b.    Upon a determination that the defendant has rendered substantial assistance, the United States may make a motion pursuant to U.S.S.G. § 5K1.1 for imposition of a sentence below the applicable Sentencing Guidelines or pursuant to Rule 35(b) for a reduction in the defendant's term of imprisonment. The United States may also, within its sole discretion, move the Court pursuant to 18 U.S.C. § 3553(e) and/or Rule 35(b) to impose a sentence below any applicable statutory mandatory minimum

      c.    Any determination that the defendant has failed to provide substantial assistance or has knowingly provided false information is within the sole discretion of the United States, and the defendant waives all objections and rights of appeal or collateral attack of such a determination. The defendant understands that if the United States makes a motion for reduction of sentence, the motion is not binding on the District Court.

## VII. Conclusion

26.    This agreement is effective and binding once signed by the defendant, the defendant's attorney, and an attorney for the United States. The defendant agrees to entry of this plea agreement at the date and time scheduled by the Court.

27.    There are no agreements, representations, or understandings between the parties in

Page 8 of 9

this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties.

SO AGREED:

for DAVID A. THORNELOE, Assistant United States Attorney DATED: 9-18-12

JACK STEWART, Attorney for Defendant DATED: 9/18/12

DEBORAH LEE TIPTON, Defendant DATED: 9/18/12

1

```
 1              UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF NORTH CAROLINA
 2                  (Asheville Division)

 3

 4   --------------------------x
     UNITED STATES OF AMERICA,   :
 5            Plaintiff          :
                                 :
 6                               :
                                 :
     vs                          :Criminal Action:1:12-CR-25
 7                               :
     DEBORAH LEE TIPTON,         :
 8            Defendant.         :
     --------------------------x
 9

10                      Wednesday, September 19, 2012
                        Asheville, North Carolina
11

12       The above-entitled action came on for a Rule 11
     Hearing before the HONORABLE DENNIS LEE HOWELL, United
13   States Magistrate Judge, in Courtroom 2 commencing at
     11:11 a.m.
14

15           APPEARANCES:
16           On behalf of the Government:
             DAVID L. THORNLOE, Esquire
17           U.S. Attorney's Office
             100 Otis Street
18           Asheville, North Carolina  28801

19
             On behalf of the Defendant:
20           JACK W. STEWART, Jr, Esquire
             P.O. Box 1920
21           Asheville, North Carolina  28802

22

23

24
     Tracy Rae Dunlap, RMR, CRR          828.771.7217
25   Official Court Reporter
```

2

1                          I N D E X

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                    Page
25   Reporter's Certificate ......................29

Deborah Tipton/Court                                    3

**P R O C E E D I N G S**

1

2       THE COURT:  I'm now going to call the case of

3  United States of America versus Deborah Lee Tipton, which

4  is file 1:12-CR-25 and which is on the calendar for the

5  purpose of a Rule 11 proceeding with Ms. Tipton.

6       Ms. Tipton, I am advised that you have filed a

7  written plea agreement with the government in regard to

8  the charges that are presented against you in this case.

9  As a result, I am required under the Federal Rules of

10  Criminal Procedure to inquire and advise you concerning

11  that agreement.  I'm going to have to ask you some

12  questions and you're going to be required to personally

13  respond to those questions under oath.  So I'm going to

14  have to require that you put your left hand on the Bible,

15  raise your right hand and take the oath to tell the truth

16  from the clerk.

17                 (Witness duly sworn at 11:12 a.m.)

18                      **EXAMINATION**

19       BY THE COURT:

20  Q.    I'm going to let you set down, ma'am.  We've got

21  several questions to go over, and I want you to be

22  comfortable.  Ms. Tipton, do you understand that you're

23  now under oath and that you are required to give truthful

24  answers to the questions I am about to ask you?

25  A.    Yes, sir.

Deborah Tipton/Court

4

1  Q.     Do you understand that if you give false

2  information under oath that you may be prosecuted for

3  perjury or false statement?

4  A.     Yes, sir.

5  Q.     Are you able to hear and understand my questions

6  to you?

7  A.     Yes, sir.

8  Q.     Do you understand that you have the right to have

9  a United States District Judge conduct this proceeding?

10  A.     Yes, sir.

11  Q.     Recognizing your right to proceed before a

12  District Judge, do you expressly consent to proceed in

13  this court?  That is, before a United States Magistrate

14  Judge?

15  A.     Yes, sir.

16  Q.     Ms. Tipton there's been presented to me a document

17  that is entitled "Sealed Addendum to Entry and Acceptance

18  of Guilty Plea" which provides information to me

19  concerning your name, age, education, use of alcohol or

20  drugs, and medical information.  Did you provide the

21  information for the completion of that document and did

22  you sign that document?

23  A.     Yes, I did.

24  Q.     Is all the information that you provided in that

25  document true and accurate?

**45**

1  A.      Yes, sir.

2  Q.      Is your mind clear, and do you understand that

3  you're here today to enter a guilty plea that cannot

4  later be withdrawn?

5  A.      Yes, sir.

6  Q.      Have you and Mr. Stewart reviewed the Bill of

7  Indictment, and have you and he reviewed the plea

8  agreement in this case?

9  A.      Yes, sir.

10  Q.      From my examination of the plea agreement I am

11  advised that you're pleading guilty to Count Two and

12  Count Three as contained in the Bill of Indictment.  Is

13  that correct?

14  A.      That's correct.

15  Q.      In Count Two of the Bill of Indictment it is

16  alleged as follows.  On or about September 10, 2011, in

17  Henderson County, within the Western District of North

18  Carolina and elsewhere, Deborah Lee Tipton did knowingly

19  transport visual depictions using the Internet, a means

20  of facilitating interstate and foreign commerce, and the

21  production of such visual depictions involved the use of

22  a minor engaging in sexually explicit conduct and the

23  visual depictions are of such conduct, all in violation

24  of Title 18 United States Code, Sections 2252(a)(1),

25  2252(b) and Section II.  Are you pleading guilty to that

Deborah Tipton/Court                                          6

1  offense?

2  A.      Yes, sir.

3  Q.      The law requires that I advise you of the

4  essential elements of such an offense.  Before I advise

5  you of those elements I am going to read to you the

6  statute that it is alleged that you have violated.  18

7  United States Code, Section 2252(a)(1) reads as follows.

8  (a) is:  Any person who, (1), knowingly transports or

9  ships using any means or facility of interstate or

10  foreign commerce or in or effecting interstate or foreign

11  commerce by any means, including by computer, or mails

12  any visual depiction if, (A), the producing of such

13  visual depiction involves the use of a minor engaging in

14  sexually explicit conduct and, (B), such visual depiction

15  is of such conduct shall be punished as provided in

16  subsection (B) of this section.

17        The elements of the offense described in Count Two

18  of the Bill of Indictment and in that statute are as

19  follows.  (1), that you knowingly transported or shipped

20  in interstate or foreign commerce, (2), visual depictions

21  or other materials, the production of which involves the

22  use of a minor engaging in sexually explicit conduct;

23  (3), that such visual depictions were of such conduct

24  and, (4) that you did all such acts knowingly,

25  intentionally, willfully and unlawfully.

**47**

Deborah Tipton/Court

7

1    Do you understand each element of the offense

2   charged in Count Two of the Bill of Indictment as I have

3   explained them to you?

4   A.    Yes, sir.

5   Q.    Do you understand that upon a plea of "not guilty"

6   the government would be required to prove each element of

7   that offense beyond a reasonable doubt?

8   A.    Yes, sir.

9   Q.    Do you understand that the government would be

10   required to prove that the unlawful acts were committed

11   knowingly, willfully, intentionally and unlawfully?

12   A.    Yes, sir.

13   Q.    I am also required by law to advise you concerning

14   the maximum and any minimum penalties prescribed by law

15   for such an offense.  Those maximum and potential

16   penalties are as follows.  The maximum possible penalty

17   for such an offense is a term of imprisonment of not less

18   than five years nor more than 20 years, a fine not to

19   exceed the sum of $250,000, or both, a term of supervised

20   release of not less than five years nor more than life,

21   and a $100 Special Assessment.  However, if you have a

22   prior conviction under this chapter, Section 1591,

23   Chapter 71, Chapter 109(A), Chapter 117 or under Section

24   920 of Title 10 or under the laws of any state relating

25   to aggravated sexual abuse, sexual abuse or abusive

**48**

1  sexual conduct involving a minor or ward, or the

2  production, possession, receipt, mail, sale, production

3  or shipment of child pornography, then you would be

4  subject to being sentenced to a term of imprisonment of

5  not less than 15 years nor more than 40 years, a fine not

6  to exceed the sum of $250,000, or both, a term of

7  supervised release of not less than five years and not

8  more than life, and a $100 special assessment.

9       Do you fully understand the charges against you as

10 contained in Count Two of the Bill of Indictment,

11 including those potential maximum and potential minimum

12 penalties?

13 A.    Yes, sir.

14 Q.    In Count Three of the Bill of Indictment it is

15 alleged as follows.  On or about September 10, 2011, and

16 continuing until on or about February 21st 2012, in

17 Henderson County, within the Western District of North

18 Carolina and elsewhere, Deborah Lee Tipton did knowingly

19 possess one or more matters which contained a visual

20 depiction that had been mailed, shipped or transported in

21 interstate and foreign commerce and which was produced

22 using materials which had been mailed, shipped or

23 transported in interstate and foreign commerce by any

24 means, including by computer, the production of which

25 involved the use of a minor engaging in sexually explicit

**49**

Deborah Tipton/Court

9

1  conduct, and such visual depictions was of such conduct.

2       That is, Deborah Lee Tipton possessed one or more

3  e-mails, hard drives and a video camera which contained

4  images of minors engaging in sexually explicit conduct as

5  defined in Title 18 United States Code, Section 2256(2),

6  all in violation of Title 18 United States Code, Section

7  2252(a)(4)(B). Are you pleading guilty to that offense?

8  A.     Yes, sir.

9  Q.     The law requires that I advise you of the

10 essential elements of such an offense. Before I do so, I

11 am going to read to you the statute that it is alleged

12 that you have violated. 18 United States Code, Section

13 2252(a)(4)(B) reads as follows: Any person who knowingly

14 possesses or knowingly accesses with intent to view one

15 or more books, magazines, periodicals, films, videotapes,

16 or other mail which contain any depiction that has been

17 mailed or has been shipped or transported using any means

18 or facility of interstate or foreign commerce, or in or

19 effecting interstate or foreign commerce, or was produced

20 using materials which have been mailed or so shipped or

21 transported by any means, including by computer if, (1),

22 the producing of such visual depiction involves the use

23 of a minor engaging in sexually explicit conduct and,

24 (2), such visual depiction of such conduct shall be

25 punished as provided in subsection (B) of this section.

**50**

Deborah Tipton/Court

10

1      Are you pleading -- let me advise you now of the
2  elements of that offense.  The elements of that offense
3  are as follows.  And, also, this is the element of Count
4  Three.  The elements of the offense are as follows:  (1),
5  that you knowingly possessed one or more books,
6  magazines, films, videotapes or other matter as described
7  in the Bill of Indictment; (2), that the materials
8  described in the Bill of Indictment which you possessed
9  have been shipped or transported in or effecting
10  interstate or foreign commerce or was produced using
11  materials which have been so (inaudible) shipped or
12  transported, including transmission by means of a
13  computer.  (3), that the books, magazines, periodicals,
14  films, videotapes or other materials described in the
15  Bill of Indictment were produced visual depictions
16  involving the use of a minor engaging in sexually
17  explicit conduct and such visual depiction was of such
18  conduct.  And (4), that you did all such acts knowingly,
19  intentionally, willfully and unlawfully.
20      Do you understand each element of the offense
21  charged in Count Three of the Bill of Indictment as I
22  have explained them to you?
23  A.    Yes, sir.
24  Q.    Do you understand that upon a plea of "not guilty"
25  the government would be required to prove each element of

**51**

11

1  the offense charged in Count Three of the Bill of
2  Indictment beyond a reasonable doubt?
3  A.    Yes, sir.
4  Q.    Do you understand that the government would be
5  required to prove that the unlawful acts were committed
6  knowingly, willfully, intentionally and unlawfully?
7  A.    Yes, sir.
8  Q.    I am also required by law to advise you concerning
9  the maximum and any minimum penalties prescribed by law
10 for such an offense.  Those maximum and potential minimum
11 penalties are as follows.  The maximum possible penalty
12 for such an offense is a term of imprisonment of not more
13 than ten years, a fine not to exceed the sum of $250,000,
14 or both a term of supervised release of not less than
15 five years or not more than life, and a $100 special
16 assessment.  If, however, you have a prior conviction
17 under this chapter, Chapter 71, Chapter 109A, Chapter 117
18 or under Section 920 of Title 10, or under the laws of
19 any state relating to aggravated sexual abuse, sexual
20 abuse, or abusive sexual conduct involving a minor or
21 ward, or production, possession, receipt, mail, sale,
22 distribution, shipment or transportation of child
23 pornography, then you will be sentenced to a term of
24 imprisonment of not less than ten years and not more than
25 20 years, a fine not to exceed the sum of $250,000, or

Deborah Tipton/Court

12

1  both, a term of supervised release of not less than five

2  years and not more than life, and a $100 Special

3  Assessment.

4          Do you fully understand the charges against you as

5  contained in Count Three of the Bill of Indictment,

6  including those maximum penalties?

7  A.     I do.

8  Q.     Ms. Tipton, do you understand that if you are not

9  a citizen of the United States your guilty plea may

10 result in your deportation from this country, your

11 exclusion from admission to this country, or the denial

12 of your naturalization under federal law?

13 A.     Yes.

14 Q.     Ms. Tipton, if the Court imposes an active term of

15 imprisonment of more than one year the Court is required

16 also to order a term of what is called supervised

17 release.  A term of supervised release may be ordered in

18 other circumstances.  This means that after a defendant

19 is released from prison, there are certain terms and

20 conditions they will be required to follow.  The length

21 of supervised release usually ranges from one to five

22 years but may be more or less than that for certain

23 offenses.  Do you understand the terms of supervised

24 release as I have explained them to you?

25 A.     Yes, I do.

53

Deborah Tipton/Court

13

1  Q.    Do you understand that if you violate the terms

2  and conditions of supervised release you could be

3  returned to prison for an additional period of time?

4  A.    Yes.

5  Q.    Do you understand that parole has been abolished

6  in the federal system and that if you are sentenced to a

7  term of imprisonment you will not be released on parole?

8  A.    Yes.

9  Q.    Have you and Mr. Stewart discussed how the

10 sentencing guidelines may apply in your case?

11 A.    Yes.

12 Q.    Do you believe you understand how these guidelines

13 may apply to you?

14 A.    Yes.

15 Q.    Do you understand that the Court will not be bound

16 by the sentencing guidelines but, nonetheless, must

17 consult those guidelines and take them into account when

18 sentencing?

19 A.    Yes.

20 Q.    Do you understand that the sentence the Court will

21 impose will be within the statutory limits and in the

22 Court's sound discretion and could be greater or less

23 than the sentences provided for by the guidelines?

24 A.    Yes, sir.

25 Q.    Do you understand that the Court will follow a

Deborah Tipton/Court

14

1   procedural components of the guidelines system which

2   means that the probation office will prepare a

3   presentence report which contains guidelines calculations

4   and that both you and the government will have an

5   opportunity to object to any alleged deficiencies in the

6   report?

7   A.      Yes, sir.

8   Q.      Do you understand that in some circumstances you

9   may receive a sentence that is different, that is either

10  higher or lower than that called for by the guidelines?

11  A.      Yes, sir.

12  Q.      Do you understand that if the sentence is more

13  severe than you expect or the Court does not accept the

14  government's sentencing recommendation that you will

15  still be bound by your plea and have no right to withdraw

16  the plea of guilty?

17  A.      I do.

18  Q.      Do you understand that the Court has the

19  discretion in appropriate circumstances to order you to

20  make restitution to any victim of the offense?  The Court

21  may also, in appropriate circumstances, require you to

22  pay the cost of your confinement in prison or cost of

23  supervision or special investigative cost or all of these

24  costs.  The Court may also require you to forfeit

25  property involved in the offenses.  Do you understand

Deborah Tipton/Court

15

1   these requirements as I have explained them to you?

2   A.      I do.

3   Q.      Do you understand that you have a right to plead

4   not guilty, to have a speedy trial before a judge and

5   jury, to summons witnesses to testify in your behalf, and

6   to confront witnesses against you?

7   A.      I do.

8   Q.      Do you understand that if you exercise your right

9   to trial you would be entitled to the assistance of an

10  attorney, that you would not be required to testify, that

11  you would be presumed innocent and the burden would be on

12  the government to prove your guilt beyond a reasonable

13  doubt?  Do you understand all of these rights?

14  A.      I do.

15  Q.      Do you understand that by entering a plea of

16  guilty you forfeit and waive or give up your right to

17  plead guilty to a trial by jury and at that trial the

18  right to assistance of counsel, the right to confront and

19  cross-examine witnesses against you, and the right

20  against compelled self-incrimination or any other rights

21  associated with a jury trial?

22          Do you understand that by entering this plea of

23  guilty you are waiving or giving up all of these rights?

24  A trial will not be held.  If your plea of guilty is

25  accepted there will be one more hearing where the

Deborah Tipton/Court

16

1  District Court will determine, (a), whether there is a

2  factual basis for your plea and, (b), what sentence to

3  impose.  Do you understand all of these things?

4  A.    I do.

5  Q.    Are you in fact guilty of the counts in the Bill

6  of Indictment to which you have come to court today to

7  plead guilty?  That is, did you commit the acts described

8  in counts Two and Three of the Bill of Indictment?

9  A.    Yes, sir.

10 Q.    Is your plea of guilty voluntary?

11 A.    Yes, sir.

12 Q.    Other than the promises contained in the written

13 plea agreement has anyone made any promise to you or

14 threatened you in any way to cause you to enter this plea

15 of guilty against your wishes?

16 A.    No.

17 Q.    Do you enter this plea of guilty of your own free

18 will, fully understanding what you are doing?

19 A.    Yes, sir.

20 Q.    Do you understand that entering a plea of guilty

21 to a felony charge may deprive you, at least for a time,

22 of certain civil rights such as the right to vote, hold a

23 public office, serve on a jury, and possess a firearm?

24 A.    Yes, sir.

25 Q.    Is your willingness to plead guilty the result of

57

Deborah Tipton/Court

17

1  prior discussions between your attorney, Mr. Stewart,

2  and he having discussions with the attorney for the

3  government, Mr. Thornloe?

4  A.    Yes, sir.

5  Q.    And as a result of those discussions have you and

6  the government entered into a plea agreement in regard to

7  this case?

8  A.    Yes, sir.

9        THE COURT:  If you would, please, Mr. Thornloe,

10 present the terms of the agreement.

11       MR.  THORNLOE:  Thank you, Your Honor.  Your

12 Honor, the plea agreement is in writing and it was filed

13 with this Court on September 18th 2012.  In paragraph one

14 the defendant agrees to enter a voluntary plea of guilty

15 to counts Two and Three as set forth in the Bill of

16 Indictment.  She admits to being guilty of this charge.

17 In counts Two and Three, if the Court finds the

18 defendant's plea to be voluntarily and knowingly made and

19 accepts the plea then the United States would move at the

20 appropriate time to dismiss Count One as to this

21 defendant in the Bill of Indictment.

22       Your Honor, on page two, paragraph six:  Pursuant

23 to your Rule 11(c)(1)(B) the parties agree that they will

24 jointly recommend that the Court make the following

25 findings and conclusions as to the United States

**58**

Deborah Tipton/Court

18

1   Sentencing Guidelines.  In 6(a) the defendant agrees that

2   pursuant to United States Sentencing Guideline

3   2(g)(2.2)(C) the cross-reference to United States

4   Sentencing Guideline (g)241 applies because the offense

5   involved causing, transporting or permitting the minor to

6   engage in sexually explicit conduct for the purpose of

7   producing a visual depiction of such conduct.

8        In 6(b), pursuant to United States Sentencing

9   Guidelines  2(g)(2.1)(A) applies because the offense

10  involved causing, transporting or permitting the minor to

11  engage in sexually explicit conduct for the purpose of

12  producing a visual depiction of such conduct.  In 6(b),

13  pursuant to United States Sentencing Guideline

14  (g)(2.1)(A), the defendant's base offense level is 32.

15       In paragraph 6(c), pursuant to United States

16  Sentencing Guideline 2(g)(2.1)(B)(i)(a), the offense

17  involved a minor who had not obtained the age of 12

18  years.  Therefore, a four level enhancement applies.

19  Pursuant to United States Sentencing Guideline

20  2(g)(2.1)(B)(iii), the offense involved distribution.

21  Therefore, a two level enhancement applies.

22       In paragraph 6(e), the two level enhancement

23  pursuant to United States Sentencing Guideline

24  2(g)(2.1)(B)(v) applies.

25       In paragraph 6(f), provided that the defendant

**59**

Deborah Tipton/Court

19

1  clearly demonstrates an acceptance of responsibility for

2  her offense, as well as all relevant conduct, the United

3  States will move to recommend a two level reduction

4  pursuant to United States Sentencing Guideline

5  3(e)(1.1)(A).

6      In paragraph 6(g), the government agrees that the

7  defendant's entry of a plea is timely.

8      In paragraph 6(j), notwithstanding the foregoing

9  stipulations, the United States reserves its right to

10 argue in favor of any other enhancements that may be

11 apply.

12     In paragraph 6(k) the defendant agrees to register

13 as a sex offender and she agrees to all the terms of sex

14 offense registration per that paragraph.

15     In paragraph 6(l), the parties agree that either

16 party may seek a departure or variance from the

17 applicable guideline range.

18     In paragraph 6(m), if the defendant wishes to

19 argue for a variance that could take the sentence outside

20 the advisory guidelines range, she will notify the Court,

21 the United States probation officer and the government

22 counsel at least ten days in advance of sentencing of the

23 facts or issues she intends to raise.  If the defendant

24 intends to rely upon any expert report or pending her

25 sentencing she must disclose any such opinion or report

**60**

Deborah Tipton/Court

20

1   to the government 30 days in advance of the sentencing

2   date.

3        In paragraph 8, with respect to each and every

4   aspect listed in the Bill of Indictment or seized from a

5   related investigation or administrative state or local

6   action, the defendant stipulates and agrees to a

7   forfeiture pursuant to the terms of paragraph regarding

8   forfeiture.  Specifically, Your Honor, the following

9   property was used and involved in or was at the site of

10  the offenses described in counts Two and Three and is

11  forfeited to the United States.  The first piece of

12  property being 162 Long John Drive, Hendersonville, North

13  Carolina as more particularly described in a deed in the

14  Register of Deeds in Henderson County, North Carolina at

15  book 1,062, page 243, together with the residence and all

16  pertinences, improvements and attachments thereon.

17  She also agrees to the forfeiture of a flip video camera,

18  a Dell HP Pavilion laptop model DV as in "Delta Victor,"

19  9700.  And she also agrees to a Toshiba laptop.  Your

20  Honor, those items will also be described in a consent

21  and order of judgment forfeiture which I will be offering

22  to the Court.

23        In paragraph 18, in exchange to the concessions

24  made by the United States in the plea agreement, the

25  defendant waives all rights to contest her conviction

1  except for, (1), claims of ineffective assistance of

2  counsel or, (2), prosecutorial misconduct.

3        In paragraph 20, the defendant waives any and all

4  challenges related to the images involved in the offense

5  or relevant conduct based on the case of *Free Speech*

6  *versus Ashcroft*.

7        Your Honor, in paragraph 27 the defendant agrees

8  that there are no agreements, representations or

9  understandings between the parties in this case other

10  than those explicitly set forth in the plea agreement.

11        Your Honor, the parties have also signed the plea

12  agreement.  It was signed by the defendant, by

13  Mr.  Stewart, and by an assistant United States attorney

14  for the United States Attorney's office.

15        Your Honor, those are all the highlights of the

16  plea agreement.  Whether I have read a specific term

17  written in the plea agreement or not, the defendant

18  agrees to all the terms in the plea agreement.

19        THE COURT:  Thank you very much, Mr.  Thornloe.

20                  **FURTHER EXAMINATION**

21        BY THE COURT:

22  Q.    Ms. Tipton, do you understand and agree with the

23  terms of the plea agreement as they've just been

24  explained to you by Mr.  Thornloe?

25  A.    Yes.

Deborah Tipton/Court

22

1  Q.    I believe your signature is on the plea agreement;

2  is that correct?

3  A.    That's correct.

4  Q.    Have you discussed your right to appeal with

5  Mr. Stewart, and do you understand that the plea

6  agreement in this case provides that you may not appeal

7  your conviction or sentence or contest the same in a

8  post-conviction proceeding unless it is on the grounds

9  of, (1), prosecutorial misconduct or, (2), ineffective

10 assistance of counsel?

11 A.    Yes.

12 Q.    Do you knowingly and willingly accept these

13 limitations on your right to appeal and to file a post-

14 conviction proceeding?

15 A.    Yes.

16        THE COURT:  Mr. Stewart, have you reviewed each

17 of the terms of the plea agreement with Ms. Tipton and

18 are you satisfied that she understands those terms?

19        MR. STEWART:  Yes, sir, Your Honor.

20                    **FURTHER EXAMINATION**

21        BY THE COURT:

22 Q.    Ms. Tipton, have you had ample time to discuss

23 with Mr. Stewart any possible defenses that you may have

24 to these charges and have you told Mr. Stewart

25 everything that you want him as your attorney to know

**63**

Deborah Tipton/Court

23

1  about this case?

2  A.      I have.

3  Q.      Are you entirely satisfied with the services of

4  your attorney?

5  A.      Yes, sir.

6  Q.      Are you telling me that you know and understand

7  fully what you're doing, that you've heard and understood

8  all parts of this proceeding, and that you want me to

9  accept your plea of guilty?

10 A.      Yes, sir.

11 Q.      Do you have any questions, statements or comments

12 that you would like to make about anything that's been

13 brought up or discussed in the course of this proceeding?

14 If you do I'll be happy to try to answer your questions,

15 or I'll be glad to hear any statements or comments that

16 you might wish to make.

17 A.      Not at this time, sir.

18 Q.      Ms. Tipton, the majority of the questions that I

19 have asked you are contained in a document that is

20 entitled "Rule 11 Inquiry and Order of Acceptance of

21 Plea." As I was asking you the questions that are

22 contained within that document I was attempting to

23 accurately record your answers, but I will need for you

24 and Mr. Stewart to go over this document and make sure

25 that I have indeed accurately recorded your answers.

24

1   More importantly, I need for you and Mr. Stewart to make
2   sure that the answers that you gave me to those questions
3   were truthful.  If, after review, you and he find that
4   the answers to the questions are both accurate and
5   truthful, then I will need for you and he to sign this
6   document and to then return it back to me.
7          Ms. Hightower, would you give that document to
8   Mr. Stewart and Ms. Tipton?
9          Based upon the representations and answers given
10  by the defendant and her attorney in the foregoing Rule
11  11 proceeding, I find that the defendant's plea is
12  knowingly and voluntarily made and that the defendant
13  understands the charges, potential penalties and the
14  consequences of her plea, and her plea of guilty is
15  hereby accepted.
16         Ms. Hightower, let me give you the Rule 11
17  document.
18         Mr. Thornloe, I believe you mentioned that you
19  may have an order of forfeiture for me to sign.  Is that
20  correct, sir?
21         MR. THORNLOE:  Yes, sir.  I've handed that to
22  Mr. Stewart, and I'm going to give you an opportunity to
23  look that over.
24         THE COURT:  All right.
25         MR. STEWART:  If Your Honor, please.  I need to

25

1  review that with my client.  I had anticipated it, but I

2  have not had a chance to go over that with Ms. Tipton.  I

3  would like the opportunity to do that before we --

4         THE COURT:  Would you like us to take a recess to

5  give you an opportunity to go over that with her in full

6  detail?

7         MR. STEWART:  That would be satisfactory.  Yes,

8  sir.

9         THE COURT:  It would look like to me, from my

10 knowledge of those things, that it will probably take you

11 about 15 minutes to do so.

12        MR. STEWART:  That should be fine, Judge.

13        THE COURT:  Any objection to us taking a 15 minute

14 recess to give Mr. Stewart an opportunity to review that

15 document with Ms. Tipton?

16        MR. THORNLOE:  No, Your Honor.

17        THE COURT:  All right.  Let's be in recess for 15

18 minutes.

19                    (Off the record at 11:38 a.m.)

20                    (On the record at 11:52 a.m.)

21        THE COURT:  Mr. Stewart, did I give you enough

22 time?

23        MR. STEWART:  Yes, sir, Your Honor, did.  If, Your

24 Honor, please.

25        THE COURT:  All right.  If you need any further

26

1  time --

2      MR. STEWART:  No.

3      THE COURT:  -- I will be glad to give you some

4  more time.

5      MR. STEWART:  No.  That's not necessary.  We have

6  signed off on this, if, Your Honor, please.  I'm just

7  going to -- Mr. Thornloe has already signed, so I'm

8  going to pass it up to the Court.  There is one item I

9  want to call to the Court's attention.  I don't think

10 this is going to present any issues for the government.

11 There was another electronic device that was actually in

12 our care.  It recently came into possession of defense

13 counsel and we have since turned it over to the FBI.  It

14 was an external hard drive.  It's not mentioned anywhere

15 in there, so it's not an item that the government's

16 seeking by way of the consent order of forfeiture.  It

17 had a number of family paragraph photographs.  I don't

18 think there was anything that was illicit that was even

19 found on it, but we do either want the photographs off of

20 that and preserved and retained and returned, or the hard

21 drive returned.  Again, that's not listed on the order

22 I've just passed up to Your Honor, but I wanted to call

23 that to Your Honor's attention.

24     THE COURT:  Mr. Thornloe.

25     MR. THORNLOE:  Your Honor, I do believe I know

**67**

27

1  exactly what Mr. Stewart's referring to.  My

2  recollection is that it does not have any contraband on

3  it and probably wouldn't even have been of any

4  evidentiary value.  Our practice has always been if

5  something -- if a device as a whole does not have any

6  evidentiary value and there's no reason not to return it

7  to the defense, we're very willing to do so.  We'll

8  probably wait until the sentencing is complete to do so.

9  But what I can tell the Court and Mr. Stewart is that

10  all items are secure now and that it has been our

11  practice to return them if there's not contraband, and

12  that would continue be our practice.

13          THE COURT:  Is that satisfactory with you,

14  Mr. Stewart?

15          MR. STEWART:  That's fine.  Like I said, that's

16  not even addressed in the order.  That's fine, if Your

17  Honor, please.

18          THE COURT:  There has been handed to me a consent

19  order of judgment and forfeiture that has been signed by

20  Mr. Thornloe, Ms. Tipton and Mr. Stewart which provides

21  that Ms. Tipton is going to be forfeiting any interest

22  that she has in the real property described as 162 Long

23  John Drive, Hendersonville, North Carolina, recorded at

24  -- evidenced by a deed at book 162, page 243 in the

25  Office of the Register of Deeds for Henderson County,

— Deborah Tipton/Court —

28

1   North Carolina, a flip video camera, a Dell HP Pavilion
2   laptop and a Toshiba laptop.
3        Ms. Tipton, I take it you have signed that
4   document and you're agreeing to the forfeiture of any
5   interest you have in those items; is that correct?
6        THE DEFENDANT:  Yes, sir.
7        THE COURT:  All right.  I'm going to go ahead and
8   affix my signature which is authorized pursuant to the
9   terms of the plea agreement.  I'm going to give that to
10  Ms. Hightower.
11       Anything further for the government in regard to
12  Ms. Tipton's case, Mr.  Thornloe?
13       MR.  THORNLOE:  Not today, Your Honor.
14       THE COURT:  How about from the defendant,
15  Mr.  Stewart?
16       MR. STEWART:  No, sir, Your Honor.
17       THE COURT:  All right.  Well, that will end all
18  proceedings for today in regard to Ms. Tipton.  Good luck
19  to you, Ms. Tipton.
20       THE DEFENDANT:  Thank you.
21       THE COURT:  Anything further from the government
22  in regard to any matter today?
23       MR.  THORNLOE:  No, Your Honor.
24       THE COURT:  Let's be in recess until 9:30 tomorrow
25  morning.

29

1              (Off the record at 11:57 a.m.)

2

3                          **CERTIFICATE**

4          I, Tracy Rae Dunlap, RMR, CRR, an Official Court
   Reporter for the United States District Court for the
5  Western District of North Carolina, do hereby certify
   that I transcribed from audio recording to the best of my
6  ability, by machine shorthand, the proceedings had in the
   case of UNITED STATES OF AMERICA versus DEBORAH LEE
7  TIPTON, 1:12-CR-25 on September 19, 2012.

8          In witness whereof, I have hereto subscribed my
   name, this 2nd day of December 2013.

9

10               __/S/__Tracy Rae Dunlap__
                 TRACY RAE DUNLAP, RMR, CRR
11               OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**70**



**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:12 CR 25**

FILED
IN COURT
ASHEVILLE, N.C.

SEP 1 9 2012

U.S. DISTRICT COURT
W. DIST. OF N.C.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Vs. | ) | **RULE 11 INQUIRY and** |
| | ) | **ORDER OF ACCEPTANCE** |
| DEBORAH LEE TIPTON. | ) | **OF PLEA** |
| ———————————— | ) | |

The court is advised that you have filed a written plea agreement with the government in this case. The court is required by the Federal Rules of Criminal Procedure to inquire and advise you concerning the agreement. The court must ask you some questions and you will be required to personally respond to those questions under oath. I will now ask the Clerk to administer the oath to you.

1. Do you understand that you are now under oath and that you are required to give truthful answers to the questions that I am about to ask you?

        YES: _X_        NO: _____

2. Do you understand that if you give false information under oath you may be prosecuted for perjury or false statements?

        YES: _X_        NO: _____

3. Are you able to hear and understand my questions?

        YES: _X_        NO: _____

4. Do you understand that you have the right to have a United States District Judge conduct this proceeding?

        YES: _X_        NO: _____

5. Recognizing your right to proceed before a district judge, do you expressly consent to proceed in this court, that is, before a United States Magistrate Judge?

YES: __X__        NO: _____

6.  a) There has been presented to me a document entitled "Sealed Addendum to Entry and Acceptance of Guilty Plea" which provides information to me concerning your name, age, education, use of drugs or alcohol and medical information. Did you provide the information for the completion of that document and did you sign that document?

YES: __X__        NO: _____

b) Is all the information provided in the document true and accurate?

YES: __X__        NO: _____

7.  Is your mind clear and do you understand that you are here today to enter a guilty plea that cannot later be withdrawn?

YES: __X__        NO: _____

8.  Have you and your attorney reviewed the bill of indictment and have you and your attorney reviewed the plea agreement?

YES: __X__        NO: _____

9.  From my examination of the plea agreement I am advised that you are pleading guilty to counts two and three as contained in the bill of indictment.

Read counts of the bill of indictment to which the defendant is pleading guilty. Are you pleading guilty to those offense(s)?

YES: __X__        NO: _____

The law requires that I advise you of the essential elements of such an offense. Before I advise you of those elements, I am going to read to you the statute that is alleged that you have violated.

Count Two:

**18 USC 2252(a)(1)**

**(a)    Any person who---**

**(1)    knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign**

2

commerce by any means including by computer or mails, any visual depiction, if ---

    **(A)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    **(B)** such visual depiction is of such conduct.

Shall be punished as provided in subsection (b) of this section

### The Elements of the Offense are as follows:

1. That you knowingly transported or shipped in interstate or foreign commerce;

2. Visual depictions or other materials, the production of which involves the use of a minor engaging in sexually explicit conduct;

3. That such visual depictions were of such conduct; and

4. That you did all such acts knowingly, intentionally, willfully and unlawfully.

### Penalty:

I am also required by law to advise you concerning the maximum and minimum penalties prescribed by law for such an offense or offense(s). Those maximum and minimum penalties are as follows:

The maximum possible penalty for such offense is a term of imprisonment of not less than 5 years', nor more than 20 years', a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than 5 years' nor more than life, and a $100 special assessment.

However, if you had a prior conviction under this Chapter, Section 1591, Chapter 71, Chapter 109(A), Chapter 117 or under Section 920 of Title 10 or under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, then you would be subject to being sentenced to a term of imprisonment of not less than 15 years' nor more than 40 years', a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than 5 years' and not more than life and a $100 special assessment.

Count Three:

**18 USC § 2252(a)(4)(B)**

3

Any person who knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if

    **(i)**    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    **(ii)**    such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

### The Elements of this Offense are as Follows:

1.    That you knowingly possessed one or more books, magazines, periodicals, films, video tapes or other matter as described in the bill of indictment;

2.    That the materials described in the bill of indictment which you possessed had been shipped or transported in or affecting interstate or foreign commerce or was produced using materials which had been so mailed, shipped or transported, including transmission by means of a computer;

3.    That the books, magazines, periodicals, films, video tape or other materials described in the bill of indictment were produced of visual depictions involving the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct; and

4.    That you did all such acts knowingly, intentionally, willfully and unlawfully.

### Penalty:

I am also required by law to advise you concerning the maximum and minimum penalties prescribed by law for such an offense or offense(s). Those maximum and minimum penalties are as follows:

The maximum possible penalty for such offense is a term of imprisonment of not more than 10 years', a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than 5 years' and not more than life and a $100 special assessment.

4

However, if you had a prior conviction under this chapter, Chapter 71, Chapter 109 (A), Chapter 117 or under Section 920 of Title 10 or under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, then you would be sentenced to a term of imprisonment of not less than 10 years' nor more than 20 years', a fine not to exceed the sum of $250,000, or both, a term of supervised release of not less than 5 years' and not more than life, and a $100 special assessment.

10.    Do you understand that if you are not a citizen of the United States, your guilty plea may result in your deportation from this country, your exclusion from admission to this country, or the denial of your naturalization under Federal Law?

YES:  X             NO: _____

11.    a)    Do you fully understand the charges against you, including the maximum and minimum penalties?

YES:  X             NO: _____

b)    Do you understand each element of the offenses charged?

YES:  X             NO: _____

c)    Do you understand that upon a plea of not guilty the government would be required to prove each element of the offenses charged beyond a reasonable doubt?

YES:  X             NO: _____

d)    Do you understand that the government would be required to prove that the unlawful act(s) were committed knowingly, willfully, intentionally, and unlawfully?

YES:  X             NO: _____

12.    If the court imposes an active term of imprisonment of more than one year, the court is required also to order a term of what is called "supervised release," and a term of supervised release may be ordered in other circumstances.  This means that after a defendant is released from prison, there are certain terms and conditions they will be required to follow.  The length of supervised release usually ranges from one to five years, but may be more or less than that for certain offenses.  Do you understand the terms "supervised release" as the court has explained them to you?

5

YES: __X__            NO: _____

13.  Do you understand that if you violate the terms and conditions of supervised release, you could be returned to prison for an additional period of time?

YES: __X__            NO: _____

14.  Do you understand that parole has been abolished in the federal system; and if you are sentenced to a term of imprisonment, you will not be released on parole?

YES: __X__            NO: _____

15.  Have you and your attorney discussed how the Sentencing Guidelines may apply in your case?

YES: __X__            NO: _____

16.  Do you understand how these Guidelines may apply to you?

YES: __X__            NO: _____

17.  Do you understand that the court will not be bound by the Sentencing Guidelines but nonetheless must consult those Guidelines and take them into account when sentencing?

YES: __X__            NO: _____

18.  Do you understand that the sentence the Court will impose will be within the statutory limits and in the court's sound discretion and could be greater or less than the sentence as provided for by the Guidelines?

YES: __X__            NO: _____

19.  Do you understand that the court will follow the procedural components of the Guidelines system, which means that the Probation Office will prepare a presentence report which contains Guidelines calculations and both you and the Government will have an opportunity to object to any alleged deficiencies in the report?

YES: __X__            NO: _____

6

20. Do you understand that in some circumstances you may receive a sentence that is different - that is, either higher or lower - than that called for by the Guidelines?

YES: _X_          NO: _____

21. Do you understand that if the sentence is more severe than you expect or the court does not accept the Government's sentencing recommendation, you will still be bound by your plea and have no right to withdraw the plea of guilty?

YES: _X_          NO: _____

22. Do you understand that the court has the discretion, in appropriate circumstances, to order you to make restitution to any victim of the offense. The court may also, in the appropriate circumstance, require you to pay the costs of your confinement in prison or costs of supervision or special investigative costs or all of these costs. The court may also require you to forfeit property involved in the offenses. Do you understand these requirements as I have explained them to you?

YES: _X_          NO: _____

23. Do you understand you have a right to plead not guilty, to have a speedy trial before a judge and jury, to summons witnesses to testify in your behalf, and to confront witnesses against you?

YES: _X_          NO: _____

24. Do you understand that if you exercise your right to trial you would be entitled to the assistance of an attorney, that you would not be required to testify, that you would be presumed innocent, and the burden would be on the Government to prove your guilt beyond a reasonable doubt. Do you understand all of these rights?

YES: _X_          NO: _____

25. Do you understand that by entering a plea of guilty you forfeit and waive (or give up) your right to plead not guilty, to a trial by jury and at that trial the right to assistance of counsel, the right to confront and cross-examine witnesses against you, and the right against compelled self-incrimination or any other rights associated with a jury trial. Do you understand that by entering this plea of guilty you are waiving (or giving up) all of these rights.

7

A trial will not be held.  If your plea of guilty is accepted, there will be one more hearing where the district court will determine:

(a)    Whether there is a factual basis for your plea; and

(b)    What sentence to impose.

Do you understand that?

YES: __X__          NO: _____

26.    Are you, in fact, guilty of the counts in the bill of indictment to which you have come to court today to plead guilty?  That is, did you commit the act(s) described in counts two and three of the bill of indictment?

YES: __X__          NO: _____

27.    a)    Is your plea of guilty voluntary?

YES: __X__          NO: _____

b)    Other than the promises contained in the written plea agreement, has anyone made any promise to you or threatened you in any way to cause you to enter this plea of guilty against your wishes?

YES: _____          NO: __X__

c)    Do you enter this plea of guilty of your own free will, fully understanding what you are doing?

YES: __X__          NO: _____

28.    Do you understand that entering a plea of guilty to a felony charge may deprive you, at least for a time, of certain civil rights such as the right to vote, hold a public office, serve on a jury and possess a firearm?

YES: __X__          NO: _____

29.    Is your willingness to plead guilty the result of prior discussions between your attorney and the attorney for the government?

YES: __X__          NO: _____

8

78

30. Have you and the government entered into a plea agreement in regard to this case? [Attorney for the government will present the terms of the agreement.]

        YES: __X__        NO: _____

31. Do you understand and agree with the terms of the plea agreement as they have just been explained to you?

        YES: __X__        NO: _____

32. Is this your signature on the plea agreement?

        YES: __X__        NO: _____

33. Have you discussed your right to appeal with your attorney, and do you understand the plea agreement in this case provides that you may not appeal your conviction or sentence or contest the same in a post-conviction proceeding unless it is on the grounds of prosecutorial misconduct or ineffective assistance of counsel?

        YES: __X__        NO: _____

    Do you knowingly and willingly accept this limitation on your right to appeal and to file post-conviction proceedings?

        YES: __X__        NO: _____

34. Counsel, have you reviewed each of the terms of the plea agreement with the defendant and are you satisfied that he(she) understands those terms?

        YES: __X__        NO: _____

35. Have you had ample time to discuss with your attorney any possible defenses that you may have to the charges and have you told your attorney everything that you want your attorney to know about this case?

        YES: __X__        NO: _____

36. Are you entirely satisfied with the services of your attorney?

        YES: __X__        NO: _____

9

79

37. Are you telling the court that you know and understand fully what you are doing; that you have heard and understood all parts of this proceeding; and that you want the court to accept your plea of guilty?

   **YES:** _X_              **NO:** _____

38. Do you have questions, statements, or comments to make about anything brought up or discussed in the course of the proceeding? If you do, I will be happy to try and answer your questions or I will be glad to hear any statements or comments that you want to make.

   **YES:** _____              **NO:** _X_

On advice and in the presence of counsel, the defendant respectfully requests the Magistrate Judge to accept his or her guilty plea. By signing below, the defendant (and counsel) certify and affirm that the answers given to the questions propounded by the court, as recorded above and on the record, are true and accurate to the best of their knowledge.

_____
Defendant's Signature

_____
Counsel's Signature

Based upon the representations and answers given by the defendant (and counsel) in the foregoing Rule 11 proceeding, the court finds that the defendant's plea is knowingly and voluntarily made; and that the defendant understands the charges, potential penalties, and consequences of said plea. Accordingly, the defendant's plea is hereby accepted.

**SO ORDERED**, this the __19th__ day of __October__ 2012.

_____
**DENNIS L. HOWELL**
**UNITED STATES MAGISTRATE JUDGE**

10

1

```
 1                UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA
 2                     (Asheville Division)

 3

 4  --------------------------x
    UNITED STATES OF AMERICA,   :
 5            Plaintiff         :
                               :
 6                             :
    vs                         :Criminal Action:1:12-CR-25
 7                             :
    DEBORAH LEE TIPTON,        :
 8            Defendant.       :
    --------------------------x
 9

10                      Wednesday, September 18, 2013
                        Asheville, North Carolina
11

12       The above-entitled action came on for a Sentencing
    Hearing Proceeding before the HONORABLE MARTIN K.
13  REIDINGER, United States District Judge, in Courtroom 1
    commencing at 10:15 a.m.
14

15

         APPEARANCES:
16       On behalf of the Government:
         CORTNEY S. RANDALL, Esquire
17       U.S. Attorney's Office
         227 W. Trade Street
18       1700 Carillon
         Charlotte, North Carolina  28202
19

20       On behalf of the Defendant:
         JACK W. STEWART, Jr,., Esquire
21       P.O. Box 1920
         Asheville, North Carolina  28802
22

23

24
    Tracy Rae Dunlap, RMR, CRR          828.771.7217
25  Official Court Reporter
```

**81**

1  those were part of the record.  I think the Court has

2  assured me you felt it was, so it needs no further

3  explanation.

4       THE COURT:  I was just checking again.  All of the

5  ones on the hard copy that was delivered for my review

6  show the entry in the electronic filing system and,

7  therefore, I'm confident that everything that I have

8  reviewed and was brought for me to review has in fact

9  been filed in the record in this court.

10      MR. STEWART:  Thank you, Your Honor.  That's all

11  we would have.  Thank you.

12      THE COURT:  Thank you.

13      Ms. Randall, was there anything else filed on

14  behalf of the government that I did not mention?

15      MS. RANDALL:  No, Your Honor.

16      THE COURT:  Ms. Tipton, I need for you to stand

17  please.  Do you recall appearing before the magistrate

18  judge on or about the 19th of September of last year for

19  the purpose of entering a plea of guilty in this case?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Do you remember being sworn in or

22  being placed under oath at that time?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Do you remember answering the

25  questions of the magistrate judge?

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 87 of 196

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 88 of 196

1      THE DEFENDANT:  Yes.

2      THE COURT:  Is it correct that at that time you

3  signed a Plea Inquiry Form indicating that your answers

4  were true and correct at the time they were given?

5      THE DEFENDANT:  Yes.

6      THE COURT:  Were your answers, in fact, true and

7  correct when you answered the questions of the magistrate

8  judge?

9      THE DEFENDANT:  Yes.

10     THE COURT:  If I asked you all the same questions

11 here today, would your answers be the same?

12     THE DEFENDANT:  Yes.

13     THE COURT:  Mr. Stewart, were you in attendance

14 at the Rule 11 hearing for your client?

15     MR. STEWART:  Yes, sir, I was.

16     THE COURT:  Are you satisfied that your client

17 fully understood the questions that were asked of her by

18 the magistrate judge at that hearing?

19     MR. STEWART:  Yes, sir, Your Honor.

20     THE COURT:  Are you satisfied that she has fully

21 understood the questions that I've asked her here today?

22     MR. STEWART:  Yes, sir.

23     THE COURT:  Ms. Tipton, did you answer those

24 questions the way that you did and are you pleading

25 guilty because you did, in fact, commit the crimes with

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 89 of 196

1 which you are charged?

2       THE DEFENDANT: Yes.

3       THE COURT: Is your plea of guilty the result of

4 any threat or force or promise, other than promises that

5 may be in your plea agreement?

6       THE DEFENDANT: No.

7       THE COURT: Are you pleading guilty voluntarily?

8       THE DEFENDANT: Yes.

9       THE COURT: In this case you're pleading guilty

10 pursuant to a plea agreement. In that plea agreement,

11 you have agreed, and the government has agreed, to

12 certain facts and certain factors for sentencing. Under

13 the law I am not required to accept those factors or

14 those facts simply because both sides have agreed. And

15 if I decline to accept any of those facts or factors in

16 my sentencing decision you will not have the right to

17 withdraw your plea. Do you understand that?

18       THE DEFENDANT: Yes.

19       THE COURT: I see you nodding, but I need it on

20 the record.

21       THE DEFENDANT: Yes, sir.

22       THE COURT: Do you understand that?

23       THE DEFENDANT: I do understand that.

24       THE COURT: Is it still your plea to plead guilty

25 in this matter?

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  Based on the representations made to

3  the Court and the answers given by the defendant at the

4  Rule 11 hearing before the magistrate judge, the Court

5  concludes and finds and confirms that the defendant's

6  plea is knowingly and voluntarily made and that the

7  defendant understands the charge, potential penalties,

8  and the consequences of her plea.

9    Mr.  Stewart, does the defendant stipulate that

10  there is a factual basis to support her plea of guilty

11  entered in this case and, further, that the Court may

12  accept the evidence as set forth in the presentence

13  report as establishing such factual basis?

14    MR. STEWART:  I have reviewed that report with my

15  client.  If Your Honor please, we accede to the contents

16  in it and we would stipulate there's a factual basis.

17  Yes, sir.

18    THE COURT:  Ms.  Randall, does the government so

19  stipulate?

20    MS. RANDALL:  So stipulated, Your Honor.

21    THE COURT:  Based on the stipulation of the

22  parties and the evidence as set forth in the presentence

23  report, which report was previously reviewed by the

24  Court, and based upon the defendant's admission of guilt,

25  the Court finds, concludes and confirms that there is a

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 90 of 196

6

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is it correct that at that time you

3   signed a Plea Inquiry Form indicating that your answers

4   were true and correct at the time they were given?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Were your answers, in fact, true and

7   correct when you answered the questions of the magistrate

8   judge?

9          THE DEFENDANT:  Yes.

10          THE COURT:  If I asked you all the same questions

11   here today, would your answers be the same?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Mr.  Stewart, were you in attendance

14   at the Rule 11 hearing for your client?

15          MR. STEWART:  Yes, sir, I was.

16          THE COURT:  Are you satisfied that your client

17   fully understood the questions that were asked of her by

18   the magistrate judge at that hearing?

19          MR. STEWART:  Yes, sir, Your Honor.

20          THE COURT:  Are you satisfied that she has fully

21   understood the questions that I've asked her here today?

22          MR. STEWART:  Yes, sir.

23          THE COURT:  Ms.  Tipton, did you answer those

24   questions the way that you did and are you pleading

25   guilty because you did, in fact, commit the crimes with

7

```
1   which you are charged?
2          THE DEFENDANT:  Yes.
3          THE COURT:  Is your plea of guilty the result of
4   any threat or force or promise, other than promises that
5   may be in your plea agreement?
6          THE DEFENDANT:  No.
7          THE COURT:  Are you pleading guilty voluntarily?
8          THE DEFENDANT:  Yes.
9          THE COURT:  In this case you're pleading guilty
10  pursuant to a plea agreement.  In that plea agreement,
11  you have agreed, and the government has agreed, to
12  certain facts and certain factors for sentencing.  Under
13  the law I am not required to accept those factors or
14  those facts simply because both sides have agreed.  And
15  if I decline to accept any of those facts or factors in
16  my sentencing decision you will not have the right to
17  withdraw your plea.  Do you understand that?
18         THE DEFENDANT:  Yes.
19         THE COURT:  I see you nodding, but I need it on
20  the record.
21         THE DEFENDANT:  Yes, sir.
22         THE COURT:  Do you understand that?
23         THE DEFENDANT:  I do understand that.
24         THE COURT:  Is it still your plea to plead guilty
25  in this matter?
```

8

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Based on the representations made to

3    the Court and the answers given by the defendant at the

4    Rule 11 hearing before the magistrate judge, the Court

5    concludes and finds and confirms that the defendant's

6    plea is knowingly and voluntarily made and that the

7    defendant understands the charge, potential penalties,

8    and the consequences of her plea.

9          Mr.  Stewart, does the defendant stipulate that

10   there is a factual basis to support her plea of guilty

11   entered in this case and, further, that the Court may

12   accept the evidence as set forth in the presentence

13   report as establishing such factual basis?

14         MR. STEWART:  I have reviewed that report with my

15   client.  If Your Honor please, we accede to the contents

16   in it and we would stipulate there's a factual basis.

17   Yes, sir.

18         THE COURT:  Ms.  Randall, does the government so

19   stipulate?

20         MS. RANDALL:  So stipulated, Your Honor.

21         THE COURT:  Based on the stipulation of the

22   parties and the evidence as set forth in the presentence

23   report, which report was previously reviewed by the

24   Court, and based upon the defendant's admission of guilt,

25   the Court finds, concludes and confirms that there is a

9

1  factual basis for the defendant's plea.  Accordingly, the

2  Court confirms the magistrate judge's acceptance of the

3  defendant's guilty plea.  This court accepts the

4  defendant's plea of guilty, finds the defendant is

5  guilty, and enters thereon a verdict and judgment of

6  guilty.

7       Ms.  Tipton, there is a document that has been

8  prepared.  I see that your attorney is showing you a copy

9  there at your table.  On the upper left-hand side it has

10 a caption that reads, "United States of America versus

11 Deborah Lee Tipton."  On the upper right-hand side it has

12 a title that reads, "Presentence Investigation Report."

13 Have you had an opportunity to review this document

14 before today?

15       THE DEFENDANT:  Yes, I have.

16       THE COURT:  Have you had an opportunity to review

17 it with your attorney?

18       THE DEFENDANT:  Yes, I have.

19       THE COURT:  Do you understand the contents of that

20 document?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  Mr.  Stewart, have you had an

23 opportunity to review the presentence report with

24 Ms.  Tipton?

25       MR. STEWART:  I have, Your Honor.

10

1          THE COURT:  Are you satisfied that Ms. Tipton

2   understands the contents of the presentence report?

3          MR. STEWART:  Yes, sir.

4          THE COURT:  Thank you.  Ms.  Tipton, you may take

5   your seat.

6          With regard to the presentence report, as I

7   mentioned earlier, there were many objections to the

8   presentence report.  I have reviewed those objections.  I

9   have reviewed the documents that have been submitted in

10  support of those objections.  Mr.  Stewart, are there any

11  of those that you wish to be heard on further?

12         MR. STEWART:  Your Honor, please, there are just a

13  couple I would like to speak to.  We filed, as Your

14  Honor's already noted, a number of objections with far

15  greater detail, sometimes more duplicity than we should

16  have, so I'm not going to waste the Court's time any

17  further.  But let me call a couple of items just to Your

18  Honor's attention that were actually in our objections,

19  specifically, the objections I filed on behalf of

20  Ms.  Tipton as opposed to those filed by co-counsel, Mr.

21  Jackson.

22         In paragraph seven I brought to the Court's

23  attention on page eight, paragraph 25 of the presentence

24  report.  I wanted the Court to understand in very plain

25  terms that Debbie Tipton has never denied recording the

11

1   victim in this case on the videotape that has been shown

2   or previewed by the Court.  You've actually seen two

3   segments of the videotape.  I think the evidence is that

4   it was actually a single taping session.  It was

5   interrupted by an attempt by Ms. Tipton to try to clean

6   the lens of the camera.  But that being said, I want the

7   Court to also understand that Ms. Tipton had reason to

8   believe shortly after that recording, and a previewing of

9   that same tape both by the victim and my client, that

10  that recording had been deleted.  That was her initial

11  belief at the time.  She has repeated that throughout the

12  multiple filings we've had with this court.  And as I

13  recall, I think that was also the understanding or the

14  belief of the victim at the time, too, that it had been

15  deleted.  Obviously, that was not the case.  I think the

16  facts in this case bear out that that was a

17  misunderstanding.  But I wanted to call that to the

18  Court's attention.

19          Item number ten in my objections, if Your Honor

20  please, and I'm speaking specifically to page 12,

21  paragraph 46 of the presentence report.  I guess in

22  common parlance I was really just quibbling with the age

23  factor.  Mr. Jackson addressed this same issue in his

24  objections on objection five.  Now we use that arbitrary

25  number of 12 years old, as the guideline reports, as sort

12

1   of a line in the sand where a four level enhancement is

2   ordinarily added.  We're not arguing with the fact that

3   the victim was not quite 12 at the time, but she was

4   about as close to 12 -- I think she was -- I think she

5   was 11 years, and maybe a month away from being 12 at the

6   time it happened.

7          Obviously, the investigation of this case, the

8   prosecution of this case, the guilty plea that was

9   entered by my client.  All of those events up to this

10  very day have presented the victim to the court at the

11  age of 12 or over the age of 12.  But at the time the

12  recording was undertaken, while I do not argue or

13  controvert the fact that she was just shy of 12 years,

14  old she was not yet 12.

15         The last item I want to call --

16         THE COURT:  Let me ask you, though, Mr.  Stewart.

17  In terms of your objection to the presentence report,

18  what difference does that make?  At this point, this

19  portion of the presentence report is for the technical

20  determination of what is the offense level, what is the

21  criminal history category, and whether it makes sense or

22  doesn't make sense.  2(g)(2.1)(B)(i)(a) says if the

23  victim is under the age of 12 then the four level

24  enhancement applies.  So, what are you objecting to?

25         MR. STEWART:  If Your Honor please.  I wanted the

**92**

13

1 Court to know, I guess, how close we were to that line.

2 I'm not arguing, in good faith, that the Court should not

3 apply it.  That's a pretty significant enhancement to any

4 sentencing, to add four points to it.  Your Honor's aware

5 of that.  There's a reason for that, and I understand

6 what the reason is by the Sentencing Commission.  I just

7 wanted the Court to be aware of the fact that the victim,

8 at the time this offense happened, and while we recognize

9 she was not yet 12, she was about as close to 12 as you

10 can get.  I understand that.

11        If Your Honor please.  And as far as that's

12 concerned, you'll get the opportunity to argue for what

13 the appropriate sentence is.  Right now we're on the

14 issue of the objections to the presentence report, so I'd

15 like for you to confine your arguments to the objections

16 to the presentence report.  Quibbling with what the

17 sentencing guidelines say or don't say, you can put that

18 in a letter to the Sentencing Commission.  Right now

19 let's keep the argument limited to your objections to the

20 presentence report, please.

21        MR. STEWART:  If Your Honor please.  The last

22 point I want to argue or call to the Court's attention is

23 where paragraph 11 deals -- paragraph 12, the page where

24 we contested the two points enhancement about the offense

25 involving the distribution of child pornography.  I want

14

1  the Court to understand what we were contesting there
2  really had to do with the explanation or the labeling of
3  what my client did, without whether that actually
4  constituted child pornography or not.  There was no
5  question that what she did was videotape a minor, or a
6  young person who was involved in some sort of sexually
7  explicit conduct, I think, is the actual term of art
8  that's used, both in the statute and in the guilty plea
9  that we entered into.

10        The term "child pornography," as Your Honor knows,
11 has a separate and a different meaning by the definitions
12 in Section 2258.  And while I do not understand all of
13 the differences of those distinctions, there is a
14 distinction between child pornography and what my client
15 has admitted doing, entering a guilty plea before, and
16 stands before this Court for sentencing.

17        I wanted Your Honor to know, and I wanted to make
18 it abundantly clear, that she does not deny the recording
19 or the possession or the transmission/distribution,
20 however you choose to characterize that of the videotape
21 she made.  She doesn't deny that at all and never has.
22 The issue was whether or not that videotape constituted
23 child pornography.  There's no question in my mind that
24 it constitutes a visual depiction of minors engaged in
25 sexually explicit conduct which is exactly what she was

**94**

15

1  charged with in and has entered a guilty plea to.  And no

2  matter how minor that distinction may be, it is a

3  distinction recognized in the statute and I was simply

4  trying to call that to the Court's attention.

5          THE COURT:  Okay.

6          MR. STEWART:  If Your Honor please, that would be

7  the only objections.  I think a number of other

8  objections were filed, as Your Honor's noted, and many of

9  those have been corrected or amended in the revised

10 presentence report prepared and submitted by Mr.  Woo.

11 The other objections, many of which are academic -- and

12 that may be a stretch of that word, but they are academic

13 in nature.  I don't think the Court needs to hear any

14 further argument from the defendant.

15         THE COURT:  Okay.  Thank you, Mr.  Stewart.

16         With regard to those objections.  First of all,

17 with regard to the objection in paragraph 47.  There the

18 two point enhancement is for whether or not the offense

19 involved distribution.  Yes, paragraph 47 refers to

20 distribution of child pornography as a shorthand term

21 rather than distribution of a visual depiction of a minor

22 engaged in sexually explicit conduct, but the question

23 regarding the enhancement is whether or not it is a

24 distribution offense.  As articulated by counsel, the

25 defendant admits that it is a distribution offense and,

16

1    therefore, the objection is overruled.  The two level

2    enhancement applies.

3          Likewise, with regard to paragraph 46.  That is a

4    four level enhancement that applies if the victim has not

5    yet attained the age of 12 years.  It is admitted by the

6    defendant in this matter that the victim in this case had

7    not yet attained the age of 12 years and, therefore, the

8    four level enhancement does apply.  The objection to

9    paragraph 46 is overruled.

10         With regard to the other objections -- and there

11   were voluminous objections in this matter.  As

12   Mr.  Stewart says, they are of an academic nature.  I've

13   gone through all of them, and all of those objections to

14   the presentence report are overruled.

15         Ms.  Randall, I believe that you have filed

16   something just recently with regard to the three level

17   reduction for acceptance of responsibility in paragraphs

18   54 and 55.  Do you wish to be heard further regarding

19   that issue?

20         MS. RANDALL:  Your Honor, just to add to what I

21   wrote in the sentencing memorandum.  The defendant --

22   there were multiple examples of the defendant denying

23   each and every element of the case from her knowledge to

24   -- and intent to what the video actually depicted.  Even

25   after she entered her guilty plea, Your Honor, she was

17

1 going through her evaluations and she was still saying I

2 did not send this video; this video was not sexual.  The

3 whole purpose of someone receiving those points is where

4 someone clearly accepts responsibility.  All of her

5 conduct, Your Honor, and throughout her filings, she

6 continuously denies it.

7        Even today, Your Honor, she's standing up and

8 saying I thought I deleted those videos.  How could she

9 knowingly possess a video, Your Honor, and how can she

10 accept responsibility for knowingly possessing and

11 sending a video when she's still saying I thought I

12 deleted those videos?  She's denied every single element

13 except for the fact that she took the video and that it

14 involves interstate commerce.  This is clearly an example

15 where the defendant should not receive acceptance of

16 responsibility.

17        I won't go through all of the bullet points that I

18 have in my sentencing memorandum, Your Honor, but there

19 were numerous examples of her denying responsibility for

20 her conduct.  We would join with Probation's assessment

21 that she has not accepted responsibility for her offense.

22        THE COURT:  Thank you.

23        Mr.  Stewart, do you want to respond to that?

24        MR. STEWART:  Your Honor, please.  Section 3E1.1

25 of the guidelines provides that -- it tries to give the

18

1  Court, I think, some direction in determining whether any

2  defendant -- not just Deborah Tipton, but any defendant

3  appears before the Court and has accepted responsibility.

4  There's some criteria set out there.  Some of the

5  criteria are, first, that the defendant truthfully admits

6  her conduct.  The defendant sort of owns up, so to speak,

7  to what they did that was criminally wrong.

8       The Court can consider whether that individual

9  defendant has withdrawn where from that conduct is no

10 longer participatory or involved, whether that individual

11 has given assistance to the authorities of their own

12 conduct or conduct of others, and whether that assistance

13 is timely.  Those are just a few of the considerations

14 that I think applicable with the facts before this court.

15      Deborah Tipton, if Your Honor please, has shown

16 contrition from what she's done.  She's not avoided this.

17 I think there has been a great question in her mind,

18 certainly at the time she was arrested and taken into

19 custody, about how that video even existed.  She told the

20 investigators from the first time she was interviewed

21 that she thought that had been deleted from her computer.

22 You know from some of the filings in this case that she

23 was embroiled and involved in a heavily contested

24 domestic case.  Her ex-husband had access to her personal

25 computer and had hacked into that computer and literally

**98**

19

1 | taken that computer to a third party source to review it
2 | and examine the contents and duplicate it.
3 | She didn't know if this was something that was retrieved
4 | from a deleted file.  Even to this day we have not been
5 | able to positively reconstruct it through the use of our
6 | own forensic expert how.
7 |        THE COURT:  Let me ask you this, Mr.  Stewart.
8 |        MR. STEWART:  Yes, sir.
9 |        THE COURT:  How is the statement that the
10 | defendant believed that the video files had been deleted,
11 | how is that consistent with the defendant admitting that
12 | she in fact had transmitted those video files to
13 | Mr.  Hamby?
14 |        MR. STEWART:  If Your Honor please.
15 |        THE COURT:  Is that not factually inconsistent?
16 | If she says I thought I deleted it right after this was
17 | created, but in reality she says I admit that I
18 | transmitted it later to Mr.  Hamby.  It seems like those
19 | two cannot exist in the same universe.
20 |        MR. STEWART:  Let me argue to Your Honor why I
21 | think that's not inconsistent.  She did in fact send
22 | other videos to Mr.  Hamby, videos not of the nature of
23 | the one Your Honor's had a chance to review.  She
24 | remembers transmitting those and remembers making those
25 | and sending those, just as she remembers recording the

20

1   ones that are the subject of this prosecution that she

2   and, evidently, the victim in this case also thought were

3   deleted.  She does not deny making it nor transmitting

4   it.  She is just not certain how it was transmitted.  She

5   has reason to believe, as we do representing Ms.  Tipton,

6   that that was sent at a time and a place when she sent

7   other videos of herself to Mr.  Hamby in this case.

8   That's the uncertainty of it, Your Honor.  It's not that

9   we deny sending it and not that we deny making it.  We

10  thought that one had been deleted.  But we sent other

11  videos along with this one, and we can only assume that's

12  how it was transmitted and that's how it was sent and

13  that's what she did.  She's owned up to that.

14          Now, what we've not attempted to do is to say,

15  well, we know it was deleted and we know it was

16  transmitted by some other source or some other person, so

17  we're not responsible for that.  We've not said that.  We

18  don't believe that.  But this is something -- this is a

19  notion, if Your Honor please, that we have evolved to

20  since we were first investigated about these charges and

21  first initially charged.  This is something we could not

22  answer directly at the time of the arrest.  This is

23  something we had to have our own forensic expert

24  reconstructing before we could make some sense of how it

25  was transmitted originally, Your Honor please.

**100**

21

1    I'm not trying to beg the Court's attention in on

2  this.  I want you to know there were other documents that

3  were sent or other transmissions that were made to this

4  same individual at or about the same time as this one.

5  And what we -- what we surmise is that we sent this along

6  with some of those.  So they're during the same period of

7  time to the same recipient.  But at the time it was made

8  and the time it was initially shown, it was previewed by

9  the defendant and the victim.  We thought it -- we

10 genuinely thought it had been deleted at the time, and I

11 think the victim thought the same thing at that time.

12    If Your Honor please.  We obviously know that is

13 not accurate and that is not what happened, because that

14 was -- if that was what happened, we wouldn't be here

15 today.  Does that affect the fact that she's been charged

16 with this offense and entered a guilty plea to this

17 offense and owned up to it?  I don't think so.  I don't

18 think that affects the fact that she has shown contrition

19 for her actions that she comes before this court

20 accepting responsibility for what she's done and standing

21 before the Court to be sentenced today.  That was her

22 genuine belief at the time it was done.

23    THE COURT:  Okay.  Anything further?

24    MR. STEWART:  No, sir.

25    THE COURT:  Thank you.  Ms. Randall.

22

1    MS. RANDALL:  Your Honor, I would just say in
2  response to that that if she accidentally sent the video,
3  then she's not guilty of this crime.  The elements, as
4  explained to her by Judge Howell, was that she had to
5  knowingly, willfully and lawfully send a video depicting
6  a child engaged in sexually explicit conduct.  For her to
7  be guilty of that, she has to know she sent it.  If she
8  did it by accident while sending other videos, if that's
9  what her position is, she is not owning up to the
10 elements, Your Honor.  And this is not simply only that
11 element; it's every element, Your Honor.

12    Even after she pled guilty, she's still submitting
13 documents to this court and to her psychiatrist during
14 her evaluation saying maybe my husband did it to frame
15 me.  Maybe I accidentally did it.  I don't remember doing
16 it.  She's still saying it's not child pornography.
17 They're arguing to Your Honor that there was no lewd,
18 lascivious or sexual actions.  They're asking the Court
19 to view the images and that there's a complete absence of
20 anything of a sexual nature and that Ms. Tipton deemed
21 the videos strictly educational is debatable as to
22 whether the videos in question even meet the definition
23 of pornography.

24    Your Honor, these are pure anatomy showing the
25 labia and vagina with no averse sexual action depicted.

23

1  Those are the documents they're using to argue for her

2  variance, Your Honor, and these are all not showing

3  acceptance of responsibility and not showing contrition.

4  She's still saying I didn't do it.  I did this for an

5  educational reason and I accidentally sent it.  If both

6  those things are true, Your Honor, then she should have

7  pled not guilty.

8       THE COURT:  Mr.  Stewart, does the defendant admit

9  that she knowingly transmitted this video to Mr.  Hamby?

10      MR. STEWART:  Yes, sir, and that has never been

11  denied.  The uncertainty of when she did it or how she

12  did it was a question that she raised at the time of her

13  arrest, but she does not deny either recording or the

14  transmission of this.  That is not an issue by the

15  defendant.

16      MS. RANDALL:  Does she admit it is a child

17  engaging in sexually explicit conduct?

18      MR. STEWART:  Yes, and --

19      MS. RANDALL:  And she knew it was that when she

20  transmitted it?

21      MR. STEWART:  Yes.  We admit the film depicts

22  minors engaged in sexually explicit conduct; that was not

23  denied.  Now, whether there was the equivalent or same

24  and in common parlance to child pornography there was a

25  question I raised in my objection to the presentence

**103**

24

1  report regarding --

2         MS. RANDALL:  Did she know she was sending a video

3  of a child engaged in sexually explicit conduct?

4         MR. STEWART:  She knew that she was sending the

5  video that was transmitted to Mr. Hamby of her daughter

6  that she took involved in that conduct.  Yes, sir.

7         MS. RANDALL:  Your Honor, that's not accepting the

8  elements of the crime.  That's parsing it, Your Honor.

9  She has to have known she sent a video depicting the

10  minor.  She has to know what video she sent to be guilty

11  of this crime.  She's still saying it was an accident.

12         MR. STEWART:  Judge, she's not saying that was an

13  accident.  And, you know, for the government to ascribe

14  the reason that she pled guilty -- there are lots of

15  reasons for someone to enter a guilty plea, even upon

16  their own acceptance and admission of guilt.  I don't

17  mind telling the Court very candidly that one of the

18  reasons we negotiated the guilty plea in this case was to

19  avoid any further trauma or any further exposure or

20  embarrassment for the child involved in this case.  That

21  was one of the reasons.

22         I mean, there were a lot of reasons to enter the

23  plea that was done here.  But the fact that we did that

24  with other reasons in mind or other motivations does not

25  mitigate the fact that we have accepted responsibility

1  for what we've done.  She has never been interviewed a

2  single time that I am aware of by anyone associated, at

3  least in law enforcement and the investigation or

4  prosecution of this case, where Debbie Tipton said

5  huh-uh, it wasn't me.  I didn't do it.  She hasn't tried

6  to step away from that.  She has tried, to the best of

7  her knowledge, if Your Honor please, to explain it and to

8  determine how it happened.

9       She has not shied away from the fact that, as she

10 appears before this court today, she has admitted her

11 guilt.  She is contrite.  She is apologetic.  She is

12 remorseful for what she's done.  I, frankly, cannot

13 imagine any person being more remorseful than the

14 defendant in this case, given the relationship that

15 existed before the time of the charging and where we have

16 evolved to now 17 months later.

17      THE COURT:  Okay.  With regard to this issue of

18 the question of responsibility.  I actually find this

19 issue to be somewhat difficult, because the first thing I

20 have to do is I have to draw the line between what the

21 defendant admits to and then some of the statements that

22 have been made on her behalf by others which I don't

23 necessarily attribute to the defendant.  As I mentioned

24 before, there was a multitude of filings by the attorneys

25 in this case.  Some of the filings on behalf of the

26

1   defendant certainly give rise to a serious question as to

2   whether there is an acceptance of responsibility or

3   whether the defendant remains in sheer and utter denial

4   of her own criminality.  However, I can put those aside

5   as the statements of counsel as opposed to the statements

6   of the defendant.

7           I still find even the degree of parsing that I am

8   hearing today as very, very troubling because it does

9   show a certain level of remaining in a state of denial.

10  However, in light of the specific representations made

11  here, I believe that the defendant has admitted and

12  confessed to each and every one of the elements of the

13  crime involved and that the three level acceptance of

14  responsibility -- excuse me, the two level acceptance of

15  responsibility does apply here.  That, of course, raises

16  the question of whether or not the government is making a

17  formal motion for the additional level under 3E1.1B.

18          Ms.  Randall, what says the government as to that?

19          MS. RANDALL:  If Your Honor has found she clearly

20  accepts responsibility, the third level is -- I believe

21  Your Honor does not address acceptance of responsibility

22  as to whether she entered her plea in a timely manner and

23  prevented us from prepping for trial.  So I do not think

24  that we can object to the application of that, Your

25  Honor.

27

1    And if Your Honor wouldn't mind me just being
2  heard on one further thing.  Based on your ruling, I
3  would just note for the record that the government's
4  argument is based on Mrs.  Tipton's own words, what she
5  told the psychiatrist.  Even if you take out everything
6  that her attorneys have said, she told her psychiatrist
7  -- Mrs.  Tipton stated several times during the interview
8  that she'd never been aware she was sending the videos.
9  She expressed confusion she was sending the videos.  She
10 was unsure if she accidentally sent the videos.  These
11 are all her words.  Ms.  Tipton denies intentionally
12 sending the videos.  That's what she told the
13 psychiatrist, whose report they're asking you to rely on,
14 Your Honor.  So it's not just what her attorneys are
15 telling Your Honor in the argument; it's what she
16 actually said to people about her case.
17        THE COURT:  Well I've made my ruling as to that
18 matter and that will stand.
19        Are there any other issues regarding the
20 presentence report that need to be addressed?  Any
21 further for the defendant, Mr.  Stewart?
22        MR. STEWART:  Not from the defendant, if Your
23 Honor please.
24        THE COURT:  Any for the government, Ms.  Randall?
25        MS. RANDALL:  No, Your Honor.

**107**

28

1        THE COURT:  Therefore, the Court will accept the

2   presentence report as written and therefore will find

3   that the total offense level in this case is 37, and the

4   criminal history category in this case is one.  Based on

5   that total offense level and criminal history category

6   the Court will conclude, as a matter of law, that the

7   guideline range for this case is 210 to 262 months of

8   incarceration.

9        Mr.  Stewart, did I calculate that correctly?

10       MR. STEWART:  Yes, sir, you did.

11       THE COURT:  Ms.  Randall, do you agree?

12       MS. RANDALL:  Yes, Your Honor.

13       THE COURT:  Based on the discussions that we had

14   in chambers concerning the procedure for going forward,

15   Ms.  Randall, I understand that the government wishes to

16   present some evidence with reference to sentencing before

17   we move on to any arguments.  Is that correct?

18       MS. RANDALL:  Yes, Your Honor.  We just want to

19   briefly present a witness in order to establish the basis

20   of our -- some of the other facts that we argued in our

21   sentencing memorandum that were not in the PSR.

22       THE COURT:  Call your first witness.

23       MS. RANDALL:  The government calls Agent John

24   Wydra.

25       THE COURT:  Come forward to be sworn.

**108**

1          (Witness duly sworn at 10:48 a.m.)

2          THE COURT:  You may proceed.

3                    **DIRECT EXAMINATION**

4          BY MS. RANDALL:

5   Q.     Can you please state your name and where you work?

6   A.     John Wydra.  I'm a Special Agent with the FBI.

7   Q.     And what type of cases do you work at the FBI?

8   A.     Crimes against children.

9   Q.     And how long have you been working in that

10  capacity?

11  A.     The second time since 2010, and I had worked in

12  that capacity in 2004 through 2006.

13  Q.     And in your role as an FBI agent, were you

14  involved in the investigation of the defendant?

15  A.     I was.

16  Q.     And are you familiar with all the documents and

17  evidence in this case?

18  A.     I am.

19  Q.     And as part of your investigation, did you

20  interview Chad Bloom?

21  A.     Chad Hamby.

22  Q.     Sorry.  Chad Hamby.  Thank you.

23  A.     Yes.

24  Q.     And when did that interview take place?

25  A.     It was July 13th 2012.

1  Q.     And at that time, who was present for the

2  interview?

3  A.     It was myself, Chad Hamby, Detective Anderson, and

4  Chad's attorney.

5  Q.     And was Mr. Hamby -- did Mr. Hamby talk to you

6  about his role in the offense that we're here for today?

7  A.     He did.

8  Q.     And did he talk to you about his relationship with

9  the defendant?

10 A.     He did.

11 Q.     What did he tell you about who initiated the

12 extramarital affair?

13 A.     He said that it was Deborah Tipton.  That they had

14 this affair over a seven-year period, and that it

15 progressed over that period of time to more of a

16 fantasy-type of relationship.

17 Q.     And what do you mean by that?

18 A.     Well, how he described it is that it started to

19 move online.  In the beginning it was all face-to-face

20 type conversations, and then it started to be on Facebook

21 and Facebook chats.  Then it started to involve what he

22 described as darker and darker fantasies.

23 Q.     When you describe "darker and darker fantasies,"

24 what are you talking about?

25 A.     He said it was just normal.  It all started out as

John Wydra/Direct

31

1  just normal sex chat, and then it moved into bestiality

2  and children.

3  Q.      And did he say approximately when they started

4  having these fantasies about children?

5  A.      He said it was about three years prior to him

6  receiving the videos, and that they had discussed

7  multiple violent type sex acts with children over that

8  three-year period.

9  Q.      And when you say "they," you're referring to

10 Mr. Hamby and who?

11 A.      Deborah Tipton.

12 Q.      Did he say who would come up with these fantasies?

13 A.      He said it was mostly Deborah Tipton and that she

14 did that to excite him and to sexually arouse him so that

15 later on that they could meet and have sex.

16 Q.      And according to Mr. Hamby, did the victim in

17 this case ever become a part of those fantasies?

18 A.      Yes.

19 Q.      Who introduced the victim into their fantasy

20 chats?

21 A.      Deborah Tipton.

22 Q.      At some point, did the relationship between

23 Mr. Hamby and Ms. Tipton start slowing down or fizzle

24 out?

25 A.      It was shortly -- according to Chad Hamby, it was

111

1  shortly after he had received the videos of Deborah's

2  daughter.

3  Q.      Did Mr. Hamby -- in talking about what

4  Mrs. Tipton and he discussed, did she ever talk to him

5  about the victim in this case with regards to bathing or

6  showering?

7  A.      Yes.  She had described that you should see how

8  she's maturing.  She's getting older now.  And this was

9  in reference to Chad Hamby having told Deborah Tipton

10  that he had downloaded child pornography years earlier

11  through something called LimeWire and how excited that

12  had made him.  He felt that she was trying to feed that

13  fantasy.

14  Q.      And at some point, Ms. Tipton sent Mr. Hamby a

15  video?

16  A.      Yes.

17  Q.      In terms of receiving that video.  What did

18  Mr. Hamby say about any notification or warning he may

19  have gotten from Mrs. Tipton prior to receiving that

20  video?

21  A.      He had received a text message prior to that that

22  said I have a surprise for you.  Deborah Tipton had sent

23  that text message saying she had a surprise for him.  He

24  said he knew right away, when he received that text

25  message, what that video was going to be.

1  Q.     And back it up one step.  When she told him, you
2  should see how the victim is developing, you should see,
3  you know, how she's maturing, what did Mr. Hamby say in
4  response to that?
5  A.     He knew that it was going to be child pornography
6  similar to what he had seen in the past on Limewire.
7  Q.     And did he request her to send them to him?
8  A.     He did.
9  Q.     Prior to her raising the information that she --
10  about the victim developing, had Mr. Hamby asked for her
11  to send him videos of the victim in the shower?  Did that
12  make sense?  I can reword that.
13  A.     Yeah, if you could.
14  Q.     But for -- according to Mr. Hamby, but for
15  Mrs. Tipton telling him about the victim in this case and
16  the videos she had of her in the shower, would Mr. Hamby
17  have requested the videos, according to him?
18  A.     Well, there were numerous sexual fantasy
19  conversations over that three year period, and it
20  culminated into this video of the victim.  And then when
21  he had learned that that video existed, he asked for
22  Ms. Tipton to send it to him.
23  Q.     You said that she sent him a message that she had
24  a surprise waiting for him.  Did she say anything else to
25  him about viewing the video prior to him looking at the

1  video?

2  A.      Yeah.  He had said that she wanted to be there

3  when he watched it so that she could sit on his lap and

4  feel him get hard.

5  Q.      And when the video was sent to Mr.  Hamby, was

6  there any sort of header or, you know, label on the

7  video?

8  A.      Yeah.  The subject said "Enjoy," the subject line.

9  Q.      And is that consistent with Ms.  Tipton -- what

10 Mrs. Tipton had said she typed in when she sent the video

11 to Mr.  Hamby previously?

12 A.      Yeah.  On February 21st 2012, Ms. Tipton, in her

13 interview, said that she believed she sent that video

14 with the title enjoy.

15 Q.      And what did Mr.  Hamby say was the purpose of

16 Mrs. Tipton sending him the video?

17 A.      It was for his sexual gratification and to feed

18 their -- and continue to feed their fantasies about

19 children.

20 Q.      I'm going to show you what I previously marked as

21 Government's Exhibit 1.  Do you recognize that?

22 A.      Yes.

23 Q.      And is it a CD containing the videos that

24 Mrs.  Tipton sent to Mr.  Hamby?

25 A.      Yes.

John Wydra/Direct

35

1  Q.    Your Honor, the government would move to introduce

2  Exhibit 1 into evidence, just for the record.

3         THE COURT:  Okay.  Let it be admitted.

4              (Whereupon, Government's Exhibit No. 1

5              was admitted into evidence without

6              objection.)

7         BY MS. RANDALL:

8  Q.    Are you previously examined Government's Exhibit

9  1A and 1B which are transcripts?

10 A.    Yes.

11 Q.    Do those transcripts accurately reflect the

12 conversations that were on the videos in Government's

13 Exhibit 1?

14 A.    Yes.

15 Q.    Your Honor, the government would move Exhibits 1A

16 and 1B into evidence.

17        THE COURT:  Any objection to that, Mr.  Stewart?

18        MR. STEWART:  No, sir, Your Honor.

19        THE COURT:  Okay.  Let it be admitted.

20             (Whereupon, Government's Exhibits No. 1A and

21             1B were admitted into evidence without

22             objection.)

23        BY MS. RANDALL:

24 Q.    I'm going to show you what I've marked as

25 Government's Exhibit 2.  Do you recognize Government's

John Wydra/Direct                                                    36

1  Exhibit 2?

2  A.      I do.

3  Q.      Can you tell me what it is?

4  A.      Yeah.  This is the transcript of the Deborah

5  Tipton interview I referred to earlier dated February

6  21st 2012.

7  Q.      And does this transcript fairly and accurately

8  represent the audio recording that was made of that

9  interview of Ms.  Tipton?

10 A.      It does.

11 Q.      Your Honor, the government would move Exhibit 2

12 into evidence.

13         THE COURT:  Any objection, Mr.  Stewart?

14         MR. STEWART:  No objection, Your Honor.

15         THE COURT:  Let it be admitted.

16             (Whereupon, Government's Exhibit No.  2

17             was admitted into evidence without

18             objection.)

19         BY MS. RANDALL:

20 Q.      Going back to prior to the video being sent. at

21 some point ,did Mr.  Hamby move to another school?

22 A.      He did.  It was sometime in May 2011.  He had left

23 the school that he had worked at with Ms.  Tipton.

24 Q.      And how did that affect his relationship with

25 Ms.  Tipton?

1  A.    It almost brought it to a halt.  They didn't see

2  each other.  They got wrapped up in different things.

3  The relationship had slowed from May 2011 until it

4  started ramping back up in August 2011 through September,

5  when Ms. Tipton sent the videos.

6  Q.    No further questions, Your Honor.

7        THE COURT:  Cross-examination.

8                    **CROSS-EXAMINATION**

9        BY MR. STEWART:

10 Q.    Agent Wydra, good morning.

11 A.    Yes, sir.

12 Q.    The information you shared with us that you

13 learned from interviewing Mr.  Hamby.  You have never

14 interviewed Ms.  Tipton, have you?

15 A.    No.

16 Q.    You've never taken a statement from her or

17 confronted her or asked about this information that's

18 shared with you by Chad Hamby.  Correct?

19 A.    That's correct.

20 Q.    We met one time in Charlotte in the investigation

21 of this case sometime ago and you showed us a bevy of

22 computers and -- excuse me, I lack of nomenclature to

23 describe what you do.  But among other things you do is a

24 forensic analysis, I believe, of hardwares and softwares,

25 programs and things of that nature.  Is that correct?

John Wydra/Cross                                            38

1  A.      The FBI does.  I don't do the computer forensics.
2  I'm the investigator.  We have a team that does that for
3  me.
4  Q.      You were certainly involved in the receipt and
5  interpretation of all the hardware and software in this
6  case.  I know you shared a lot of that information with
7  Ms.  Tipton's counsel over the last year, year and a
8  half.  Is that accurate?
9  A.      Yes.
10 Q.      In this case, besides the Government's Exhibit No.
11 1 that was marked and shown in chambers earlier today,
12 that one disk, you also had before you a computer, a hard
13 drive and things of that nature that were all ascribed to
14 my client, to Ms.  Tipton.  Those were also available to
15 the FBI, were they not, in this investigation?
16 A.      Available to the FBI?  Yes.
17 Q.      And a complete forensic work-up, a complete and
18 thorough forensic examination, was done of all of the
19 electronic devices that was presented to your office
20 either by her estranged husband, Joe Tipton, and devices
21 that came from the school that Deborah Tipton had access
22 to:  a FlipShare camera that may or may not have been
23 owned by the school but that Chad Hamby had at some
24 point.  Those are just a few of the many examples of
25 devices made available to you and your bureau for

118

John Wydra/Cross

39

1  forensic examination; is that correct?

2  A.      Yes, sir.

3  Q.      Is it accurate to say that in the complete

4  examination done of all of those devices over the last

5  year and a half that the FBI has not found any other

6  photographic evidence of any minors engaged in any sort

7  of elicit activity other than what has been depicted on

8  Government's Exhibit 1 here today?  Is that right?

9  A.      That's correct.

10 Q.      With respect to this information Chad Hamby shared

11 with you about the course of their relationship and that

12 over the last three years they began to engage in this

13 discussion involving fantasy talk that turned more

14 unusual.  Is it fair to say you found, in your review of

15 all the devices and all the information provided in

16 Ms.  Tipton's case, no evidence of any sort of talk

17 involving minors?

18 A.      Correct.  We did not.

19 Q.      Is it also fair to say that in your examination of

20 all those devices that you have never found any e-mails,

21 any text messages or anything that corroborates what Chad

22 Hamby has led you to believe was this discussion he

23 claims Deborah Tipton instigated or started with respect

24 to the progression of these fantasy discussions he would

25 have with her?  Is that correct?

John Wydra/Cross

1  A.      That's correct.

2  Q.      No evidence at all from any of the devices

3  examined by your bureau over the last year and a half.

4  Right?

5  A.      From the devices?  Correct.

6  Q.      Is that correct?  Now, Chad Hamby led you to

7  believe that the elicit relationship he had -- Mr.  Hamby

8  was also married at the time, was he not?

9  A.      I'm sorry.  Say that again.

10  Q.      Pardon?

11  A.      Mr.  Hamby -- I didn't hear the last word.

12  Q.      Mr.  Hamby was also married at the time, was he

13  not?

14  A.      Yes.

15  Q.      As was Ms. Tipton?

16  A.      Yes.

17  Q.      But he led you to believe that relationship the

18  two of them struck up some years ago was largely

19  Ms.  Tipton's doing and that it was all sort of on her.

20  Is that correct?

21  A.      If that's what I implied, that's not what I

22  intended.  I'm telling you that Mr.  Hamby felt that the

23  relationship started with Mrs. Tipton.  And he clearly

24  states throughout the entire interview that he's to blame

25  and that he shares this blame and where this has led to

**120**

1  and that he was being very selfish; that it was about his

2  sexual gratification.  He just did not feel that he was

3  in love with Mrs.  Tipton, that it was purely a sex-based

4  thing, and he believed that she felt the same way.

5  Q.    Well, at least from his point of view, he led you

6  to believe this was purely a sexual relationship.  Right?

7  A.    Correct.

8  Q.    And he engaged in this relationship with my client

9  purely for his own sexual gratification, at least from

10 his point of view.  Is that what he led you to believe?

11 A.    Yes, sir.

12 Q.    He revealed to you, did he not, that at some point

13 during the course of that relationship he had instructed

14 Ms.  Tipton to install this Limewire program on her

15 computer?  I think it was a computer at the school; is

16 that right?

17 A.    I don't believe it was the computer at school.  I

18 believe it was a computer that he had owned at his

19 residence that had long since crashed and he could no

20 longer have in his possession.

21 Q.    That was a computer he had provided her with,

22 though, right?

23 A.    That I don't know.  I'm not aware of that.

24 Q.    I'm sorry?

25 A.    Yeah.  I'm unaware of that if that's what

1  happened.

2  Q.     Do you know if he was the one that instructed her

3  how to put this Limewire program on that computer?  Do

4  you know that?

5  A.     He had said during the interview that he had

6  stopped using Limewire because he had heard that it was

7  illegal and that he had stopped using it four or five

8  years prior.  So, instructing Ms.  Tipton?  I don't

9  recall him saying that.

10 Q.     You are concerned, as an investigator in this area

11 of investigations, about Limewire being used, are you

12 not?  Because you know how that's utilized in the porn

13 industry, is it not?

14 A.     It used to be.  When I first worked crimes against

15 children, Limewire was very prevalent.  Now it's not.

16 Q.     So you're not saying he didn't provide her with

17 the computer or didn't instruct her or really direct her

18 to install this program so she could access various

19 things.  You're saying he just didn't reveal that to you.

20 He didn't tell you that.

21 A.     He didn't tell me that.  No, sir.

22 Q.     All right.  Did he tell you about the fantasies

23 that he introduced into this relationship not just

24 involving minors but fantasies involving bondage and

25 voyeurism?

1  A.      Yes.

2  Q.      Did he tell you about the fantasies that he

3  injected into this relationship that involved even rape

4  scenarios?  Did he tell you about that?

5  A.      He said that the rape scenarios were introduced by

6  Ms.  Tipton.

7  Q.      He said that came from her and not from him?

8  A.      Correct.

9  Q.      Did he tell you about the notions that he injected

10 into this relationship involving looking at and viewing

11 young females?

12 A.      Yes, he did say that.

13 Q.      He actually admitted that he'd been doing that on

14 the Internet, I think, for about three to five years.  Is

15 that right?

16 A.      He said he did it three to five years ago and that

17 he had told Ms. Tipton about that and that that's what

18 changed their sex fantasies from more of the bondage and

19 bestiality over to include children and more of the

20 violent rape fantasies.

21 Q.      And he told you that he was previewing on the

22 Internet through whatever program was available these

23 young females between the ages of, what, 13 and 15 years

24 old, and that that had been ongoing even before he met

25 Ms.  Tipton?

**123**

John Wydra/Cross

44

1  A.     Actually, he admitted that it was as young as 12

2  during that interview.  And he had said that he had done

3  that with Limewire prior to -- like I said, up to five

4  years prior to the videos being sent.  But their

5  discussion of that time frame in his life was revolving

6  around when the videos were sent.

7  Q.     Now, with respect to what you found and were able

8  to determine from your investigation of Ms. Tipton.

9  There was no Limewire recordings that were found, there

10  were no videos of minors in any fashion, and there

11  certainly was no discussion at any point between

12  Mr. Hamby and Ms. Tipton about his interest or his

13  predilection in young minors.  There was nothing found.

14  A.     Correct.  There was no evidence of that found on

15  the devices.

16  Q.     Was it Chad Hamby who told you that the purpose

17  for being involved in the relationship with Deborah

18  Tipton and, really, the interest he had in young persons,

19  particularly the victim in this case, was for his own

20  sexual gratification?  Is that what he told you?

21  A.     Yes.

22  Q.     Did you find any sort of evidence, any sort of

23  indicators, aside from what Chad Hamby led you to

24  believe, that Deborah Tipton had some sort of sexual

25  gratification in that same area?

John Wydra/Cross

45

```
 1  A.      He described her sexual gratification on getting
 2  him excited.  Like, it fed on each other.  Her sexual
 3  gratification came from getting him sexually aroused,
 4  whatever that would do for him.
 5  Q.      And that's what he told you?
 6  A.      Yes.
 7  Q.      Now, he told you that at or about the same time of
 8  the subject video that we're dealing with here,
 9  Government's Exhibit No. 1, that he had asked -- really,
10  he had implored Ms. Tipton to make some videos of
11  herself.  Would that be a fair statement?
12  A.      He said that she often sent videos of herself
13  masturbating and that he had done it on at least one or
14  two occasions himself.
15  Q.      Yes, sir.  Did he tell you that he had asked -- he
16  had made that specific request of her?
17  A.      He didn't deny it.  He said that it was a back and
18  forth type of thing.  It was a very exciting for them to
19  discuss any type of sexual activity and that that's what
20  he fed off of.
21  Q.      And did he tell you that he had actually received
22  videos, more than one, of Ms. Tipton during the same time
23  frame -- at or about the same time frame as this
24  showering video, Government's Exhibit No. 1, that we're
25  describing occurred?  Did he tell you that?
```

1 A.    Yeah.   It was during the same 30- to 60-day time

2 frame.   He said she'd often send it throughout that

3 period of time, but on FlipShare is where we found most

4 of the evidence.

5 Q.    And FlipShare is the camera or the recording

6 device that was used, I take it, to record what's shown

7 on Government's Exhibit 1?

8 A.    No.   The flip camera is the device that was used

9 to record it.   FlipShare was the website where Ms. Tipton

10 had uploaded it from her residence and shared it with

11 Chad Hamby using their e-mail addresses.   I don't want to

12 give you the impression of, like, she e-mailed it to him.

13 She loaded it on FlipShare and had sent an e-mail

14 notifying him that that video existed.

15 Q.    And I'm sorry if I was confused over the flip

16 camera and the FlipShare.

17 A.    Me, too.

18 Q.    The flip camera was actually the device that was

19 used to record not only what's shown on Government's

20 Exhibit 1 but, I think, some of the other transmissions

21 that were made by Ms. Tipton?

22 A.    Yes, sir.

23 Q.    And that was a camera that was actually provided

24 by Mr. Hamby, as I understand it?

25 A.    Yes, I believe so.

**126**

John Wydra/Cross

47

1  Q.    And Mr. Hamby -- did he ever reveal to you that

2  he had instructed Ms. Tipton, sort of, how to use this

3  and in what manner or form it might be used?  Did he ever

4  share that to you or volunteer that to you in any manner?

5  A.    He didn't say that during that interview.  I was

6  under that impression from all the evidence in the case

7  and his previous interview and other conversations he had

8  with law enforcement.

9  Q.    But Chad Hamby, when he told you that at some

10 point Ms. Tipton had told him she wanted to be present

11 when he watched it, when he watched the video, he led you

12 to believe that was a discussion she was having with him

13 about when he watched the showering video, Government's

14 Exhibit No. 1.  Right?

15 A.    Yes.

16 Q.    He did not say that was as best he could recall.

17 What he asked -- or she asked him to do when he was

18 watching the videos of herself, the multiple videos

19 Ms. Tipton had sent to Mr. Hamby of herself pleasuring

20 herself.

21 A.    Correct.  He said it was for the showering videos

22 of the victim.

23 Q.    Thank you.  That's my questions.

24       THE COURT:  Any redirect?

25       MS. RANDALL:  No, Your Honor.

**127**

John Wydra/Cross

48

1          THE COURT:  Thank you, Agent Wydra.  You may step

2    down.

3                    (Witness excused at 11:08 a.m.)

4          THE COURT:  Ms.  Randall, will there be any other

5    evidence?

6          MS. RANDALL:  No further testimony.  Only, for the

7    record, we would introduce Government's Exhibit 3 for

8    purposes of our argument.  This is a copy of Mr.  Hamby's

9    deposition in Tipton versus Tipton, the civil matter.  At

10   the appropriate time we've marked as Exhibit 4, which is

11   a Victim Impact Statement, prepared by the victim's

12   father.

13         THE COURT:  Mr.  Stewart, will there be any

14   evidence for the defendant with regard to sentencing?

15         MR. STEWART:  We would not have any documents, if

16   Your Honor please, nor any live testimony we would offer

17   at the sentencing.  You have the various memorandums of

18   law; most of them have been filed as attachments and

19   they've already been marked.  We have no other offering

20   besides that if, Your Honor please.

21         THE COURT:  With that, then, Mr.  Stewart, let me

22   hear from you.  What is the appropriate sentence for me

23   to impose in this case?

24         MR. STEWART:  If Your Honor please.  I'm going to

25   do what I can to streamline this argument, but I want to

**128**

49

1  talk about two motions that are before the Court before I

2  actually close.  I won't be brief on those.  There was a

3  motion filed by my co-counsel, Mr.  Jackson, who's

4  unavailable today because of an unexpected loss.  He

5  filed -- and his motion for downward departure maybe not

6  in as artful language as he should have.  But because

7  Mr.  Jackson doesn't practice over here, certainly, in

8  criminal courts very frequently -- in fact, this may be

9  the first time he's appeared in criminal court, I don't

10  know.

11       Before Your Honor there are really two substantive

12  grounds in his motion for downward departure.  First, he

13  asks the Court to consider a 5K1.1 reduction in this case

14  because of Ms.  Tipton's assistance to the authorities.

15  Ms.  Tipton, from the time that she was first

16  interviewed, has provided assistance to the authorities,

17  including not only making a statement outlining her own

18  involvement and her own culpability but also highlighting

19  the culpability of Mr.  Hamby.

20       Mr.  Hamby subsequently came under the guise of

21  the investigation and subsequently came to be charged and

22  investigated in this case in no small part because of the

23  revelations made early on by Deborah Tipton.  Her

24  information about that relationship, her information

25  about how Government's Exhibit 1 came to be, those were

**129**

50

1  all bits of information gleaned from her debriefings and

2  in her interviews.  And I would say to the Court that

3  those interviews were reliable, they were complete, and

4  they were truthful.

5          Unlike Mr. Hamby, who's already appeared before

6  you today, the government has not filed a 5K1.1 in

7  Deborah Tipton's case.  She is seen by the government, I

8  presume, as the principal wrongdoer here.  But I would

9  say to Your Honor that had she not provided the

10 assistance that ultimately led to the arrest of Hamby in

11 this case, there likely would not have been a

12 co-defendant in this case before the Court, and that is

13 one of the grounds the Court may consider in awarding an

14 adjustment for substantial assistance to the authorities.

15         There's a second grounds for the Court to consider

16 making a downward departure and that's 5K2.2, the

17 abhorrent behavior exception.  Thankfully, this exception

18 was recognized by Mr. Woo in the revised presentence

19 report.  I don't see this exception used much; I guess

20 that's because so few defendants actually fall within the

21 pretty stringent guidelines.  As I read 5K2.2, for

22 abhorrent behavior to be considered by the court for a

23 downward departure, it must be a single act or

24 occurrence.  It must be without any sort of significant

25 planning.  It must be of limited duration, the act

51

1  itself, and it must be a deviation from that person's

2  otherwise law-abiding life.

3       I think Deborah Tipton and the circumstances and

4  facts of this case fall within that very narrow, very

5  limited application.  The clip that we have before you in

6  Government's Exhibit No. 1 was a single act, a single

7  occurrence.  We know that because the FBI, over the last

8  17 months, has done, frankly, an exhaustive forensic

9  search of anything electronic that Ms. Tipton and,

10  perhaps, Mr. Hamby had access to.  This is the only

11  rendering, the only finding of anything, anything

12  inculpatory of this nature that was found.  I can -- Your

13  Honor knows from the arguments made by the defendant in

14  this case that, while we have two clips, one about six

15  minutes, one about two minutes, what has been put before

16  the Court is -- that was actually a single setting, a

17  single session that was interrupted with Ms. Tipton

18  wiping the camera lens.  We would say that that taping

19  was without any sort of significant planning.

20       The government has argued, well, that's just

21  another expression of Deborah Tipton's deviousness and

22  her trickery and her deception in this case.  We would

23  say that's not at all what occurred.  And I would say the

24  best evidence of what that is, what appeared on the tape

25  itself -- and I'm not talking about just the actions of

52

1  the defendant, I'm talking about the actions of the

2  victim.  For abhorrent behavior to be applicable it must

3  be of limited duration.  That certainly was the case of

4  what was found and the period of the recording, and it

5  must be a deviation from a person's law-abiding life.  I

6  want to think that's probably the one qualification,

7  Judge, that makes most defendants not applicable or not

8  able to be considered for this grounds for departure.

9       I'm not here to tell you my client was a saint.

10 She engaged in an extramarital relationship with Hamby

11 that started in the workplace.  She's likely not the

12 first woman to do this or probably won't be the last.

13 But aside from that, she has led a law-abiding life with

14 the exception of this single act, the single occurrence

15 of abhorrent behavior, and I think that it would entitle

16 her or at least make her eligible for consideration by

17 this court for a departure.

18      THE COURT:  Let me stop you there for a moment,

19 Mr.  Stewart.

20      MR. STEWART:  Yes, sir.

21      THE COURT:  With regard to 5K2.2.  You do set out

22 the elements under subsection (b), but you'll notice also

23 under subsection (a) it says, "except where a defendant

24 is convicted of an offense involving a minor victim."  Is

25 this not within the exception to the exception?

**132**

53

1          MR. STEWART:  If Your Honor please.  You know,
2   actually, I had read that some time ago when I was
3   preparing my objections.  I did not remember reading that
4   when I was preparing for this hearing today.  If that's
5   what it reads in the language, it speaks for itself.  It
6   means what it says.  Your Honor, please, we are not
7   arguing that the victim in this case was not a minor at
8   the time.

9          Your Honor, please, the second motion before this
10  court is a motion for variance and I can take the blame
11  for that one.  I was the one who prepared and filed that.
12  That motion for variance really just addresses the
13  Section 3553 factors.  I set out with some degree of
14  brevity, I think, the 11 factors I think this court can
15  consider.  Mr. Woo recognized some of those factors in
16  the revised copy of the presentence report he filed with
17  this court.  The Court can consider any combination or
18  number of factors, or none of the factors, in fashioning
19  a sentence that you think is just and meet it is criteria
20  of 3553.  I would just say to the Court that the evidence
21  before this court is that Deborah Tipton was a loving and
22  attentive mother.  She was a primary caregiver of
23  children in the home.  We can't forget, I think, that
24  what happened and what we are here today -- this criminal
25  prosecution, really, arose out of a hotly contested

**133**

54

1 domestic case, a lawsuit, a fight, between her and her

2 estranged husband over custody and support and issues

3 like that.  And while that is certainly no explanation or

4 justification for what's happened, that's how this drama

5 was played out at the time.

6      My client appears before the Court with no prior

7 record of any kind.  The harm that was actually

8 experienced by the victim in this case is really hard to

9 determine, really hard to assign at this time.  It is

10 certainly serious.  Your Honor has pointed out in other

11 hearings, and oftentimes harm in these kind of cases

12 really doesn't rise to the level or present itself until

13 years down the road.  And it's hard to speculate or guess

14 when and if that will happen in this case.  But I would

15 say that at least one thing that has been repeated by

16 various therapists involved in the case is that whatever

17 harm has occurred to the victim has certainly been no

18 less than, and the equivalent of the harm that the victim

19 has continued to experience, having whatever trusting

20 relationship she had with the defendant in this case

21 severed, cut off, removed from the home.

22      There is a gross disparity in this case too,

23 Judge, I think, between the roles -- certainly, the

24 sentences that the government argues Mr.  Hamby should

25 have received and received and what Deborah Tipton is

**134**

55

1  facing in this case.  There is no history of deviant
2  behaviors.  There's no history of her being a pedophile.
3  As Your Honor knows, there is already a significant
4  punishment in this case, as there was in Hamby.  And my
5  client, as well, has lost her teaching credentials and
6  license.  She's been incarcerated for the last 17 months.
7  When she eventually serves whatever sentence she serves,
8  she will come out as a convicted felon and a sex
9  offender, and we know what kind of restrictions those
10  labels carry.
11        You know from the various reports and
12  examinations, the evaluations and diagnoses in this case
13  that Ms.  Tipton, unlike most sex offenders who appear
14  before this court, is at a very, very low risk to
15  re-offend based on the nature and the circumstances
16  surrounding this charge.  You also know that she's an
17  excellent candidate for treatment and therapy.  Those are
18  just a few of the sort of thumbnail grounds I laid out
19  for the Court.  This case, unlike many we see where the
20  defendant's charged with these identical circumstances.
21  This case is really a departure from the heartland of
22  cases I would say to Your Honor.  There are a number of
23  facts about this case that are really distinct and really
24  distinguish them from other persons similarly prosecuted.
25        Deborah Tipton is here -- appears before Your

56

1    Honor this morning and is 45 years old.  She was 43 at

2    the time of these offenses.  She was originally born in

3    New York state.  Her parents are here today in support of

4    her.  She married and moved to this state, moved to

5    Henderson County, back in the year 2000.  She was married

6    in Florida.  She was the mother of two children.  She

7    separated at or about the time of these offenses, and she

8    is now divorced.

9          Your Honor knows from the various materials you've

10   read that she has no history of substance abuse of any

11   kind.  She has no history of pornography or engaging in

12   pornography or inappropriate contacts with minors or

13   anything of that character or anything of that nature.

14   There's simply no history of it here.  There's no prior

15   criminal record of any form.

16         You know that my client, if Your Honor please, had

17   devoted her life to teaching.  She was an educator.

18   Unlike Mr. Hamby, she was not an administrator.  She

19   worked in various positions.  She was an assistant, and

20   at some point she was a substitute teacher.  She

21   eventually became a full-time teacher of children around

22   the eighth grade level.  Not just any children, either,

23   but handicapped children, Special Needs children.  She

24   was a Special Educations teacher and that's what she had

25   devoted her life and her craft to.

57

1        There are, sort of, three points I want to call to

2   the Court's attention that I think are significant for

3   Your Honor to consider in sentencing in this case.  One

4   is -- and I mentioned this briefly a moment minute ago.

5   If Your Honor please, the damage that has been done and

6   the injuries -- the harm that has been caused to the

7   victim in this case may not surface or appear for many

8   years to come and we understand that.  We accept that.

9   That being said, though, the damage that has been caused

10  by the forced separation, even the trauma of this

11  judicial process, which is unavoidable, cannot also be

12  denied in this case.

13       The separation of Ms. Tipton out of the family and

14  away from that family has had a profound effect on

15  persons involved in this case.  There was therapists

16  involved in this case early on, and you have a copy of

17  her report, it's Polly Penlan.  And it was Ms. Penlan who

18  opined that there is far more damage to the child by the

19  mother being taken away than any act charged here.

20  That's her opinion, and I understand that.  But if there

21  was one thing that was really telling about the harm in

22  this case it was the statement of the victim herself -- I

23  think it was actually attached to the objections to the

24  presentence report -- because the victim made a statement

25  when she was being interviewed by Dr. Husted, the MD who

58

1   did the psychological evaluation.  He asked her very

2   candidly.  He said, you know, if there's one thing -- if

3   there's anything you could change in your life about this

4   right now, what would it be?  And the victim reported to

5   him, you know, I would just like to have my mom back.

6        The second point I want to call to the Court's

7   attention -- and I mention this also just as to the

8   disparity.  The distinctions in this case are striking.

9   The evidence in this case, I would say to Your Honor,

10  contrary to what Mr.  Hamby told this agent, was

11  Deborah's Tipton's design or Deborah Tipton's plan.  My

12  client is not a pedophile.  We can quibble over words,

13  but I think Dr. Husted, the MD who did the evaluation in

14  this case who -- the therapist by the name of Honeycutt,

15  you've read her report.  There was also an examination

16  that was done by Dr. Middleton.

17       All of these persons have determined and all these

18  persons have stated, if Your Honor please, that while she

19  was engaged in this relationship and apparently trying to

20  fulfill this man's needs or this man's fantasies, these

21  were not fantasies that were Deborah Tipton's.  These

22  weren't needs that she had to have met.  And I would say

23  to Your Honor that that is one thing that distinguishes

24  Deborah Tipton's case from other persons similarly

25  charged.  This is not a case where we have any kind of

**138**

59

1  intentional infliction of physical harm or at least, hey,

2  no minor -- this is not a situation where we have some

3  sort of networking or cache of pornographic images or sex

4  -- children in sexual activities out there.  This is not

5  a case where we have a network of sharing of materials

6  between persons or going online.  This is not a case, if

7  Your Honor please, of any sort of lewd or lascivious

8  touching or contacts involving minors.

9       As a matter of fact, if you compare Deborah Tipton

10 and what she did in this case to the acts of the

11 co-defendant who was just sentenced, that person did

12 indeed admit an addiction to watching children, as I

13 recall, girls between the ages of 13 to 15 over Limewire

14 for some period of time.  That does not diminish her

15 culpability and I understand that.  That does not

16 undercut her, you know, her own guilt here or that's not

17 a justification for what she did.

18       But it is important, I think, if Your Honor

19 please, to recognize that Mr.  Hamby was the one who

20 provided the camera.  He told her how to operate the

21 camera.  He's the one, if Your Honor please, who

22 requested these videos from her, both her personally and

23 from one other source.  So the fact that he comes in here

24 and is facing a minimal sentence, at least compared to

25 what Deborah Tipton is facing, that disparity is striking

60

1  in this case.  Early on, she faced a multiplicity of

2  charges.  Her exposure, frankly, would have been much

3  greater than what she is facing before this court today.

4  Hamby has not had to face that, and that is disturbing to

5  me in this case.

6          Thirdly, if Your Honor please, but for these

7  charges, but for this case that is before you today,

8  Deborah Tipton has led -- without any sort of

9  explanation, she has led a very productive life.  She's

10 led a positive life, both in her professional community

11 and her life at home.  She's contributed significantly to

12 her profession and her teaching endeavors and the persons

13 that she's dealt with.  She has been a loving and

14 attentive mother to her family.

15         Your Honor knows from reading the psychological

16 reports that this woman had really had an extraordinarily

17 close relationship with her children.  That's not

18 something she fostered.  There was nothing devious about

19 that, in light of what's happened here.  That's the kind

20 of bond and that's the kind of relationship she had with

21 her own kids.  She has been a good person the entirety of

22 her 45 years, certainly a law-abiding citizen but for

23 this event that brings her before the court here today.

24 I just hope that, in consideration of what you think is a

25 fair and a just sentence, your judgment will in some way

61

1  serve to reflect that.

2        You know, this was a single incident.  We claim,

3  whether it qualifies as abhorrent behavior, it is an

4  abhorrent act.  If Your Honor please, that was a

5  departure from a life of being a law-abiding citizen.

6  That's really what it was to Deborah Tipton.  The

7  judgment, I hope it reflects in some ways her own

8  struggles and her own shortcomings in this case.  You

9  know from the various opinions you've read of the

10  therapists and doctors that examined her that this is a

11  woman who had a lot of issues and continues to have a lot

12  of issues, some which are mental health issues, dealing

13  with her own depression and adjustment disorders,

14  personality problems.

15        She was very vulnerable at the time she was in

16  this relationship with Hamby, and I think all parties

17  have concluded she was easily influenced.  Again, that is

18  not justification for what she's done, but I think that

19  is some explanation for why a woman who was 43 at the

20  time, who had led a law-abiding life, who was close and

21  bonded and in a loving relationship with her family, was

22  brought to the point that she did.  So if Your Honor

23  please, these are just some of the factors I would argue

24  Ms. Tipton's path that I would argue to the Court

25  extracts or removes this case from the heartland of

62

1  similar cases like this.

2       Your Honor is going to enter a sentence today.
3  I've appeared before Your Honor enough to know you're
4  very -- you're very thoughtful, not just about this case
5  but all cases, and you try to impose a sentence that you
6  think fashions such that the punishment will fit the
7  crime.  That's really all I can ask on behalf of my
8  client today.

9       You have been inundated with the motions and the
10 paperwork filed by both sides in this lawsuit over the 17
11 months that this case has been in gestation.  You have
12 probably seen and read and been confronted with more
13 things in duplicate than you ever needed to, and I
14 apologize for that.  But I just ask Your Honor to be
15 compassionate and to consider her past, not just what
16 happened here, and do your best to make that judgment
17 that you impose today proportion to the crime that was
18 committed.

19      A couple of special requests, and they're only
20 borne out by what you've seen in some of the filings.
21 Ms. Tipton, evidently, has a series of mental health
22 issues that need to be addressed in the service of her
23 sentence.  Any facilities or programs that are available
24 at the Bureau of Prisons, I would make that request on
25 her behalf.  Also, like Mr.  Hamby, the very nature of

**142**

63

1   this charge and her admitted involvement in this charge

2   is as a sexual offender.  So any participation she might

3   have in any sort of treatment program while she's

4   incarcerated would also be welcome.  Thank you.

5           THE COURT:  Thank you, Mr. Stewart.

6           Ms. Randall, what's the position of the

7   government?

8           MS. RANDALL:  Your Honor, the government is

9   recommending a sentence of 240 months in this case.

10  Before addressing the 3553A factors, I wanted to briefly

11  respond to the defendant's motion for a downward

12  departure.  As Your Honor's already noted, the abhorrent

13  behavior departure does not apply to this type of case.

14  Because of the nature of the conviction, it specifically

15  says the Court should not consider an abhorrent behavior

16  departure.  However, with regard to the assistance to

17  authorities, they claim that because of her interview

18  that she gave to law enforcement the one time she spoke

19  to law enforcement that that led to the investigation and

20  prosecution of Mr. Hamby, and that's just completely not

21  true.

22          Mr. Hamby pled to knowingly receiving child -- a

23  visual depiction of a child engaged in sexually explicit

24  conduct.  And if you look at Ms. Tipton's interview with

25  law enforcement, which is Government's Exhibit 2, what

64

1 she says about Mr. Hamby's involvement was that he never
2 asked for a picture of the victim. "I don't remember him
3 actually asking for them. I don't think he asked me."
4 How does that lead to the conviction of Mr. Hamby? She
5 did nothing to lead to his conviction. Law enforcement
6 already knew Mr. Hamby had the video before they
7 interviewed her, Your Honor, because of the fact that the
8 forensics and the information from FlipShare showed he
9 received the video. And when he was interviewed, he
10 immediately admitted to what he did. That's what led to
11 his conviction. It had absolutely nothing to do what
12 with what Ms. Tipton did in this case. If anything, she
13 minimized his and her behavior in this case.
14         With regard to the 3553(a) factors. Your Honor,
15 the government is seeking a 240-month sentence in this
16 case, receiving 240 months on the transportation and 120
17 months on the possession charge to run concurrently,
18 because it was the same image that's the basis of both of
19 those offenses. However, that doesn't -- the fact that
20 the government's asking them to run concurrent does not
21 negate the nature and circumstances of this case.
22         Your Honor's had a chance to review the video
23 that's at issue. This is not an anatomical video. It's
24 not an educational video. It is a video produced by a
25 woman hoping to sexually excite the man she had engaged

65

1  in a seven-year relationship with.  There are innocent

2  bathtub pictures of children that exist; this is not one

3  of them.  It's child pornography.  I know the defense

4  objects to me calling it "child pornography," but child

5  pornography is defined as a visual depiction of a minor

6  engaging in sexually explicit conduct, which is what she

7  pled guilty to Your Honor.

8          Why did she do this?  Why did she initiate this?

9  Why did she film this?  Why did she distribute it?

10  Because she wanted to please the man that she was

11  engaging in a sexual relationship with.  She got sexual

12  gratification out of that, Your Honor.  They say

13  Mr. Hamby is the dominant one in this relationship, but

14  there's no doubt she was receiving satisfaction from this

15  as well Your Honor.  She was willfully engaging in all of

16  these behaviors over a seven-year period.  That's what

17  led to her betraying the trust of her child.

18          The government would argue that the evidence in

19  this case shows that this affair had been going on for

20  several years.  In May of 2011, Mr. Hamby left the

21  school and transferred to another school.  At that point,

22  their relationship slowed down.  Mr. Hamby has stated

23  that, and the evidence has shown, that that's -- that he

24  had moved schools and this was occurring.  The government

25  believes at that point that Tipton feared that their

66

1  relationship was coming to an end.  They were not

2  chatting as much.  They had not met for any of their

3  sexual encounters.  They were not working out together.

4  She even told her therapist, Your Honor, in her

5  government -- in her defense exhibits that Hamby was

6  attempting to disentangle himself from her.  That's taken

7  directly from their case.  The fact is, her home life was

8  falling apart.  She cannot have a good relationship with

9  her husband.  She was using the one man that she did have

10 in her life that she was turning to -- she described him

11 as a friend to her, someone she went to for advice and

12 that she looked up to.  She was losing him as well.

13       So she used her daughter in a sick attempt to

14 bring him back.  She was the one who told him, you should

15 see how she's developing.  She was the one who put it out

16 there knowing that it was something that would sexually

17 excite him.  And he did ask her to send it to him.  She

18 hasn't said that.  He's the one who admitted to it, Your

19 Honor.  And we would tell you that his testimony -- his

20 statement to law enforcement is quite reliable because it

21 was a statement against his interest.  He owned up to

22 everything he did, Your Honor.  He owned up to more than

23 we even knew about in terms of his previous reviewing of

24 child pornography.  We knew some about it.  He talked

25 about it and he gave us more detail on that.  He

**146**

67

1  completely owned up to his half of it.  As you know,

2  Ms. Tipton said he never asked for it but he said, no,

3  when she told me about it, I said yeah, I want to see

4  that.  Send it to me.  Your Honor, so that's why we think

5  his statement is reliable in this case.

6          In the filings of this case the defendant

7  repeatedly tries to portray this as being an innocent

8  video; that it's something between her and her daughter

9  and that her daughter was participating in and asked her

10 to do.  Your Honor's reviewed the videos and the

11 transcripts and I think that is what paints a different

12 picture.  In the one video she surprises her daughter in

13 the shower.  It's clear because her daughter says, what

14 are you doing?  Oh, my gosh, mom.  And she has the camera

15 videotaping her daughter.  She's telling her to "show

16 me."  And then her daughter is showing her and singing

17 and dancing.  At some point Tipton brings the camera to

18 show her daughter's genitalia.  And the daughter says,

19 "What are you doing?"  And she's the one who says, "Time

20 for an update."  Her daughter says, "What are you doing?

21 Oh, okay."  And she instructs her, "open it up," meaning

22 her vagina.  "Let me see.  Open.  Open it up again."  And

23 she continues.  "Open it up more.  Let me see what's

24 inside the folds.  Spread it so you can see the hairs

25 inside, too."

147

68

1        Your Honor, as you've seen, the video is

2   horrifically and disturbingly centered on what is a lewd

3   and lascivious shot of the child victim in this case.  It

4   shows more than that.  She also shows other parts of her

5   daughter's body, never attempting to capture her face.

6   And what is particularly disturbing about that video is

7   the last thing Ms. Tipton says.  As she's closing out the

8   video she says, "Enjoy," which is the same word she put

9   on the e-mail she sent Mr. Hamby when she sent this

10  video, she claims.  She closes that video out "Enjoy" and

11  that is what she put as the heading when she sent that

12  video to Mr. Hamby.

13        The same thing with the other video, Your Honor.

14  She tells her daughter that we're taking an educational

15  video to teach you how to shave your arms.  But instead

16  of showing her daughter shaving her arms or her armpits,

17  she's showing her genitalia.  Again, the camera is

18  focused solely on her genitals and doesn't have her face

19  or her arm in it.  It starts out showing her arms, but

20  later on it drops down below her waist.  And her daughter

21  says, "Will you stop staring there and look at my

22  underarms?"  And she was like, "Wow.  I'm getting up

23  close."  And her daughter is like, "No.  Up.  Up here.

24  Up here."  And then Ms. Tipton again goes down to show

25  her genitals and says, "I want to see this again. Pull it

148

69

1  out more."  And when the victim says, "It doesn't go much

2  farther than that," she says, "It doesn't?  Are you

3  sure?"  Ms. Tipton was clearly the one directing this and

4  instructing her daughter on what to do so that she could

5  create this video and Immediately send it to Mr. Hamby

6  with the title "Enjoy."

7        What's particularly disturbing about this, Your

8  Honor, is what led up to it.  She told him, "I have a

9  surprise for you."  She tried to build up the

10 anticipation he was going to have of viewing a video of

11 her own daughter.  And when she sent it to him she told

12 him, "I wish I could be there to sit on your lap and feel

13 you get excited" by her daughter, Your Honor.

14       And in this case she had picked what could only be

15 described as the perfect victim, someone who trusted her,

16 looked up to her, believed she would protect her; someone

17 she believed would never hurt her, Your Honor, someone

18 who was close to her and that would never tell, someone

19 who would believe her when she said we're doing these

20 videos to document your maturing and how we're doing

21 these shaving lessons.  Her daughter believed this was

22 something between them, something that was part of their

23 bond, but it didn't stay that way.  She sent it to Mr.

24 Hamby, a man they claim is a pedophile; a man who they

25 claim is a horrible, horrible person.  She's the one who

70

 1  sent him the video, not knowing if he was going to
 2  distribute it to other people, not knowing what he was
 3  going to be doing with it.  She didn't care.  She didn't
 4  care about protecting her daughter all she cared about
 5  was satisfying her and her lover's sexual needs, which
 6  brings me to the characteristics.
 7       Your Honor, she wants to say she's a good mother.
 8  She's brought forward people and psychiatrists reports to
 9  say she's a good mother.  A good mother does not make
10  this individual.  A good parent would not send this to a
11  man as a surprise and say she wanted to sit on his lap.
12  It's disturbing -- again, Your Honor, it's so disturbing
13  to think she wanted to feel the erection of someone who
14  is sexually viewing a video of her daughter.
15       I know Your Honor's found she's accepted
16  responsibility, but what acceptance she put forward is
17  bare minimum.  To this day, in her reports, she's still
18  saying maybe my husband did this to frame me.  Maybe I
19  did it by accident.  I didn't make a sexually explicit
20  video.  If she can't admit what she did is wrong, Your
21  Honor, what hope is there for rehabilitation in this case
22  or that she would not do it again in the future?  Their
23  filings and their argument today, all it does is blame
24  everyone else.  It doesn't talk about what she did and
25  the harm that she caused to her daughter.  They blame it

**150**

71

1  -- the only acknowledgment of her role is to say that

2  she's socially immature and a people pleaser; that it's

3  Chad Hamby's fault because he asked her to do it.  That

4  makes no sense.

5      If Mr. Hamby had given her a suitcase of cocaine

6  and said take this to Mexico, she wouldn't have done

7  that.  If he had said I want a video of you raping your

8  child, are they going to say she would have done that

9  because he asked her to?  If he had said I want to -- I

10  want a video of you killing somebody, was she going to do

11  that?  No.  She knew right from wrong.  She could draw a

12  line, Your Honor, but this was not a line she wanted to

13  draw.  She wanted to give this to him because she wanted

14  to entice him, Your Honor, and she needs to take

15  responsibility for this.

16      She's also blaming her divorce.  This was a highly

17  contested divorce case, a separation, but that inures the

18  fact this video was taken months before the separation.

19  Yes, there was probably marital discord going on in the

20  house.  But there was no divorce filing yet, Your Honor.

21  That did not occur until months later.  This was a video

22  she created before that ever happened, and it did not

23  arise out of this highly contested civil litigation.

24      In her favor she does have a strong support

25  system, Your Honor.  I've had the opportunity to read the

72

1  letters and affidavits submitted by her friends and
2  family, and the one thing that jumped out to me is many
3  of them still don't think she did anything wrong.  They
4  say things like, if she did do this, you know, and this
5  is after she's pled guilty.  "If she did do it," or "I
6  still believe there's reasonable doubt."  It says two
7  things:  She hasn't admitted to them what she actually
8  did, and they don't really know who she is and what she's
9  capable of.

10         It reminds me of her detention hearing when people
11  stood on her behalf and offered her a place to stay.
12  The magistrate said he wished he had friends like that.
13  But what he said was they don't know what he knows.  They
14  don't know what's in the complaint.  That's the case
15  here.  They don't know what we know, Your Honor.  They
16  haven't had access to this discovery to know what this
17  actually entails.  We're not saying she's a pedophile,
18  Your Honor.  What we're saying is she knew what she was
19  doing and she did this on purpose.

20         With regard to the sentencing disparity argument
21  and what they refer to as the "equal protection argument"
22  claiming because she's a woman, she's being treated
23  differently.  It's ironic, Your Honor, because she's
24  asking this court to treat her differently because she's
25  a woman, because she's a mother.  She relies heavily on

73

1  the status of the fact she's a mother in asking for this

2  downward variance.  I can't imagine a case where a man

3  would ever come before this court, or has ever come

4  before a court, and said I'm the father of the victim and

5  I need to be there for the victim.  You should let me be

6  there because you're harming the victim by not having

7  their father.  In fact, normally, we vilify a mother who

8  stays with a father who has produced images of a daughter

9  or a son.

10       And then with Mr.  Hamby.  They're trying to say

11  he's the one -- he should face more equal criminal

12  charges.  Your Honor, they want him to plead to accessory

13  or aiding and abetting the production of child

14  pornography, which is ironic because they argued there

15  was no child pornography throughout this whole thing and

16  that it wasn't sexually explicit until today.  Why should

17  they have Mr.  Hamby plead to production when she didn't

18  plead to production?

19       They actually pled to what they did in this case.

20  He pled to receiving the video she transported.  She pled

21  to transportation and possession.  There is no unequal

22  application of the prosecution's discretion in this case,

23  Your Honor.  They pled to what is sentenced under the

24  exact same guideline, 2G2.2.  Hers is higher because she

25  is more culpable.  What she did is more egregious and

74

1  more abusive.  Your Honor, she is one who took the video.

2  She's the one who abused her own daughter and she's the

3  one that distributed it.  But for her actions, Hamby

4  would never have received that video and her husband

5  never would have found it, Your Honor.  So her guidelines

6  cross-referenced 2G2.1.  He stayed under 2G2.2 because he

7  was not involved in the production aspect of the case.

8  So there is no sentencing disparity in the case.  The

9  guidelines are what led to the sentences being what they

10  are.

11       Although not discussed much today, the filings,

12  Your Honor, repeatedly attack her husband and try to

13  shift a lot of the blame to him and he saying should be

14  facing as much time as her.  Your Honor, people like

15  Mr.  Tipton are not exposed to this like you or me or the

16  defense counsel are.  We are someone who sees and who

17  deals with child pornography type cases all the time.

18  When you take the average person off the street who

19  doesn't even think child pornography really exists, they

20  don't even think about it, and you throw them in the

21  middle of this, a typical reaction is to be shocked and

22  is to be confused by it.

23       Would I have loved for him to run to law

24  enforcement immediately?  Yes, that would have been the

25  best reaction, Your Honor, in an ideal world.  But when

75

 1  you're in the middle of a messy divorce, and when

 2  everything you do is going to be watched and critiqued

 3  and you're going to be accused of doing things, the fact

 4  that it took an extra minute to take it to someone he

 5  trusted, like a therapist or his attorney, and to be

 6  like, is this what I think it is, Your Honor, before

 7  calling law enforcement is not -- shouldn't be held

 8  against him or give her any kind of grounds for a

 9  variance.  Because as soon as he talked to someone he

10  trusted, he was there -- he talked to police; he talked

11  to DSS, Your Honor.

12          And with regard to other child pornography cases.

13  Your Honor, I'm not sure exactly what sentence they're

14  asking for.  They're just seeking a variance.  But if you

15  look at other child pornography cases in this case where

16  someone produced a video or an image, as reflected in the

17  sentencing memorandum the lowest sentence I found was 168

18  months and they go all the way up to 37 years.

19          I know Your Honor has sentenced multiple people

20  who produced child pornography, some in very similar

21  cases to Ms. Tipton, some worse and some not as bad.

22  Mr. Tillman, I know, got 37 years.  Mr. Barrel, I

23  believe, got 28 years, Your Honor.  So the sentence we

24  are seeking is within the heartland of what she did.  The

25  fact that she doesn't have a criminal history, Your

76

1  Honor, is actually already taken into account which the

2  guidelines.  If she had a criminal history, if she had

3  been caught doing something like this before, she would

4  be facing a much, much higher sentence.  We think the

5  sentence of 240 months would address the seriousness of

6  the offense, Your Honor, and be the just punishment in

7  this case.

8        I know Your Honor recognizes the harm -- the

9  perpetual lifelong harm this is going to have to not only

10  the victim but her family.  There is no doubt there was a

11  strong bond between her and her mother, and for her to

12  lose her mother has been completely painful to her.  And

13  her having to work through that, Your Honor, is horrible.

14  And that's on top of knowing what she knows about her

15  mother sending this video to Mr. Hamby.  That's all

16  Mrs. Tipton's fault.  She's causing all of that harm to

17  her daughter and has turned her life upside down.

18        At the closing of the argument, Your Honor, I will

19  hand up Mr. Tipton's Victim Impact Statement which is

20  marked as Government's Exhibit 4.  He had planned on

21  reading it, Your Honor, but we're going to instead file

22  it to try and maintain some of the privacy of the victim.

23        THE COURT:  That's the same Impact that was filed?

24        MS. RANDALL:  It's not, Your Honor.  It's about a

25  little over a page, if you take out the part he scratched

**156**

77

1  out.  It's kind of an update of what's happened since

2  then.

3        And with regard to the ongoing harm, Your Honor,

4  of her being separated from her daughter.  This is

5  something the government spoke at length with the

6  guardian ad litem about, who has been in very close

7  contact with the therapist in this case.  We recognize

8  the fact that her daughter is suffering from the lack of

9  a relationship with her mother, and we are actually going

10  to ask the Court to enter into the judgment a way for the

11  daughter to have very limited contact with her mother, as

12  seen fit when the victim wants it, but also as seen fit

13  by her therapist and the guardian ad litem, Your Honor.

14        We would like an opportunity for her to talk to

15  her mother and ask her the questions she wants to ask and

16  hear what her mother has to say, but we want it to be a

17  supervised contact visit, preferably supervised by her

18  therapist or the guardian ad litem.  I know I've talked

19  to the guardian ad litem who is willing to do it, and I

20  believe the therapist would be as well.  She is here, as

21  well, because we are trying to ameliorate some of the

22  harm that's been done to her, harm that's been caused by

23  Mrs.  Tipton.  So that should remedy any concern that she

24  needs to get out sooner because it's harming her daughter

25  not to have any contact with her.

78

1          Your Honor, I don't want to repeat too much in

2   this sentencing memorandum but I can't talk enough about

3   the reason she's deserving of this sentence is because,

4   while there may not have been a hands-on sexual offense

5   in this case, the fact that she abused the relationship

6   she had with the victim in this case and that she was so

7   willing to do that for such a stupid reason, Your Honor,

8   speaks that there needs to be a strong message for

9   deterrence, not only for her but other people like her,

10  Your Honor, who are willing to use their children as

11  pawns in their sexual relationship; willing to use their

12  children as bait in order to make a man happy.

13          She is a smart woman.  Your Honor, she has a

14  master's degree.  She knows right from wrong and she

15  could have said no, but she wanted to be in this

16  relationship.  This was a seven-year relationship.  This

17  wasn't something that was new to her.  This wasn't

18  something where she was trying to figure it out.  She was

19  comfortable in this relationship.  She depended on this

20  relationship.  She wanted it to continue.  And because of

21  that we are here today.  She needs to own up to that and

22  she needs to receive a just punishment that will reflect

23  that.  Therefore, we are seeking the sentence of 240

24  months in the case.

25          We would ask that you incorporate the judgment of

USCA4 Appeal: 13-4737    Doc: 19    Filed: 02/05/2014    Pg: 164 of 196

1  forfeiture, Your Honor, into her final judgment.  We did

2  file the restitution memorandum similar to what we did in

3  Mr.  Hamby's case.  If I could just hand up Government's

4  Exhibit 4 at this time?

5       THE COURT:  You may approach and hand that up.

6       Ms. Tipton, at this time you have the opportunity

7  to address the Court and to tell me anything that you

8  feel I need to know before I make my decision about your

9  sentence in this matter.

10      THE DEFENDANT:  Your Honor, I just wanted you to

11  know that I love my family and my children very, very

12  much and I am very sorry for all my bad judgments and

13  mistakes that I have made.  And I never wanted to harm

14  them or anybody.  And I have -- I've caused a lot of pain

15  and a lot of suffering for not just my children, my whole

16  family, for everything that they've had to go through.

17      My parents have, you know, put up their retirement

18  to help cover my fees.  And they haven't seen their only

19  granddaughters -- very limited.  They've been being kept

20  from them and I know that hurts them very much.  I hope

21  some day that I can repay them for everything that

22  they've done for me.  And I have -- I've lost everything,

23  everything.  I mean, my career, everything that I owned

24  that's still in the house.

25      More than anything, I've lost my children.  And

**159**

USCA4 Appeal: 13-4737     Doc: 19     Filed: 02/05/2014     Pg: 165 of 196

1   that's -- that's very difficult.  I know it's difficult

2   for me.  I can only imagine what they're going through

3   with all of this.  We were -- we were very close.  We did

4   everything together.  I taught -- I mean, I taught at

5   their school.  We were together from the time I woke up

6   in the morning until the time, you know, I read them

7   bedtime stories at night.  I was involved with all their

8   activities and events.  And, I mean, they would come to

9   me with everything.  I mean, T.L. has lots of questions

10  and always did, and we'd answer them and try to find the

11  answers to them.  And she'd come to me with all of her

12  problems, you know, when she was upset or angry, and, you

13  know, we'd always talk it all out.  She would come to me

14  with the bright ideas that she always had and, you know,

15  things that she wanted to try.  And it was -- we were

16  very close.

17        I've taken that.  And it's all -- it's all gone,

18  and I can't get that back.  I can't do it over.  I mean,

19  I made mistakes, bad judgments, and there is no do-overs.

20  I can't take any of that back.  I can just learn from my

21  mistakes and move on.  I mean, I pretty much abandoned my

22  kids.  I mean, one day T.L., you know, may recollect my

23  promise not to leave her alone and then the next I get a

24  phone call and walk out that door.  I didn't even get to

25  say good-bye to them.  I just walked out that door and

1  haven't seen them in 19 months.  That was February 21st

2  2012.  At 7 o'clock that night I just walked out the

3  door.  And I can't even imagine what they're going

4  through because of what, you know, I'm going through here

5  not being with them and wondering what they're doing and

6  how they're doing.

7         I can only imagine what they're doing and having

8  to go through and how they're coping and what they're

9  facing on the outside with all the people and the media

10 and everything.  I just -- I don't know.  I pretty much

11 just walked out of their lives.  I just hope that they

12 can forgive me for what I've done.  And I just -- and I

13 pray to God every night that T.L. doesn't blame herself

14 for any of this.  She doesn't have anything to do with

15 this.

16        It was all my fault and I've learned a lot from

17 this experience.  I mean when you go through something

18 like this, you can't take back the past.  Like I said,

19 you can't do it over.  You can only learn from it and

20 just move on and move forward and just try to make you a

21 better person from it; maybe help others not to make the

22 same mistakes that I've made and keep them going from

23 going through the same trials that I've been going

24 through.

25        I just -- I'm sorry.  I just want to be able to

USCA4 Appeal: 13-4737     Doc: 19     Filed: 02/05/2014     Pg: 166 of 196

1  make opportunities out of this, too.  I mean, I've lost

2  my career.  I just want an opportunity to go on and do

3  something else with my life, you know, follow other

4  passions that I have and be able to reunite with my

5  children again and get back to being the mother that I

6  was and being in their lives again.  I just miss them

7  very much.  I'm sorry for everything that I've done and

8  everything I've put people through.  I mean T.L. and my

9  family, everybody.  I can't take it back, but I can just

10 try to make the best of it from here on out and make

11 myself a better person and try to help others.  Thank

12 you.

13      THE COURT:  Thank you, Ms. Tipton.

14      Pursuant to the Sentencing Reform Act of 1984 and

15 the case of *United States versus Booker*, it is the

16 judgment of this court, having considered the factors

17 noted in 18 U.S.C., Section 3553(a), that the defendant,

18 Deborah Lee Tipton, is hereby committed to the custody of

19 the United States Bureau of Prisons to be imprisoned as

20 to Count Two for a term of 216 months and as to Count

21 Three for a term of 120 months, with those terms to run

22 concurrently.

23      With regard to the application of the factors for

24 sentencing under the statute.  There are several factors

25 that go into this decision regarding the sentence.

USCA4 Appeal: 13-4737     Doc: 19     Filed: 02/05/2014     Pg: 167 of 196

83

1  First, as I say often in these child pornography cases, I

2  find that the sentencing guidelines are of very limited

3  value in assessing what an appropriate sentence is,

4  because I think there is a certain disconnect between the

5  statutory sentencing scheme set out by Congress and the

6  guidelines scheme set out by the Sentencing Commission.

7       With these cases I see the statutory scheme

8  largely broken down into three categories or three

9  brackets:  The possession offenses which are bracketed

10 for sentences of zero to ten years, the transmission

11 offenses that are bracketed for sentences of five to 20

12 years, and the production offenses which are bracketed

13 for sentences of 15 to 30 years.  I think it is clear

14 that this falls in that third category, that being a

15 production offense.

16      The argument has been made here that there is a

17 disparity between the sentence being sought by the

18 government and what has been provided by the Court here

19 in this case versus what Mr. Hamby received.  However, I

20 believe that the facts here are that this is a production

21 offense.  Whereas, I don't believe that the evidence

22 supported a production offense in Mr. Hamby's case.  Not

23 to excuse his conduct -- he got a lengthy sentence, too

24 -- but his was not a production offense and this one is.

25      Viewing this case, then, within that 15- to

84

1  30-year bracket which, I believe, is the only appropriate

2  bracket within which to view this case, there are certain

3  things that mitigate and certain things that are

4  aggravating.  All of these reflect the seriousness of the

5  offense, which is one of the primary factors for

6  sentencing under the statute.  Of course, mitigating

7  aspects here are the fact that the victim here was not

8  forced or induced to commit any sort of sexual act which

9  is often seen in these child pornography cases and,

10  therefore, that moves it toward the lower end of the

11  bracket that is at hand.

12      Also, there was no sexual contact between the

13  defendant and the victim.  However, there are aggravating

14  factors here.  First and foremost, there is the breach of

15  probably, the most sacred position of trust and

16  confidence that one person can have in another in this

17  case.  As I am in this job, after a while, you think

18  you've seen everything.  I have to say that this is a new

19  one for me.  I did not think I would ever see a case like

20  this.  The breach of that position of trust that has been

21  exhibited in this case is clearly a factor that does not

22  allow me to impose a sentence at the low end of the

23  bracket of 15 to 30.  In addition, this case is very

24  similar to one that we've had here in this court not too

25  long ago that was also not a contact offense, also

**164**

85

1   involving minors of approximately this same age, but that

2   one involved voyeurism, really.  Whereas, this one

3   involved the manipulation of a child and I see that as

4   being something of an aggravating factor as well.

5   Another factor I have here is the fact that even though

6   the defendant admits the facts of her offense, she does

7   not seem to have come to grips with the criminality of

8   her actions, and that is an aggravating factor as well.

9       Taking all of those things into account, I

10  believe, reflects the seriousness of the offense.  I

11  believe that that is also a -- it provides a sentence

12  that is necessary to afford adequate deterrence to

13  criminal conduct and provides just punishment for the

14  offense in this matter.  I believe that this sentence

15  also avoids unwarranted sentencing disparities among

16  defendants, not just as between this defendant and

17  Mr.  Hamby but as between this defendant and others who

18  produce videos depicting minors engaged in sexually

19  explicit activity.  For those reasons I have imposed the

20  sentence that I have.

21      The Court calls to the attention of the custodial

22  authorities that the defendant has a history of mental

23  health issues and recommends that the defendant be

24  allowed to participate in any available mental health

25  treatment programs while incarcerated as may be

**165**

86

1   recommended by a mental health professional.

2        The Court recommends that the defendant be
3   participate in a sex offender treatment program while
4   incarcerated, if eligible.

5        It is ordered that the defendant be required to
6   support all dependents from prison earnings while
7   incarcerated, as outlined in the presentence report.

8        Upon release from imprisonment the defendant shall
9   be placed on supervised release for a term of the balance
10  of her life.  That is a life term of supervised release
11  as to Count Two and a life term on supervised release as
12  to Count Three, with those terms to run concurrently.

13       Within 72 hours of release from the custody of the
14  Bureau of Prisons the defendant shall report in person to
15  the probation office in the district to which the
16  defendant is released.  While on supervised release the
17  defendant shall not commit another federal, state or
18  local crime and shall comply with the standard conditions
19  that have been adopted by the court in the Western
20  District of North Carolina.

21       In addition, the defendant shall have -- shall
22  comply with the following additional conditions.  The
23  defendant shall have no direct or indirect contact at any
24  time for any reason with the victims or affected parties
25  in this matter unless provided with specific written

**166**

87

1  authorization to do so in advance by the United States

2  Probation Officer.

3         The defendant shall submit to a mental health

4  evaluation and treatment program under the guidance and

5  supervision of the United States Probation Officer.

6         The defendant shall remain in treatment and

7  maintain any prescribed medications until satisfactorily

8  discharged by the program and with the approval of the

9  United States Probation Officer.

10         The defendant shall submit to a psycho-sexual

11  evaluation by a qualified mental health professional

12  experienced in evaluating and managing sexual offenders

13  as approved by the United States Probation Officer.

14         The defendant shall complete the treatment

15  recommendations and abide by all of the rules,

16  requirements and conditions of the program until

17  discharged.

18         The defendant shall take all medications as

19  prescribed.

20         The defendant shall submit to risk assessments,

21  psychological and physiological testing, which may

22  include but is not limited to polygraph examinations

23  and/or computer voice stress analyzer or other specific

24  tests to monitor the defendant's compliance with

25  supervised release and treatment conditions all at the

**167**

88

1  direction of the United States Probation Officer.

2        The defendant's residence and employment shall be

3  approved by the United States Probation Officer.  Any

4  proposed change in residence or employment must be

5  provided to the United States Probation Officer at least

6  ten days prior to the change and pre-approved before the

7  change may take place.

8        The defendant shall not possess any materials

9  depicting and/or describing child pornography and/or

10 simulated child pornography as those terms are defined in

11 Section -- nor shall the defendant enter any such

12 locations where such materials may be accessed, obtained

13 or viewed; including pictures, photographs, books,

14 writings, drawings, books, videos or video games.

15       The defendant shall register as a sex offender and

16 keep such registration current in any jurisdiction where

17 she resides, where she is an employee, or where she is a

18 student.  For initial registration purposes only the

19 defendant shall register in the jurisdiction of

20 conviction if such is different from the jurisdiction of

21 residence.

22       The defendant shall not use, purchase, possess

23 procure or otherwise obtain any computer or electronic

24 device that can be linked to any computer network,

25 bulletin board, Internet, Internet Service Provider or

89

1  exchange formats involving computers unless approved by

2  the United States Probation Officer.  Such computers,

3  computer hardware or software, is subject to warrantless

4  searches and/or seizures by the United States Probation

5  Office.

6       The defendant shall allow the United States

7  Probation Officer or other designee to install software

8  designed to monitor computer activities on any computer

9  the defendant is authorized to use.  This may include but

10 is not limited to software that may record any and all

11 activities on computers that the defendant may use,

12 including the capture of key strokes, application

13 information, Internet use history, e-mail correspondence,

14 and chat conversations.  The defendant shall pay any

15 costs related to the monitoring of such computer usage.

16      The defendant shall not use or have installed any

17 programs specifically or solely designed to encrypt any

18 data, files, folders or volumes of any media.

19      The defendant shall, upon request, immediately

20 provide the probation officer with any and all passwords

21 required to access any data encrypted or compressed for

22 storage by any software.  The defendant shall provide

23 complete records of all passwords, Internet Service

24 Providers, e-mail addresses, e-mail accounts, screen

25 names and the like, both past and present, to the

90

1  probation officer, and shall not make any changes without

2  the prior approval of the United States Probation

3  Officer.

4      The defendant shall not use possess or control any

5  bootable Linux or counter-forensic tools.

6      The defendant shall not have any social networking

7  accounts without the approval of the United States

8  probation officer.

9      During the period of supervised release the

10 defendant shall notify all employers, family, friends,

11 and others with whom she has regular contact of her

12 conviction and/or history as a sex offender and that the

13 defendant is being supervised by the United States

14 Probation Office.

15     The defendant shall not be employed in any

16 position or participate as a volunteer in any activity

17 that involves direct or indirect contact with any

18 children under the age of 18 without the written

19 permission of the United States Probation Officer.

20 Under no circumstances may the defendant be engaged in

21 the position that involves being in a position of trust

22 or authority over any person under the age of 18.

23     The Court will hold open the issue of restitution

24 for 90 days pursuant to 18 U.S.C., Section 3663A and will

25 allow for the submission of further filings with regard

91

1 to the issue of restitution.

2       It is further ordered that the defendant shall pay

3 the United States a Special Assessment in the amount of

4 $200.

5       The court finds that the defendant does not are

6 the ability to pay a fine or interest.  And having

7 considered the factors noted in 18 U.S.C., Section

8 3572(a), the Court will waive the payment of a fine and

9 interest in this case.  Payment of the criminal monetary

10 penalty shall be due and payable immediately.  The

11 defendant shall forfeit her interest in those properties

12 as set out in the consent order and judgment of

13 forfeiture entered by the Court in this matter as

14 document 51 in the docket of this case which was entered

15 by the Court on September 19, 2012.

16       The Court has considered the financial and other

17 information contained in the presentence report and finds

18 that the following is feasible.  If the defendant is

19 unable to pay any monetary penalty immediately, during

20 the period of imprisonment payments shall be made through

21 the Federal Bureau of Prisons Inmate Financial

22 Responsibility program.  Upon release from imprisonment

23 any remaining balance shall be paid in monthly

24 installments of no less than $50 to commence within 60

25 days after release until paid in full.

92

1          Throughout the period of supervision, the

2     probation officer shall monitor the defendant's economic

3     circumstances and shall report to the Court with

4     recommendations, as warranted, any material changes that

5     affect the defendant's ability to pay any court-ordered

6     penalties.

7          Mr.  Stewart, are there any other issues regarding

8     either the sentence or the judgment that need to be

9     addressed?

10         MR. STEWART:  You might have mentioned it but did

11    you make a recommendation -- I request the Court make a

12    recommendation that whatever sort of sex offender therapy

13    was available and she participate in it.

14         THE COURT:  I believe I included that.  But just

15    in case I somehow skipped over that, I'll read that

16    portion again.  The Court recommends that this defendant

17    participate in a sex offender treatment program during

18    the period of incarceration if eligible.

19         MR. STEWART:  That's fine.

20         THE COURT:  I believe that was probably included

21    before but, just in case it was not, I include that now.

22         MR. STEWART:  That would be our only request, Your

23    Honor.

24         MS. RANDALL:  Your Honor, with regard to the

25    contact with the victim.  My understanding is the

93

1  standard condition and that they have to contact
2  probation applies on supervised release.  For the time
3  she's incarcerated, if we could add a condition that she
4  is to have no contact with the victim except as initiated
5  by the victim and supervised by a third party, or
6  something along those lines.  That would allow there
7  still to be supervised contact while she is in custody
8  until the standard condition comes into effect when she's
9  on supervised release.

10        Normally, in these cases when I want no contact I
11  ask the judge to -- I haven't done this in front of you
12  yet -- order a no contact -- a provision as part of the
13  judgment and then a contempt of court order charges.
14  Because my understanding is during that time she's
15  incarcerated there is really nothing preventing her from
16  contacting the victim, because her "no contact" hasn't
17  come into effect yet.  So if we could do so some sort of
18  condition of her judgment that she is to have no contact,
19  except initiated by the victim and supervised by,
20  ideally, a guardian ad litem or her therapist to be there
21  with her for it.

22        THE COURT:  Well, in terms of how that will be
23  supervised, is that even within my purview?  Or, is that
24  within the purview of the Bureau of Prisons?

25        MS. RANDALL:  Your Honor, that's a good question.

**173**

94

1  Maybe I can tell you kind of what our goal is, to help

2  you phrase it. We know at some point Ms. Tipton is going

3  to be sent somewhere in the Bureau of Prisons. We don't

4  know where she's going to be designated yet. After

5  talking to the guardian ad litem -- I believe her father

6  is in agreement with us doing this. The guardian ad

7  litem and the therapist thought it would be helpful for

8  her mental health for her to see her mother before she

9  gets sent off. So they were going to try to arrange to

10 do it before she leaves the Madison County Jail.

11       THE COURT: Mr. Stewart, do you want to say

12 something in response?

13       MR. STEWART: Your Honor, please. There's been

14 some communication between the guardian's office and

15 Mr. Jackson and I've not been a party to that. I

16 understand the course of those communications has sort of

17 evolved to the point where they want the victim or

18 victims to have some opportunity to meet with the

19 defendant. That's something we're wholly in favor of

20 under whatever terms, restrictions, conditions,

21 supervision, whatever may be required by the Court or the

22 probation office, or even the guardian herself. That's

23 fine with us. We'll certainly go forward with that. We

24 think that would be therapeutic. In this case we think

25 that might be helpful, certainly, for all parties.

**174**

95

1       THE COURT:  I will recommend that during the

2  period of incarceration -- recommend to the Bureau of

3  Prisons that during the period of incarceration that the

4  defendant will have no contact with the victim or any of

5  the victim's family members except as initiated by the

6  victim and/or the victim's guardian ad litem or the

7  victim's therapist, and that any contact be supervised by

8  either the guardian ad litem or Bureau of Prisons

9  personnel.  Anything else, Ms. Randall?

10      MS. RANDALL:  No, Your Honor, although I do

11  believe we still needed to approach the bench to put on

12  the record about what Mr. Stewart's objections.

13      THE COURT:  Well, we'll just reserve that and

14  we'll put that on the record after we adjourn.

15      MS. RANDALL:  Okay.

16      THE COURT:  I know that there are some objections

17  that Mr. Stewart has raised and that he wants to

18  preserve for the purposes of the record, and we'll allow

19  that.  Anything else?

20      MS. RANDALL:  No, Your Honor.

21      MR. STEWART:  No, sir, Your Honor.

22      THE COURT:  Ms. Randall is there a count that

23  needs to be dismissed?

24      MS. RANDALL:  Yes, Your Honor.  At this time we

25  would move to dismiss Count One of the indictment.

96

1    THE COURT:  That will be allowed.  Count One of

2  the indictment as to Ms. Tipton is hereby dismissed.

3    Ms. Tipton, you have the right to appeal this

4  sentence to the Fourth Circuit Court of Appeals on any

5  grounds that you've not previously waived.  You've

6  pleaded "guilty" pursuant to a plea agreement.  That plea

7  agreement includes some waivers that may substantially

8  affect your appeal rights.  You will need to consult with

9  your attorney as to what effect those waivers may have.

10    However, if you choose to appeal, you must file a

11  written notice of appeal with the clerk of this court

12  within a period of 14 calendar days following the date of

13  the entry of the final judgment in this case.  If you

14  wish to appeal but do not have the funds with which to

15  appeal, you may file an affidavit of indigency and, if

16  approved by the court, you may appeal at government

17  expense.  Do you understand this right of appeal as I

18  have explained it to you?

19    THE DEFENDANT:  Yes.

20    THE COURT:  Well, that will conclude this matter.

21  The defendant is remanded to the custody of the marshal.

22    I will say again that this is one of the most

23  unusual cases I've seen.  I didn't think that I would

24  ever see a case like this but, Ms. Tipton, it is from

25  here that you need to pick up the pieces.  I don't know

97

1 how you do that.  I think that you've done some things
2 that have torn your life apart, as well as others, but
3 from here it is -- you're going to have to do what you
4 can to pick up the pieces.

5      That concludes this matter.  The defendant is
6 remanded to the marshal.

7                    (Off the record at 12:14 p.m.)
8                 (Defendant excused from the courtroom.)
9                    (On the record at 12:17 p.m.)
10                (Whereupon, Counsel vouched the record.)
11      MR. STEWART:  In the judges chambers he was -- in
12 the judge's chambers, in anticipation of the hearing, the
13 Court was given an opportunity to look at some of the
14 sentencing exhibits offered by the government in this
15 case.  In particular, there was a DVD disk, and I think
16 that was marked as Government's Exhibit 1.  And he was
17 asked to preview that or look at that in chambers.  The
18 defense objected to that.

19      There was also a transcription of that tape, and I
20 think it was labeled as Government's Exhibits 1, 1A and
21 B.  I objected to the admission of those exhibits as
22 well.  I didn't think they were pertinent, and I thought
23 they were too late in their disclosure and I didn't think
24 they needed to be examined by the presiding judge at a
25 time of the hearing.

**177**

98

1          The judge reviewed it, overruled it, and they were

2    used in the sentencing procedure.  So that was the basis

3    of it.

4                    (Off the record at 12:18 p.m.)

5

6                              **CERTIFICATE**

7          I, Tracy Rae Dunlap, RMR, CRR, an Official Court
     Reporter for the United States District Court for the
8    Western District of North Carolina, do hereby certify
     that I transcribed, by machine shorthand, the proceedings
9    had in the case of UNITED STATES OF AMERICA versus
     DEBORAH LEE TIPTON, Criminal Action Number 1:12-CR-25 on
10   September 18, 2013.

11         In witness whereof, I have hereto subscribed my
     name, this 2nd of December 2013.
12

13                    __/S/__Tracy Rae Dunlap___
                      TRACY RAE DUNLAP, RMR, CRR
14                    OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25



AO 245B  (WDNC Rev. 02/11) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Western District of North Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA | )    **JUDGMENT IN A CRIMINAL CASE** |
| | )    (For Offenses Committed On or After November 1, 1987) |
| **V.** | ) |
| | ) |
| **DEBORAH LEE TIPTON** | )    Case Number:  DNCW112CR00025-001 |
| | )    USM Number:  27392-058 |
| | ) |
| | )    Jack W. Stewart, Jr. |
| | )    Defendant's Attorney |

**THE DEFENDANT:**

☒   Pleaded guilty to counts _2 & 3_ .
☐   Pleaded nolo contendere to count(s)__ which was accepted by the court.
☐   Was found guilty on count(s) __ after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title and Section | Nature of Offense | Date Offense Concluded | Counts |
|---|---|---|---|
| 18 U.S.C. §§ 2252(a)(1), 2252(b) and 18 U.S.C. § 2 | Knowingly transport visual depictions using the Internet, a means and facility of interstate and foreign commerce, and the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct, aid and abet | 9/10/2011 | 2 |
| 18 U.S.C. §§ 2252(a)(4)(B) and (b) | Knowingly possessed and produced visual depictions that had been mailed, shipped and transported in interstate commerce by means of a computer, the production of which involved the use of a minor engaging in sexually explicit conduct | 2/21/2012 | 3 |

The Defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984, United States v. Booker, 125 S.Ct. 738 (2005), and 18 U.S.C. § 3553(a).

☐   The defendant has been found not guilty on count(s) __.
☒   Count _1_ is dismissed on the motion of the United States.

**IT IS ORDERED** that the Defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay monetary penalties, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence:  9/18/2013

Martin Reidinger
**United States District Judge**

Date: September 21, 2013

Case 1:12-cr-00025-MR-DLH   Document 85   Filed 09/24/13   Page 1 of 7

 

AO 245B  (WDNC Rev. 02/11) Judgment in a Criminal Case

Defendant: Deborah Lee Tipton
Case Number: DNCW112CR00025-001

Judgment- Page 2 of 7

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of TWO HUNDRED SIXTEEN (216) MONTHS as to Count 2 and ONE HUNDRED TWENTY (120) MONTHS as to Count 3 to run concurrently to Count 2, for a total term of TWO HUNDRED SIXTEEN (216) MONTHS.

☒  The Court makes the following recommendations to the Bureau of Prisons:

- Participation in the Federal Inmate Financial Responsibility Program.
- Participation in sex offender treatment programs, if eligible.
- Defendant shall support all dependents from prison earnings.
- Participation in any available mental health treatment programs.
- Defendant shall have no contact with the victim or victim's family members except as initiated by the victim and coordinated by either the guardian ad litem or Bureau of Prisons' personnel.

☒  The Defendant is remanded to the custody of the United States Marshal.

☐  The Defendant shall surrender to the United States Marshal for this District:

☐  As notified by the United States Marshal.
☐  At __ on __.

☐  The Defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  As notified by the United States Marshal.
☐  Before 2 p.m. on __.
☐  As notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ to _____ at
_____, with a certified copy of this Judgment.

_____
United States Marshal

By: _____
Deputy Marshal

Case 1:12-cr-00025-MR-DLH   Document 85   Filed 09/24/13   Page 2 of 7



AO 245B (WDNC Rev. 02/11) Judgment in a Criminal Case

Defendant: Deborah Lee Tipton
Case Number: DNCW112CR00025-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of LIFE as to each of Counts 2 and 3.

☐ The condition for mandatory drug testing is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

## STANDARD CONDITIONS OF SUPERVISION

The defendant shall comply with the standard conditions that have been adopted by this court and any additional conditions ordered.

1. The defendant shall not commit another federal, state, or local crime.
2. The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.
3. The defendant shall pay any financial obligation imposed by this judgment remaining unpaid as of the commencement of the sentence of probation or the term of supervised release on a schedule to be established by the Court.
4. The defendant shall provide access to any personal or business financial information as requested by the probation officer.
5. The defendant shall not acquire any new lines of credit unless authorized to do so in advance by the probation officer.
6. The defendant shall not leave the Western District of North Carolina without the permission of the Court or probation officer.
7. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.
8. A defendant on supervised release shall report in person to the probation officer in the district to which he or she is released within 72 hours of release from custody of the Bureau of Prisons.
9. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
10. The defendant shall support his or her dependents and meet other family responsibilities.
11. The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other activities authorized by the probation officer.
12. The defendant shall notify the probation officer within 72 hours of any change in residence or employment.
13. The defendant shall refrain from excessive use of alcohol and shall not unlawfully purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as duly prescribed by a licensed physician.
14. The defendant shall participate in a program of testing and treatment or both for substance abuse if directed to do so by the probation officer, until such time as the defendant is released from the program by the probation officer; provided, however, that defendant shall submit to a drug test within 15 days of release on probation or supervised release and at least two periodic drug tests thereafter for use of any controlled substance, subject to the provisions of 18:3563(e)(5) or 18:3583(d), respectively. The defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or monitoring which is (are) required as a condition of supervision.
15. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
16. The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
17. The defendant shall submit his person, residence, office, vehicle and/or any computer system including computer data storage media, or any electronic device capable of storing, retrieving, and/or accessing data to which they have access or control, to a search, from time to time, conducted by any U.S. Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant. The defendant shall warn other residents or occupants that such premises or vehicle may be subject to searches pursuant to this condition.
18. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed by the probation officer.
19. The defendant shall notify the probation officer within 72 hours of defendant's being arrested or questioned by a law enforcement officer.
20. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.
21. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.
22. If the instant offense was committed on or after 4/24/96, the defendant shall notify the probation officer of any material changes in defendant's economic circumstances which may affect the defendant's ability to pay any monetary penalty.
23. If home confinement (home detention, home incarceration or curfew) is included you may be required to pay all or part of the cost of the electronic monitoring or other location verification system program based upon your ability to pay as determined by the probation officer.
24. The defendant shall cooperate in the collection of DNA as directed by the probation officer.
25. The defendant shall participate in transitional support services under the guidance and supervision of the U.S. Probation Officer. The defendant shall remain in the services until satisfactorily discharged by the service provider and/or with the approval of the U.S. Probation Officer.

ADDITIONAL CONDITIONS:
26. The defendant shall submit to a mental health evaluation and/or treatment program under the guidance and supervision of the U.S. Probation Office. The defendant shall remain in treatment and maintain use of any prescribed medications until satisfactorily discharged by the program with the approval of the Probation Office.
27. Throughout the period of supervision the probation officer shall monitor the defendant's economic circumstances and shall report to the court, with recommendations as warranted, any material changes that affect the defendant's ability to pay any court-ordered penalties.



AO 245B  (WDNC Rev. 02/11) Judgment in a Criminal Case

Defendant: Deborah Lee Tipton
Case Number: DNCW112CR00025-001

Judgment- Page **4** of **7**

## SEX OFFENDER

## STANDARD CONDITIONS OF SUPERVISION

The defendant shall comply with the standard conditions that have been adopted by this court and any additional conditions ordered.
1.   The defendant shall have no direct or indirect contact, at any time, for any reason with the victim(s), the victim's family, or affected parties in this matter unless provided with specific written authorization to do so in advance by the U.S. Probation Officer.
2.   The defendant shall submit to a psycho-sexual evaluation by a qualified mental health professional experienced in evaluating and managing sexual offenders as approved by the U.S. Probation Officer. The defendant shall complete the treatment recommendations and abide by all of the rules, requirements, and conditions of the program until discharged. The defendant shall take all medications as prescribed.
3.   The defendant shall submit to risk assessments, psychological and physiological testing, which may include, but is not limited to a polygraph examination and/or Computer Voice Stress Analyzer (CVSA), or other specific tests to monitor the defendant's compliance with supervised release and treatment conditions, at the direction of the U.S. Probation Officer.
4.   The defendant's residence and employment shall be approved by the U.S. Probation Officer. Any proposed change in residence or employment must be provided to the U.S. Probation Officer at least 10 days prior to the change and pre-approved before the change may take place.
5.   The defendant shall not possess any materials depicting and/or describing "child pornography" and/or "simulated child pornography" as defined in 18 U.S.C. § 2256, nor shall the defendant enter any location where such materials can be accessed, obtained or viewed, including pictures, photographs, books, writings, drawings, videos, or video games
6.   The defendant shall register as a sex offender and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

## ADDITIONAL CONDITIONS:
7.   The defendant shall not use, purchase, possess, procure, or otherwise obtain any computer or electronic device that can be linked to any computer networks, bulletin boards, internet, internet service providers, or exchange formats involving computers unless approved by the U.S. Probation Officer. Such computers, computer hardware or software is subject to warrantless searches and/or seizures by the U.S. Probation Office.
8.   The defendant shall allow the U. S. Probation Officer, or other designee, to install software designed to monitor computer activities on any computer the defendant is authorized to use. This may include, but is not limited to, software that may record any and all activity on computers the defendant may use, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations. The defendant shall pay any costs related to the monitoring of computer usage.
9.   The defendant shall not use or have installed any programs specifically and solely designed to encrypt data, files, folders, or volumes of any media. The defendant shall, upon request, immediately provide the probation officer with any and all passwords required to access data compressed or encrypted for storage by any software.
10:   The defendant shall provide a complete record of all passwords, internet service providers, email addresses, email accounts, screen names, etc. (past and present) to the probation officer and shall not make any changes without the prior approval of the U. S. Probation Officer.
11.   The defendant shall not use, possess, or control any bootable linux or counter forensic tools.
12.   The defendant shall not have any social networking accounts without the approval of the U. S. Probation Officer.
13.   During the period of probation or supervised release, the defendant shall notify all employers, family, friends, and others with whom they have regular contact of their conviction and/or history as a sex offender and that the defendant is being supervised by a U.S. Probation Officer.
14.   The defendant shall not be employed in any position or participate as a volunteer in any activity that involves direct or indirect contact with children under the age of eighteen (18), without written permission from the U.S. Probation Officer. Under no circumstances may the defendant be engaged in a position that involves being in a position of trust or authority over any person under the age of eighteen (18).

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the Schedule of Payments.

| ASSESSMENT | FINE | RESTITUTION |
|---|---|---|
| $200.00 | $0.00 | |

☒ The determination of restitution is deferred until 90 days following the date of entry of this judgment. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

## FINE

The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the Schedule of Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☒ The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ The interest requirement is waived.

☐ The interest requirement is modified as follows:

## COURT APPOINTED COUNSEL FEES

☐ The defendant shall pay court appointed counsel fees.

☐ The defendant shall pay $0.00 towards court appointed fees.

AO 245B (WDNC Rev. 02/11) Judgment in a Criminal Case

Defendant: Deborah Lee Tipton                                      Judgment- Page 6 of 7
Case Number: DNCW112CR00025-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A ☐ Lump sum payment of $0.00 due immediately, balance due
      ☐ Not later than _____.
      ☐ In accordance ☐ (C), ☐ (D) below; or

B ☒ Payment to begin immediately (may be combined with ☐ (C), ☒ (D) below); or

C ☐ Payment in equal Monthly (E.g. weekly, monthly, quarterly) installments of $50.00 to commence
      60 (E.g. 30 or 60) days after the date of this judgment; or

D ☒ Payment in equal monthly (E.g. weekly, monthly, quarterly) installments of $50.00 to commence
      60 (E.g. 30 or 60) days after release from imprisonment to a term of supervision. In the event the entire
      amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the
      U.S. Probation Officer shall pursue collection of the amount due, and may request the court to establish or
      modify a payment schedule if appropriate 18 U.S.C. § 3572.

Special instructions regarding the payment of criminal monetary penalties:

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court costs:
☒ The defendant shall forfeit the defendant's interest in the following property to the United States as set forth in the
Consent Order [Doc. 51] entered 9/19/2012:

    (a) 162 Long John Drive, Hendersonville, North Carolina, as more particularly
       described in a deed in the Registry of Deeds, Henderson County, North
       Carolina, at Book 1062, Page 243, together with the residences, and all
       appurtenances, improvements, and attachments thereon;

    (b) Flip video camera, serial number MB1014019979;

    (c) Dell HP Pavilion laptop model dv9700, serial number CNF8260Y9V; and

    (d) Toshiba laptop, serial number 6B130080R.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of
imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal
monetary penalty payments are to be made to the United States District Court Clerk, 309 U.S. Courthouse, 100 Otis
Street, Asheville, NC, 28801, except those payments made through the Bureau of Prisons' Inmate Financial
Responsibility Program. All criminal monetary penalty payments are to be made as directed by the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5)
fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Case 1:12-cr-00025-MR-DLH   Document 85   Filed 09/24/13   Page 6 of 7

AO 245B  (WDNC Rev. 02/11) Judgment in a Criminal Case

Defendant: Deborah Lee Tipton                                    Judgment- Page 7 of 7
Case Number: DNCW:112CR00025-001

## STATEMENT OF ACKNOWLEDGMENT

I understand that my term of supervision is for a period of _____ months, commencing on _____.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I understand that revocation of probation and supervised release is mandatory for possession of a controlled substance, possession of a firearm and/or refusal to comply with drug testing.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)    _____    Date: _____
            Defendant

(Signed)    _____    Date: _____
            U.S. Probation Office/Designated Witness

**185**

AO 245B  (Rev. 09/11) Judgment in a Criminal Case
Attachment (Page 1 ) — Statement of Reasons

| | |
|---|---|
| DEFENDANT: | Deborah Lee Tipton |
| CASE NUMBER: | DNCW1:12CR00025-001 |
| DISTRICT: | North Carolina – Western |

## STATEMENT OF REASONS
*(Not for Public Disclosure)*

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A  ☒  **The Court adopts the presentence investigation report without change.** *(Use Section VIII if necessary.)*

B  ☐  **The Court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify the Court's determinations, findings, or comments; referencing paragraph numbers in the presentence report, if applicable.)
*(Use Section VIII if necessary.)*

   1.  ☐  **Chapter Two of the U.S.S.G. Manual** determinations by the Court (including changes to base offense level, or specific offense characteristics):

   2   ☐  **Chapter Three of the U.S.S.G. Manual** determinations by the Court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

   3   ☐  **Chapter Four of the U.S.S.G. Manual** determinations by the Court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

   4   ☐  **Additional Comments or Findings** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions):

C  ☐  **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II   COURT FINDING ON MANDATORY MINIMUM SENTENCE** *(Check all that apply.)*

A  ☐  No count of conviction carries a mandatory minimum sentence.

B  ☒  Mandatory minimum sentence imposed.

C  ☐  One or more counts of conviction alleged in the Indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the Court has determined that the mandatory minimum does not apply based on

   ☐  findings of fact in this case

   ☐  substantial assistance (18 U.S.C. § 3553(e))

   ☐  the statutory safety valve (18 U.S.C. § 3553(f))

**III  COURT DETERMINATION OF ADVISORY GUIDELINE RANGE** *(BEFORE DEPARTURES):*

Total Offense Level:  **37**

Criminal History Category:  **I**

Imprisonment Range:  **210 to 262 months**

Supervised Release Range:  **Counts 2 & 3: Any term of years not less than 5, or life**

Fine Range:  **$20,000 to $200,000**

  ☒  Fine waived or below the guideline range because of inability to pay.

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** *(Check only one.)*

A  ☐  The sentence is within an advisory guideline range that is not greater than 24 months, and the Court finds no reason to depart.

B  ☒  The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
*(Use Section VIII if necessary.)*

The Court deemed the sentence was sufficient, but not greater than necessary, to accomplish the sentencing objectives of 18 U.S.C. § 3553(a), including the need for the imposed sentence to:  reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Case 1:12-cr-00025-MR-DLH   Document 86   Filed 09/24/13   Page 1 of 4

AO 245B  (Rev. 09/11) Judgment in a Criminal Case
Attachment (Page 2) — Statement of Reasons

DEFENDANT:        Deborah Lee Tipton
CASE NUMBER:      DNCW1:12CR00025-001
DISTRICT:         North Carolina — Western

## STATEMENT OF REASONS
### *(Not for Public Disclosure)*

C ☐   The Court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
       *(Also complete Section V.)*

D ☐   The Court imposed a sentence outside the advisory sentencing guideline system. *(Also complete Section VI.)*

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** *(If applicable.)*

A   **The sentence imposed departs** *(Check only one.):*
     ☐  below the advisory guideline range
     ☐  above the advisory guideline range

B   **Departure based on** *(Check all that apply.):*

1   **Plea Agreement** (Check all that apply and check reason(s) below.):
     ☐  5K1.1 plea agreement based on the defendant's substantial assistance
     ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
     ☐  binding plea agreement for departure accepted by the Court
     ☐  plea agreement for departure, which the Court finds to be reasonable
     ☐  plea agreement that states that the government will not oppose a defense departure motion.

2   **Motion Not Addressed in a Plea Agreement** *(Check all that apply and check reason(s) below.):*
     ☐  5K1.1 government motion based on the defendant's substantial assistance
     ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
     ☐  government motion for departure
     ☐  defense motion for departure to which the government did not object
     ☐  defense motion for departure to which the government objected

3   **Other**
     ☐  Other than a plea agreement or motion by the parties for departure *(Check reason(s) below.):*

C ☐   **Reason(s) for Departure** *(Check all that apply other than 5K1.1 or 5K3.1.)*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 | Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 | Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 | Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 | Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 | Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 | Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 | Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 | Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 | Discharged Terms of Imprisonment |
| | | | | | | ☐ | | Other guideline basis (e.g., 2B1.1 commentary) |

D   **Explain the facts justifying the departure.** *(Use Section VIII if necessary.)*

Case 1:12-cr-00025-MR-DLH  Document 86  Filed 09/24/13  Page 2 of 4

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Attachment (Page 3) — Statement of Reasons

| | |
|---|---|
| DEFENDANT: | Deborah Lee Tipton |
| CASE NUMBER: | DNCW1:12CR00025-001 |
| DISTRICT: | North Carolina – Western |

## STATEMENT OF REASONS
*(Not for Public Disclosure)*

**VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
*(Check all that apply.)*

    **A   The sentence imposed is** *(Check only one.)*

      ☐  below the advisory guideline range

      ☐  above the advisory guideline range

    **B   Sentence imposed pursuant to** *(Check all that apply.)*:

      1  **Plea Agreement** *(Check all that apply and check reason(s) below.)*:

        ☐  binding plea agreement for a sentence outside the advisory guideline system accepted by the Court

        ☐  plea agreement for a sentence outside the advisory guideline system, which the Court finds to be reasonable

        ☐  plea agreement that states that the government will not oppose a defense motion to the Court to sentence outside the advisory guideline system

      2  **Motion Not Addressed in a Plea Agreement** *(Check all that apply and check reason(s) below.)*:

        ☐  government motion for a sentence outside of the advisory guideline system

        ☐  defense motion for a sentence outside of the advisory guideline system to which the government did not object

        ☐  defense motion for a sentence outside of the advisory guideline system to which the government objected

      3  **Other**

        ☐  Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system *(Check reason(s) below.)*:

    **C   Reason(s) for Sentence Outside the Advisory Guideline System** *(Check all that apply.)*

      ☐  the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)

      ☐  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))

      ☐  to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))

      ☐  to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))

      ☐  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))

      ☐  to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))

      ☐  to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

    **D   Explain the facts justifying a sentence outside the advisory guideline system.** *(Use Section VIII if necessary.)*

**188**

AO 245B  (Rev. 09/11) Judgment in a Criminal Case
          Attachment (Page 4) — Statement of Reasons

| | |
|---|---|
| DEFENDANT: | Deborah Lee Tipton |
| CASE NUMBER: | DNCW1:12CR00025-001 |
| DISTRICT: | North Carolina – Western |

## STATEMENT OF REASONS
*(Not for Public Disclosure)*

**VII   COURT DETERMINATIONS OF RESTITUTION**

A  ☐  Restitution Not Applicable.

B  ☒  Total Amount of Restitution:  To be determined

C  ☐  Restitution not ordered *(Check only one.)*:

1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4  ☐  Restitution is not ordered for other reasons.  *(Explain.)*

D  ☐  Partial restitution is ordered for these reasons *(18 U.S.C. § 3553(c))*:

**VIII   ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE** *(If applicable.)*

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | | |
|---|---|---|
| Defendant's Soc. Sec. No.:  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 | | Date of Imposition of Judgment: September 18, 2013 |
| Defendant's Date of Birth:  11/26/1967 | | Signed: September 21, 2013 |
| Defendant's Residence Address: | 6022 Godfrey Road | |
| | Burt, NY 14028 | |
| Defendant's Mailing Address: | Same | |

Martin Reidinger
United States District Judge

**189**

United States District Court for the Western

District of North Carolina

File Number 12 CR 0025


UNITED STATES OF AMERICA     )
          Plaintiff           )
                           )        NOTICE OF APPEAL
          v.                )
                           )
DEBORAH LEE TIPTON         )
          Defendant     )
                           )

     Notice is hereby given that Deborah Lee Tipton, Defendant in the above named case, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the final Sentencing Judgement entered in this action on the 18th day of September, 2013.

     This the 1st day of October, 2013

                             /s/ Frank B. Jackson
                             FRANK B. JACKSON
                             F.B. JACKSON and ASSOCIATES LAW FIRM, PLLC
                             Attorney for Defendant
                             P.O. Box 1666
                             Hendersonville, NC  28793
                             828-697-5410
                             Ptjj_j@bellsouth.net
                             NC State Bar No.: 2310

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that a true and correct copy of the above and foregoing Notice of Appeal and Transcript Order was duly served upon the following parties by electronic filing of this document with the Clerk of Court, this the 1st day of October, 2013.

      Jack Stewart at   jack@jackstewartlaw.com

      Cortney Escaravage at cortney.escaravage@usdoj.gov

                                    /s/Frank B. Jackson

                              Frank B. Jackson
                              P.O. Box 1666
                              Hendersonville, NC 28793
                              Phone: 828-697-5410
                              NC State Bar No.: 2310

**191**