IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 13-4737

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

DEBORAH LEE TIPTON,

*Defendant - Appellant.*

———————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Martin K. Reidinger, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

| | |
|---|---|
| Anne M. Tompkins | Melissa L. Rikard |
| United States Attorney | Assistant United States Attorney |
| | 227 West Trade Street |
| | Carillon Building, Suite 1650 |
| | Charlotte, North Carolina   28202 |
| | (704) 344-6222 |

*Attorneys for the United States of America*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................ii

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED ........................................................................... 1

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 12

ARGUMENT

I.    Defendant has not demonstrated under plain error review that
      the Government plainly breached the plea agreement, engaged
      in improper conduct, or deprived her of a fair proceeding ............ 14

          A.    Standard of Review ..................................................... 14

          B.    Discussion.................................................................... 16

II.   Defendant knowingly and voluntarily waived her right to
      appeal the reasonableness of the sentence................................... 22

          A.    Standard of Review ..................................................... 22

          B.    Discussion.................................................................... 23

CONCLUSION ................................................................................... 25

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
          ORAL ARGUMENT ............................................................ 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases**

*Johnson v. Zerbst*, 304 U.S. 458 (1938)..................................................23

*Puckett v. United States*, 129 S.Ct. 1423 (2009) ......................................14

*United States v. Alerre*, 430 F.3d 681 (4th Cir. 2005) ............... 14, 15, 18

*United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995)...........23

*United States v. Davis*, 954 F.2d 182 (4th Cir. 1992) .............................23

*United States v. DeFusco*, 949 F.2d 114 (4th Cir. 1991).........................24

*United States v. Francisco*, 35 F.3d 116 (4th Cir. 1994).........................20

*United States v. Knight*, 606 F.3d 171 (4th Cir. 2010) ...........................16

*United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010)........... 22, 23, 24

*United States v. McQueen*, 108 F.3d 64 (4th Cir. 1997) .........................15

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................15

*United States v. Perry*, 560 F.3d 246 (4th Cir. 2009).............................17

*United States v. Snow*, 234 F.3d 187 (4th Cir. 2000) .............................16

*United States v. Thornsbury*, 670 F.3d 532 (4th Cir. 2012) ...................24

*United States v. Wellman*, 663 F.3d 224 (4th Cir. 2011).......................20

*United States v. Wessells*, 936 F.2d 165 (4th Cir. 1991).........................23

*United States v. Wiggins*, 905 F.2d 51 (4th Cir. 1990) ...........................23

**Statutes**

18 U.S.C § 2251(a) .......................................................................4

18 U.S.C. § 2252(a)(1) ................................................................4

18 U.S.C. § 2252(a)(2) ................................................................4

18 U.S.C. § 2252(a)(4)(B) ..........................................................4

18 U.S.C. § 3231 ...........................................................................1

18 U.S.C. § 3553(a) .....................................................................8

28 U.S.C. § 1291 ..........................................................................1

**Rules**

Fed.R.Crim.P. 52(b) ..................................................................14

Fed.R.Crim.P. 11 .......................................................................24

U.S.S.G. § 5K1.1 .......................................................................10

U.S.S.G. § 5K2.20 .....................................................................10

## JURISDICTIONAL STATEMENT

Defendant Deborah Lee Tipton appeals the sentence imposed following her guilty plea to possessing and distributing a video of her minor daughter engaged in sexually explicit conduct.   The district court entered judgment on September 24, 2013, J.A. 179-85, and Defendant filed a timely notice of appeal seven days later, J.A. 190.   The district court's subject matter jurisdiction derived from 18 U.S.C. § 3231.   This Court's jurisdiction to consider Defendant's appeal is premised on 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.    Whether Defendant can demonstrate that the Government plainly breached the plea agreement or engaged in prosecutorial misconduct that affected her substantial rights, where she has not identified any promise that was not kept or any improper advocacy by the prosecutor.

II.    Whether Defendant's guilty plea was knowing and voluntary so that it foreclosed her right to now challenge the reasonableness of her sentence.

## STATEMENT OF THE CASE

1. <u>Defendant records a video of her 11-year-old daughter in the shower and sends it to Defendant's boyfriend</u>.

From approximately 2004 until late 2011, Defendant Deborah Ann Tipton, a math and special education teacher at The Mountain Community School in Hendersonville, North Carolina, had an extramarital affair with Chad Hamby, the principal at The Mountain Community School.   J.A. at 308-09.   During the course of their affair, Defendant and Hamby often discussed sexual fantasies, including rape, bondage, and having sexual relations with young girls.   J.A. at 309.

In September 2011, at the request of Hamby, and in an attempt to arouse him and further their relationship, Defendant videotaped her minor daughter – who was eleven years old at the time – naked in the shower and sent the videos to Hamby.   J.A. at 308-10.   Hamby recalled that Defendant sent him a message indicating that she was going to send him "something," and then he received and viewed both videos before deleting them.   J.A. at 310.

In one of the videos, Tipton repeatedly aims the camera and zooms in at her daughter's genitalia and at some point convinces the daughter

2

to pull her labia apart under the guise of "seeing her development and her pubic hair."   J.A. at 308.   The video also contains shots of the daughter's breasts.   J.A. at 308.   In the second, similar shower video,[1] Defendant focuses the camera only on the daughter's vagina and briefly on her breasts.   J.A. at 308.   Defendant's voice is heard throughout the video and, at one point during the video, Defendant flips around the camera and captures her own face on the video.   J.A. at 308.

Several months later, in February 2012, after Defendant had separated from her husband, her husband found the videos of his daughter on Defendant's "flip video" camera and determined that Defendant had sent the videos to Hamby's email address.   J.A. at 308. The husband notified his divorce attorney, who notified the local Department of Social Services, and this investigation and prosecution ensued.   J.A. at 308.

When confronted by investigators, Defendant admitted to making the videos and sending at least one to Hamby, but she tried to excuse the

---

[1] Defendant later clarified that there was just one "taping session" that was interrupted when Defendant attempted to clean off the lens of the camera.   J.A. at 91.

3

conduct by explaining that "her daughter wanted to view the pictures of her pubic hair and private parts." J.A. at 310. Defendant was arrested this same day and charged with felony first degree sexual exploitation of a minor. J.A. at 311. Investigators also interviewed Hamby, and he admitted to receiving and viewing the videos. J.A. at 309. He was subsequently arrested and charged with felony third degree sexual exploitation of a minor. J.A. at 312.

2. <u>Defendant is charged federally and pleads guilty to distributing and possessing child pornography.</u>

Based on this conduct, Defendant and Hamby were subsequently charged in federal court. J.A. at 306. Specifically, Defendant was charged with producing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C § 2251(a); transporting a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1) and (b); and possessing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b). J.A. at 18-20. Hamby was charged with and eventually pled guilty to receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). J.A. at 312.

4

Defendant entered into a plea agreement with the Government in which she agreed to plead guilty to Counts Two and Three (the distribution and possession counts), and, in exchange, the Government agreed to dismiss Count One (the production count).   J.A. at 33.   As part of the plea agreement, the parties jointly recommended to the district court that the cross-reference to U.S.S.G. § 2G2.1 should apply "because the offense involving causing, transporting, or permitting a minor to engage in sexually explicit conduct *for the purpose of producing a visual depiction of such conduct*."   J.A. at 34 (emphasis added).   With the cross-reference, Defendant's base offense level was 32.   J.A. at 34. The parties also jointly agreed that Defendant should receive enhancements because the minor was under the age of 12, the offense involved distribution, and Defendant was the minor's parent.   J.A. at 35; *see also* U.S.S.G. §§ 2G2.1(b)(1)(A), (b)(3), and (b)(5).   The parties agreed further that the Government would "inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court."   J.A. at 35.   Finally, as part of the plea agreement, Defendant agreed to waive her rights to

5

contest the conviction or sentence on appeal, except for claims of

ineffective assistance of counsel or prosecutorial misconduct.    J.A. at 38.

The terms of Defendant's plea agreement, including the cross-reference

and the appellate waiver, were reviewed at a Rule 11 hearing before a

magistrate judge, in which the magistrate judge found Defendant's plea

to be knowingly and voluntarily made.    J.A. at 59, 62-63, 65, 71-80.

3.    <u>The district court sentences Defendant to 216 months of imprisonment, a sentence at the lower end of the advisory guideline range.</u>

In anticipation of the sentencing hearing, a probation officer

prepared a pre-sentence report ("PSR") detailing the offense conduct and

calculating Defendant's adjusted offense level and advisory guideline

range.    *See* J.A. at 192-211.    Defendant, through two separate

attorneys, lodged numerous objections to the PSR and sought a

downward departure.    J.A. at 212-301.    Throughout her objections and

her motion for downward departure, Defendant maintained that she

took the videos at the request of her daughter to help answer her

questions "about the changes going on in her body," including "where a

6

tampon would go," that she thought she deleted the video, and that she lacked criminal intent. *See, e.g.*, J.A. at 214, 225, 230, 238, 296, 309.

The district court convened a sentencing hearing on September 28, 2012. J.A. at 81. At the start of the hearing, Defendant re-affirmed the answers she previously gave at the Rule 11 hearing, and the district court accepted Defendant's plea as knowingly and voluntarily made. J.A. at 88. Defendant then stipulated to the offense conduct set forth in the PSR as establishing the factual basis. J.A. at 88.

Defendant proceeded to argue in support of some of the objections that she had filed, including her assertions that she thought she deleted the video, that the four-level enhancement for the age of the victim should not apply because the victim was just shy of 12 years old, and that this offense should not be labeled as "child pornography." J.A. at 90-104. In the course of her argument, Defendant stated that she "has never denied recording the victim in this case." J.A. at 90-91.

For its part, the Government opposed any reduction in offense level for acceptance of responsibility, considering the minimization of her conduct made in her objections to the PSR. J.A. at 96. In response to

7

the Government's argument, Defendant again stated that she did not "deny sending [the video]," she did not "deny making it," and she knew "that she was sending the video that was transmitted to Mr. Hamby of her daughter that she took involved in that conduct." J.A. at 100, 104. The district court overruled all of Defendant's objections, and, with some reluctance, it awarded a reduction for acceptance of responsibility. J.A. at 95-96, 106. With those rulings, the district court found, and the parties agreed, that Defendant's total offense level was 37, with a criminal history category I, yielding an advisory guideline range of 210 to 262 months of imprisonment. J.A. at 108.

The Government then presented testimony from FBI Agent John Wydra to support its arguments on the 18 U.S.C. § 3553(a) factors. J.A. at 108. Agent Wydra relayed the contents of his interview with Hamby, in which Hamby admitted that his relationship with Defendant involved "normal sex chat" before moving into bestiality and children. J.A. at 111. Hamby also told Agent Wydra that Defendant was the one who usually introduced fantasies into their conversations and that it was Defendant who introduced the victim-daughter into their fantasy chats.

8

J.A. at 111.   Hamby also told Wydra that prior to receiving the video of the daughter in the shower, Defendant had sent him a text message stating that she had a "surprise" for him.   J.A. at 112.   She also told him that she wanted to be there when he watched the video she was sending so that "she could sit on his lap and feel him get hard."   J.A. at 114.   When she eventually sent the video, Defendant wrote "Enjoy" in the subject line.   J.A. at 114.   Hamby told Agent Wydra that the purpose of sending him the video was "for his sexual gratification . . . and continue to feed their fantasies about children."   J.A. at 114.   Finally, Hamby told Agent Wydra that his relationship with Defendant had begun to slow in spring 2011, when he moved to another school, but that it ramped back up in August or September 2011 when Defendant sent the videos.   J.A. at 117.   During Agent Wydra's testimony, the Government introduced, without objection from Defendant, a copy of the shower video, transcripts of conversations on the video, and the transcript of Defendant's interview with law enforcement.   J.A. at 115-16.

9

Defendant proceeded to argue for a sentence below the guideline range, citing, pursuant to U.S.S.G. § 5K1.1, her assistance to authorities in their case against Hamby, and, arguing pursuant to U.S.S.G. § 5K2.20, that her offense conduct was merely aberrant behavior.   J.A. 129-30.   In response, the district court pointed out that this type of child exploitation offense is excepted from the aberrant behavior departure, J.A. at 132, and the Government disputed that Defendant provided any assistance in the case against Hamby, J.A. at 144.

The Government sought a sentence of 240 months.   J.A. at 143. In support of its recommended sentence, counsel for the Government focused on the betrayal of the daughter's trust for the purpose of pleasing Hamby.   J.A. at 145-50.   Counsel for the Government suggested that Defendant feared she was losing Hamby when he changed schools in the spring of 2011 and therefore "used her daughter in a sick attempt to bring him back."   J.A. at 146.   Counsel for the Government then read from the transcript of the video, which included Defendant telling her daughter to "open it up," and "open it up more," and Defendant remarking "enjoy" as she closed out the video.   J.A. at 147-48.

10

The district court imposed a total sentence of 216 months (216 months for the distribution offense and a concurrent 120 months for the possession offense), a sentence on the lower end of the advisory guideline range.    J.A. at 162.    The district court began its explanation of sentence by describing the three statutory schemes for child pornography offenses:    "the possession offenses which are bracketed for sentences of zero to ten years, the transmission offenses that are bracketed for sentences of five to 20 years, and the production offenses which are bracketed for sentences of 15 to 30 years."    J.A. at 163.    The district court then stated that it was "clear that this case falls in that third category, that being a production offense."    J.A. at 163.    The court recounted some mitigating circumstances of the offense – including that the victim-daughter was not "forced or induced to commit any sort of sexual act," and that there was no sexual contact between Defendant and her daughter – and also described the aggravating factors – including the breach of the "most sacred position of trust" between mother and daughter, the "manipulation of a child," and that Defendant did "not seem to have come to grips with the criminality of her actions."    J.A. at

11

164-65.   The district court explained that these mitigating and aggravating factors adequately reflected the seriousness of the offense, and that the sentence imposed afforded adequate deterrence and provided just punishment.   J.A. at 165.

After the hearing had concluded, Defendant's attorney summarily put on the record the gist of his earlier objections to the Government's sentencing exhibits and the overruling of those objections by the district court in chambers.   J.A. at 177.   Specifically, the attorney recounted that Defendant had objected to the district court's viewing the video in question (Government's exhibit 1 at the hearing) in chambers, and to the admission of the transcripts of the video because they were not "pertinent," the Government had been "too late" in its disclosure, and he did not believe that the transcripts "needed to be examined by the presiding judge at the time of the hearing."   J.A. at 177.

## SUMMARY OF THE ARGUMENT

Defendant makes numerous, baseless allegations of prosecutorial misconduct that fail under any standard of review, and especially under plain error review.   Her suggestion that the prosecutor breached the

12

plea agreement by contending that this was a production case is contradicted by Defendant's own stipulation in the plea agreement that this was a production case and by her admissions at the sentencing hearing that she produced this video, and, in any event, it is appropriate for a sentencing court to consider uncharged or dismissed conduct. Her challenges to the admission and authenticity of the shower video and transcript as prosecutorial misconduct similarly fail, because she did not object to either the authenticity or admission of the video during the hearing and because they were admitted to rebut Defendant's suggestion that the video was merely "educational." Her accusation of misconduct for the prosecutor's proffered motive fails because it was a fair inference from the record, and her contention that her daughter will not suffer lifelong harm as a result of Defendant's conduct and that the prosecutor improperly suggested that she would is defied by logic, human emotion, and statements of this court. Fairly considered, Defendant's allegations of prosecutorial misconduct sound more in evidentiary claims of error of the kind she expressly agreed not to pursue in her appeal waiver, rather than claims of prosecutorial misconduct. But, presented as claims of

13

prosecutorial misconduct, they fail under any standard of review.

Finally, Defendant's challenge to the procedural reasonableness of her

sentence is encompassed within her valid appeal waiver, and her appeal

as to that issue should be dismissed.

## ARGUMENT

I.  **Defendant has not demonstrated under plain error review that the Government plainly breached the plea agreement, engaged in improper conduct, or deprived her of a fair proceeding.**

### A.     Standard of Review

This Court reviews for plain error claims of prosecutorial

misconduct that were not raised before the district court, as well as a

claim that the Government breached its plea agreement that was not

preserved.   *Puckett v. United States*, 129 S.Ct. 1423, 1433 (2009) (claims

of breach that are not raised in the district court are subject to

plain-error review on appeal); *United States v. Alerre*, 430 F.3d 681, 689

(4th Cir. 2005) (claims of prosecutorial misconduct are forfeited if not

raised in district court); *see also* Fed.R.Crim.P. 52(b).   Under plain error

review, this Court must affirm unless a defendant can show (1) that an

error was made, (2) that it was plain, and (3) that it affected the

14

defendant's substantial rights. *Alerre*, 430 F.3d at 689. Moreover, the correction of a plain error lies within the Court's discretion, which the Court does not exercise unless the error seriously affects the fairness, integrity, or public reputation of the proceeding. *Id.*

Addressing a forfeited claim that the Government breached a plea agreement, a defendant must show not only that the Government plainly breached the plea agreement, but also that he was prejudiced by the error and that "the breach was so obvious and substantial that failure to notice and correct it [would affect] the fairness, integrity or public reputation of the judicial proceedings." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997) (internal quotations marks omitted). The burden is, as the Supreme Court has made clear, on the defendant to show that an error prejudiced her, such that it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). To affect the outcome of the proceeding in the context of an alleged breach of a plea agreement, a defendant must establish "a nonspeculative basis in the record to conclude that the district court

would have imposed a lower sentence but for the [breach.]"    *United States v. Knight*, 606 F.3d 171, 178 (4th Cir. 2010).

**B.    Discussion**

Defendant contends that the prosecutor in this case engaged in numerous instances of prosecutorial misconduct that entitle her to a new sentencing hearing before a different district judge.   As explained below, there was no misconduct in this case, and there was no breach of the plea agreement by the Government.

1.    <u>Compliance with the plea agreement</u>

In her first assignment of misconduct, Defendant contends that the prosecutor unfairly "tried her for the 'production' count that was to be dismissed," instead of merely focusing on the distribution and possession counts to which she pled guilty.   *See* Def. Br. at 12.   Defendant contends that this amounts to a breach of the plea agreement.

A defendant alleging the Government's breach of a plea agreement bears the burden of establishing breach by a preponderance of the evidence.   *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). Defendant's allegation of breach in this case ignores two key components

16

of her proceeding. First, Defendant agreed as part of her plea agreement that the cross-reference to U.S.S.G. § 2G2.1 would apply "because the offense involved causing, transporting, or permitting a minor to engage in sexually explicit conduct *for the purpose of producing a visual depiction* of such conduct." J.A. at 34 (emphasis added). Second, Defendant admitted on several occasions at the sentencing hearing that she, in fact, produced the video. *See, e.g.*, J.A. at 90-91, 100. It can hardly be misconduct or a plain breach of the plea agreement for the Government to suggest that this was a production case when Defendant admitted as much, both in her plea agreement and at the sentencing hearing. Moreover, district courts are permitted to consider acquitted or uncharged conduct in fashioning an appropriate sentence. *See United States v. Perry*, 560 F.3d 246, 258 (4th Cir. 2009). Defendant has not identified any promise made by the Government in the parties' plea agreement that the Government failed to keep. Accordingly, she has not shown any breach, much less a plain or obvious breach that affected her substantial rights.

17

2.    <u>Allegations of prosecutorial misconduct</u>

When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutor engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair proceeding.    *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005).    Defendant first complains that the prosecutor engaged in misconduct by failing to provide the transcript of the video until the morning of the hearing.    *See* Def. Br. at 19-20.    But Defendant's objections to the PSR, in which she stated that the purpose of the video was "educational" for her daughter and in which she describes some of the conversations on the recording, make clear that Defendant, through her attorney, had viewed the video and that the video had audio, enabling the defense team to know what was said on the video.    Nor does Defendant cite any prejudice that she suffered as a result of the alleged late disclosure of the transcript of a video that Defendant's counsel had already viewed and heard, other than her vague assertion that it deprived her of the effective assistance of counsel.    Furthermore, it was clear from Defendant's pre-hearing filings that she

18

intended to dispute the purpose of the video – that it was an
"educational" video rather than one made to gratify her mother's lover –
so it was entirely appropriate for the Government to dispute this alleged
purpose by calling to the district court's attention the dialogue between
Defendant and her daughter on the video.   The admission of the
transcript, then, was not error or prosecutorial misconduct.

In her third allegation of misconduct, Defendant contends that the
prosecutor engaged in misconduct by "manufacturing and subscribing
scienter to the conduct of the Defendant enflaming the Court against the
Defendant."   J.A. at 20-22.   Specifically, Defendant contends that the
prosecutor was mistaken in suggesting that Defendant made and sent
the video in a "sick attempt to bring [Hamby] back."   *See* J.A. at 146,
Def. Br. at 21.   But the prosecutor's theory was a fair inference drawn
from the record of the hearing, specifically, from Hamby's interviews
with local enforcement and FBI Agent John Wydra, both of which were
recounted in the PSR and at the sentencing hearing.   Defendant was
free to contest this proffered motive, but she did not do so.   With this
dearth of evidence to the contrary, and Hamby's statements supporting

19

the Government's proffered motive, Defendant has failed to show that the Government committed misconduct in this regard. *Cf. United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994) (holding that during closing argument, the prosecution is permitted to draw reasonable inferences from the evidence adduced during the trial). Moreover, the district court's explanation of sentence suggests that its sentence was driven more by the fact that this video was made at all, rather than why it was made.

Next, Defendant contends the prosecutor engaged in misconduct by "falsely" suggesting that Defendant's daughter will suffer "lifelong harm" and that Defendant had engaged "in all of these behaviors over a seven year period." Def. Br. at 22-25. The first statement – the lifelong harm that the daughter will suffer – is an undeniable outcome, and the comment was, therefore, proper. *See United States v. Wellman*, 663 F.3d 224, 232 (4th Cir. 2011) (stating that "children, as the subject of these [pornographic] images, undeniably suffer serious harm when they are used to create this type of material"). But even if Defendant doubts the harm that her conduct has caused her daughter, she has not

20

demonstrated that this statement was plain error affecting her substantial rights.   The second statement – that Defendant engaged in "these behaviors" over a seven year period – is not misconduct because, read in context, it is clear that the prosecutor was referring to the entirety of the affair, and not the single act of recording her daughter engaged in sexually explicit conduct:

> AUSA:     Why did she do this?   Why did she initiate this?   Why did she film this?   Why did she distribute it?   Because she wanted to please the man that she was engaging in a sexual relationship with.   She got sexual gratification out of that, Your Honor.   They say Mr. Hamby is the dominant one in this relationship, but there's no doubt she was receiving satisfaction from this as well Your Honor.   She was willfully engaging in all of these behaviors over a seven-year period.   That's what led to her betraying the trust of her child.

Defendant's argument, then, misconstrues and takes out of context the prosecutor's words, and fails to demonstrate misconduct that affected her substantial rights.

In her final assignment of prosecutorial misconduct, Defendant contends that the prosecutor improperly offered into evidence the DVD of the shower video "that she knew could not be authenticated."   Def. Br. at 28.   Defendant's argument is curious, considering that, while she

21

apparently objected to the district court's viewing the video in chambers, she did not object to the authenticity of the video at the sentencing proceeding or at any other time in the district court. Instead, she has challenged only the purpose of the video, contending that it was merely an "educational" video. Having never before doubted or objected to the contents of the video, Defendant cannot now show under plain error review that offering the video into evidence at the sentencing hearing amounts to misconduct.

In sum, Defendant has failed to demonstrate that the prosecutor in this case breached the parties' plea agreement or otherwise engaged in any misconduct, much less misconduct that affected her substantial rights and should be noticed by this Court under plain error review. For these reasons, her request for a resentencing before a district judge should be denied.

## II. Defendant knowingly and voluntarily waived her right to appeal the reasonableness of the sentence.

### A. Standard of Review

Whether a defendant effectively waived her right to appeal is a matter of law that is reviewed *de novo*. *United States v. Manigan*, 592

22

F.3d 621, 626 (4th Cir. 2010).

## B.    Discussion

Defendant seeks to appeal the procedural reasonableness of her sentence, alleging that the district court failed to consider her arguments in mitigation for a lower sentence, *see* Def. Br. at 30, despite an express waiver of that right in her plea agreement.   This Court repeatedly has held that a defendant may waive the right to appeal her sentence in a valid plea agreement, *see, e.g.*, *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990), and the waiver is valid if it is knowingly and voluntarily made, *Manigan*, 592 F.3d at 627; *United States v. Wessells*, 936 F.2d 165, 167 (4th Cir. 1991).   Whether a waiver is knowing and voluntary is evaluated based on the totality of the circumstances, *Manigan*, 592 F.3d at 627, "'including the background, experience and conduct of the accused,'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995).   As this Court has stated, "[a]n important factor" in evaluating whether the defendant knowingly and intelligently agreed to the waiver "is whether

23

the district court sufficiently explained the waiver to the defendant during the Federal Rule of Criminal Procedure 11 plea colloquy." *Manigan*, 592 F.3d at 627; *see also United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). Additionally, it is well settled that statements made by a defendant during a Rule 11 proceeding constitute strong evidence of the voluntariness of a plea. *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).

Here, Defendant has not challenged the voluntary or knowing nature of her guilty plea. Nor could she, as the record amply demonstrates that she knowingly and voluntarily waived her right to challenge her sentence on appeal. In her plea agreement and again at the Rule 11 hearing, Defendant acknowledged that she understood the charges against her and that she was, in fact, guilty of the charges to which she was pleading guilty. Further, Defendant expressly acknowledged at the Rule 11 hearing that she had discussed her right to appeal with her attorney, that she understood that she could not appeal her sentence unless it was on the grounds of prosecutorial misconduct or ineffective assistance of counsel, and that she "knowingly and willfully

24

accept[ed] these limitations on [her] right to appeal." *See* J.A. at 63.

Additionally, the argument Defendant presents on appeal challenging

the reasonableness of her sentence falls squarely within the scope of the

appeal waiver to which she knowingly and voluntarily agreed.   Because

Defendant is not entitled to relief for breach of the plea agreement,

because her appellate waiver was knowing and voluntary, and because

the challenged issue – procedural reasonableness – does not involve a

claim of ineffective assistance of counsel or prosecutorial misconduct, her

appeal should be dismissed.[2]

## **CONCLUSION**

The Government respectfully submits that Defendant has not

demonstrated a plain breach of the agreement, prosecutorial misconduct,

or that her substantial rights were affected.   Further, Defendant's

challenge to her sentence is encompassed within her valid appeal waiver

---

[2]   In any event, her claim of procedural error is without merit, as the record makes clear that the district court considered all of her arguments for a lower sentence, but rejected most of them.   The district court cited at least two mitigating factors in its explanation of sentence, but it reasonably found that the aggravating factors outweighed the mitigating ones.   The district court's chosen sentence was at the lower end of the advisory guideline range and, considering the circumstances of this case, was reasonable.

25

and should be dismissed.    For the reasons stated above, the Government respectfully requests that this Court dismiss Defendant's appeal as to the procedural reasonableness of her sentence, reject the claim of prosecutorial misconduct, and affirm the judgment in its entirety.

## REQUEST FOR DECISION ON THE BRIEFS WITHOUT ORAL ARGUMENT

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this the 22nd day of May, 2014.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY
s/ Melissa L. Rikard
Melissa L. Rikard
VA Bar Number # 65870
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: Melissa.Rikard@usdoj.gov

26

## <u>CERTIFICATION OF COMPLIANCE</u>

1.  This Brief has been prepared using (select and complete only one):

__x__      Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).   Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point): <u>Microsoft Word, Century Schoolbook, 14 point</u>

_____ Twelve point, monospaced typeface (such as Courier or Courier New).   Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier 12 point):

2.  EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (select and complete only one):

3._____  Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

_4902_ Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

s/Melissa L. Rikard
Assistant United States Attorney
USAO Charlotte, NC

## **CERTIFICATE OF SERVICE**

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record, Frank B. Jackson, through electronic case filing.

This the 22nd day of May, 2014.

s/Melissa L. Rikard
Assistant United States Attorney
USAO Charlotte, NC